UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CRAIG GOULET, | ) | CASE NO. 04-12577 JLT |
| | ) | |
| Plaintiff, | ) | JUDGE TAURO |
| | ) | |
| vs. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **MOTION OF DEFENDANT NEW PENN** |
| NEW PENN MOTOR EXPRESS, INC., | ) | **MOTOR EXPRESS, INC. TO COMPEL** |
| *et. al.,* | ) | **PLAINTIFF'S EXECUTION OF AN** |
| | ) | **AUTHORIZATION FOR THE RELEASE** |
| Defendants. | ) | **OF HIS SOCIAL SECURITY** |
| | ) | **DISABILITY FILE** |

I. **STATEMENT OF THE FACTS**

    A.     **The Nature of Plaintiff's Claims Against New Penn**

Plaintiff Craig Goulet instituted this action against Defendant New Penn Motor Express, Inc. ("New Penn"), alleging breach of a collective bargaining agreement and resulting damages. The facts relevant to the instant discovery dispute are set forth below.

On March 11, 1987, Plaintiff was seriously injured at work while operating a fork lift. At the time, Plaintiff was employed by A.P.A. Transport Corporation (hereinafter "A.P.A."). A.P.A. subsequently investigated the incident and determined that the incident was caused by Plaintiff's own gross negligence. A.P.A therefore terminated Plaintiff's employment.

Plaintiff filed a grievance in connection with his termination, which was held in abeyance during his pursuit and receipt of workers' compensation benefits. In total, Plaintiff collected the

maximum of 600 weeks of partial benefits between the years 1987 and 2000. In addition to receiving workers' compensation benefits, Plaintiff was granted social security disability benefits starting in 1995 (retroactive to 1987). It is New Penn's understanding that Plaintiff continues to receive these social security benefits.

After the exhaustion of his workers' compensation benefits, Plaintiff's grievance proceeded through the grievance procedure. Ultimately, on October 16, 2001, the New England Joint Area Grievance Committee ordered Plaintiff, as a prerequisite to his reinstatement on to A.P.A.'s seniority list, to provide A.P.A. with documentation establishing his physical ability to return to unrestricted duties and submit to a ten-day suspension. Plaintiff failed to produce the necessary documentation and, as a result, was not reinstated. Indeed, as of the date of this filing, Plaintiff has not submitted the necessary documentation.

In February, 2002, A.P.A. ceased operations. As a result, New Penn negotiated an agreement with The Teamsters National Freight Industry Negotiating Committee to place current A.P.A. employees with seniority at A.P.A. on New Penn's terminal call list. In order to receive work opportunities from New Penn, Teamsters Local 25 was required to provide a list to New Penn indicating which A.P.A. employees wanted to be placed on New Penn's call list and their terminal preferences. This list had to be provided to New Penn by March 1, 2002. Under the terms of the agreement, New Penn's obligation to provide those employees with work expired after March 31, 2003. If an A.P.A. employee worked 30 days in a two-month period from March 1, 2002 through March 30, 2003, that employee would receive seniority at New Penn. New Penn received the list from the union, but Plaintiff's name was not on it. Consequently, New Penn never called the Plaintiff.

2

Despite the above, Plaintiff now claims that New Penn somehow breached the collective bargaining agreement by failing to offer him work. Plaintiff's grievance on that issue was dismissed as having been untimely. Consequently, Plaintiff has also sued Teamsters Local 25 in this lawsuit alleging that it breached its duty of fair representation.

**B.**  **Plaintiff's Physical Condition As A Part of His Claims And The Applicable Defenses**

Plaintiff's lawsuit against New Penn alleges that New Penn violated the collective bargaining agreement when it failed to call Plaintiff for work subsequent to the closing of A.P.A. In order to have a valid claim against New Penn, Plaintiff must be able to show that he was *able* to work. Plaintiff has therefore placed his physical ability to perform the subject job position directly at issue in this case. In addition, Plaintiff is seeking back pay as part of his damages. Obviously, Plaintiff should not receive any back pay for any period he was not able to work.

During Plaintiff's deposition on October 4, 2005, New Penn learned for the first time that Plaintiff applied for and received social security disability benefits. As a result of Plaintiff's deposition testimony, counsel for New Penn wrote to Plaintiff's counsel on October 6, 2005, requesting that Plaintiff execute a release in order for New Penn to obtain Plaintiff's social security disability benefits file from Social Security. (*See* Exhibit A). On October 12, 2005, Plaintiff's counsel indicated that Plaintiff would not execute the release.

**C.**  **New Penn's Efforts To Resolve The Discovery Dispute And Compliance With Local Rule 37.1**

On October 12, 2005, and prior to the deposition of another witness, counsel for New Penn and the Plaintiff met for approximately ten minutes in Plaintiff's office to discuss and attempt to resolve this discovery dispute. During that meeting, Plaintiff's counsel indicated that,

3

in lieu of Plaintiff's production of an executed release, New Penn would have to ask Plaintiff in a document request to produce the social security file. New Penn's counsel objected to this, stating that Plaintiff has no right to first examine the file to determine what is relevant before producing it and that New Penn was entitled to obtain the file directly from social security. New Penn's counsel also indicated that if Plaintiff was concerned about confidentiality, New Penn would enter into a reasonable confidentiality agreement. Plaintiff's counsel rejected this offer and indicated that Plaintiff would not sign the authorization.

New Penn therefore moves this Court for an Order compelling Plaintiff's execution of the attached release to enable New Penn to obtain his complete social security file directly from Social Security.

## II.   LAW AND ARGUMENT

### A.   Plaintiff's Complete Social Security File, Including The Medical Records Contained Therein, Is Relevant And Discoverable

Pursuant to Federal Civil Rule 26, parties are entitled to discovery "regarding any matter, not privileged, that is relevant to the claim or defense of the party." The scope of discovery, like the standard of relevancy, is "very broad." *Greenberg v United States of America*, No. 89-2390-MC, 1990 U.S. Dist. Lexis 12091 *9 (D.C. Mass. Sept. 7, 1990)(attached hereto as "Exhibit B"). Indeed, "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005). Relevant information "encompasses 'any matter that bears on, *or that reasonably could lead to other matter that could bear on*, any issue that *is or may be* in the case.'" *Id.*, citing *Oppenheimer Fund, Inc. v.* Sander, 437 U.S. 340, 351 (1978)(emphasis added). Accordingly, "[r]elevancy is broadly construed, and a request for

4

discovery should be considered relevant if there is *any possibility* that the information sought may be relevant to the claim or defense of any party." *Id.* (emphasis added). In other words, "unless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed." *Id.*

In this case, Plaintiff's social security file, including the medical records contained therein, is not subject to any privilege. First, and as it relates to Plaintiff's medical information, neither Massachusetts nor the federal common law recognizes a physician-patient privilege. *Usen v. Usen*, 359 Mass. 453 (1971); *Merrill*, 227 F.R.D. at 471 (noting that "no physician-patient privilege exists under the federal common law"). Instead, a plaintiff's medical records are discoverable where, as here, his physical condition is relevant to the claims or defenses. *Guimares v. Del Prete*, 5 Mass. L. Rep. 180 (Sup. Ct. Mass. 1996)(compelling the production of medical records from plaintiff's treating physician, gynecologist, cardiologist, psychologist and social worker because plaintiff placed her mental and physical health at issue); *Brandon v. Department of Public Welfare*, No. 95-5597, 1997 U.S. Dist. Lexis 7080 *5-6 (E. D. Pa. May 14, 1996)(compelling the production of executed medical authorizations where defendant placed his physical condition at issue during deposition)(attached hereto as "Exhibit C"); *Tauro v. A. Gange & Sons, Inc.*, No. 95-2757-C, 1996 Mass. Super. Lexis 486 (Sup. Ct. Mass. July 18, 1996) (compelling the production of plaintiff's medical/psychological records because plaintiff placed her emotional and physical health at issue)(attached hereto as "Exhibit D"); *Misitano v. Ghaffar*, 1 Mass. L. Rep. 405 (Sup. Ct. Mass. 1993)("[f]undamental fairness as embodied in the rules governing discovery" demanded defendant's access to the decedent's psychological records where the decedent's emotional condition was placed at issue); *see also, Merrill, supra.*

5

Plaintiff's physical condition and his resulting ability to perform the necessary job responsibilities lie at the heart of his claims, as well as the defense. If Plaintiff is disabled and cannot work, he cannot claim that New Penn breached the collective bargaining agreement when it failed to call Plaintiff for work. In addition, Plaintiff is not entitled to any back pay or front pay for the period in which he is disabled. Accordingly, New Penn must have access to Plaintiff's complete social security file to assess the validity of and defend against Plaintiff's claims.

Second, and assuming, *arguendo,* that there was an applicable privilege relating to the medical documentation, Plaintiff's placement of his physical condition at issue in this case constitutes a waiver of any such privilege. *See, e.g., Guimares, supra, citing ALM GL ch. 233 §20B(c)*(statutory psychotherapist-patient privilege is waived where patient introduces his mental condition as an element of the claim or defense and the court determines that disclosure is more important to the interests of justice than is protection of the relationship).

Finally, any issues concerning the alleged confidentiality of Plaintiff's medical information can be adequately addressed through the execution of a Stipulated Protective Order. See, *e.g., Williams v. NPC Int'l., Inc.,* 224 F.R.D. 612 (N.D. Miss. 2004)(granting defendant's motion to compel executed medical authorizations over plaintiffs' relevancy objections and holding that the executed stipulated protective order adequately protected plaintiffs' privacy interests). New Penn's previous proposal to enter into such an Order, however, was rejected by Plaintiff's counsel.

6

**B.    This Court Has The Inherent Authority To Order Plaintiff To Produce
An Executed Authorization For The Release Of The Requested Records**

This Court has the inherent authority to order Plaintiff to execute authorizations for the release of the requested records. *Greenberg*, No. 89-2390-MC, 1990 U.S. Dist. Lexis 12091 *9, *citing Turick v. Yamaha Motor Corp.*, 121 F.R.D. 32 (S.D.N.Y. 1988)(ordering the production of medical reports or executed releases because defendant was "clearly" entitled to plaintiff's medical records); *see also, Cauley v. Ingram Micro, Inc.*, 220 F.R.D. 26 (W.D.N.Y. 2003)(recommending dismissal of plaintiff's case as a sanction for failing to comply with two previous discovery orders compelling the production of executed medical authorizations and, in the alternative, granting defendant's cross motion to compel those authorizations); *Blackmond v. UT Medical Group, Inc.*, No. 02-2890 MaV, 2003 U.S. Dist. Lexis 18572 (W.D.Tenn. September 17, 2003) (granting defendant's motion to compel plaintiff's production of executed medical and employment authorizations)(attached hereto as "Exhibit E" );  *Mullins v. Toyota Motor Mfg.*, 28 Fed. Appx. 479 (6th Cir. 2002)(plaintiff *could not* refuse to provide signed medical authorizations and her conduct in so doing was a violation of the court's discovery order and grounds for dismissal of the action)(attached hereto as "Exhibit I"); *Lischka v. Tidewater Services, Inc.*, No. 96-296, 1997 U.S. Dist. Lexis 538 *5-6   (E.D.La. January 21, 1997)(recognizing that the "large body of cases" "almost universally hold, explicitly or implicitly, that Rule 34, along with Rule 37, empowers federal courts to compel parties to sign written authorizations consenting to the production of various documents," including medical records)(attached hereto as "Exhibit F ").

Plaintiff's offer to obtain the social security file and produce only those documents which he believes are relevant is neither an adequate nor recognized substitute for the production of an

7

executed release.    To allow Plaintiff's counsel to serve as gatekeeper of the evidence and unilaterally determine what information is "relevant" would necessarily undermine the liberal scope of the federal discovery rules and inhibit the required free exchange of information.

Because Plaintiff has placed his physical condition directly at issue in this case, "fundamental fairness" requires that New Penn be entitled access to Plaintiff's unadulterated social security file. *See, Misitano, supra.* Without such access, New Penn will be unable to adequately assess the validity of and defend against Plaintiff's claims.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant New Penn Motor Express, Inc. respectfully moves this Court for an Order compelling Plaintiff's execution of the attached authorization for the release of his complete social security file, including the medical records contained therein, and his application for social security disability benefits.

Respectfully submitted,

/s/ Carl H. Gluek
T. Merritt Bumpass, Jr. (Ohio Bar # 0015189)
mbumpass@frantzward.com
Carl H. Gluek (Ohio Bar #0029531)
cgluek@frantzward.com
FRANTZ WARD LLP
2500 Key Center
127 Public Square
Cleveland, Ohio  44114-1230
(216) 515-1660
(216) 515-1650 (facsimile)

8

and

Nicholas A. Klinefeldt (BBO # 647422)
nklinefeldt@klhboston.com
KELLY, LIBBY & HOOPES, P.C.
175 Federal Street
Boston, Massachusetts 02110
(617) 338-9300
(617) 338-9911 (facsimile)

Attorneys for Defendant New Penn Motor
Express, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of The Motion of Defendant New Penn Motor Express, Inc. to Compel Plaintiff's Execution of an Authorization for the Release of His Social Security Disability File, The Memorandum in Support of that Motion and a Certification of Compliance with Local Rule 37.1 was served upon Scott A. Lathrop, Esq. of Scott A. Lathrop & Associates, Attorney for Plaintiff, 122 Old Ayer Road, Groton, MA 01450 and Kathleen Pennini, Esq. of Dwyer, Duddy, Facklam, Attorney for Teamsters Local 25, One Center Plaza, Suite 360, Boston, MA 02108, via electronic filing and ordinary U.S. mail, postage prepaid, this 26th day of October, 2005.

/s/ Carl H. Gluek
Carl H. Gluek, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRAIG GOULET,                              )   CASE NO. 04-12577 JLT
                                           )
                    Plaintiff,             )   JUDGE TAURO
                                           )
        vs.                                )
                                           )
NEW PENN MOTOR EXPRESS, INC.,              )
et. al.,                                   )
                                           )
                    Defendants.            )

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 37.1

Defendant certifies that it has complied with the provisions of Local Rule 37.1.

Respectfully submitted,

/s/ Carl H. Gluek
T. Merritt Bumpass, Jr. (Ohio Bar # 0015189)
mbumpass@frantzward.com
Carl H. Gluek (Ohio Bar #0029531)
cgluek@frantzward.com
FRANTZ WARD LLP
2500 Key Center
127 Public Square
Cleveland, Ohio 44114-1230
(216) 515-1660
(216) 515-1650 (facsimile)

and

Nicholas A. Klinefeldt (BBO # 647422)
nklinefeldt@klhboston.com
KELLY, LIBBY & HOOPES, P.C.
175 Federal Street
Boston, Massachusetts 02110
(617) 338-9300
(617) 338-9911 (facsimile)

Attorneys for Defendant New Penn Motor
Express, Inc.

# FRANTZ WARD LLP

ATTORNEYS AT LAW

2500 KEY CENTER, 127 PUBLIC SQUARE  •  CLEVELAND, OHIO 44114-1230  •  216.515.1660  •  FAX 216.515.1650
www.frantzward.com
cgluek@frantzward.com  Direct Dial: (216) 515-1604

October 6, 2005

Scott Lathrop, Esq.
Scott A. Lathrop & Associates
122 Old Ayer Road
Groton, MA  01450

Re:     *Craig Goulet v. New Penn Motor Express, et al.*
        *U.S. District Court, District of Massachusetts*
        *Case No. 04-12577-JLT*

Dear Mr. Lathrop:

In light of Mr. Goulet's deposition wherein he has put his physical ability to perform the job at issue, Mr. Goulet's social security file and his application for social security disability benefits has become relevant.  Therefore, I request that you have Mr. Goulet promptly execute the enclosed authorization and return it to my attention so that I may secure Mr. Goulet's social security file.

Very truly yours,

Carl H. Gluek

CHG:elv
Enclosures

cc:     Katherine Pennini, Esq.
        T. Merritt Bumpass, Jr., Esq.

EXHIBIT
A

bcc:    Mr. Andrew J. Kerlik
            Ellen Toth, Esq.

## AUTHORIZATION TO DISCLOSE MEDICAL AND
## PSYCHOLOGICAL/PSYCHIATRIC INFORMATION

I hereby authorize you to disclose a copy of the health information identified below for **CRAIG GOULET**, to Carl H. Gluek, Esq. of Frantz Ward LLP, 2500 Key Center, 127 Public Square, Cleveland, Ohio 44114. The health information disclosed will be used in connection with the action *Craig Goulet v. New Penn Motor Express, et al.,* in the United States District Court of Massachusetts, Case No. 04-12577-JLT.

This authorization shall expire within 90 days. A photocopy of this authorization is to be considered as effective and valid as the original.

The health information subject to this authorization includes any and all information maintained by SOCIAL SECURITY regarding CRAIG GOULET From MARCH 1, 1987 to THE PRESENT, including any diseases, diagnoses, and treatments whether medical or psychiatric in nature. The health information to be disclosed includes, but is not limited to, medical records, summaries, operative reports, evaluations, charts, notes, pathology, x-ray reports, progress notes, nurses notes, and video or audio recordings relating to the physical, physiological, psychological, psychiatric or emotion treatment and the application for social security benefits of CRAIG GOULET.

I understand that the health information described above may be redisclosed and no longer protected by the privacy regulations promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996.

I further understand that I may revoke this authorization by providing a written notice to SOCIAL SECURITY with a copy sent by certified mail to Frantz Ward LLP at the address listed above.

Dated this _____ day of October 2005.


_____
CRAIG GOULET


_____
SOCIAL SECURITY NUMBER


_____
DATE OF BIRTH

EXHIBIT

*B*

LEXSEE 1990 U.S. DIST. LEXIS 12091

**HANNA GREENBERG AND DANIEL GREENBERG, Plaintiffs v. UNITED STATES OF AMERICA, Defendant**

**Civil Action No. 89-2390-MC**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

*1990 U.S. Dist. LEXIS 12091*

**September 7, 1990**

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1]

For the Plaintiff: Jerome M. Leonard, Esq., Ropes & Gray, Boston, Massachusetts.

For the Defendant: Annette Forde, Esq., Assistant United States Attorney, Department of Justice, Office of the United States Attorney, Boston, Massachusetts.

**JUDGES:**

Joyce L. Alexander, United States Magistrate.

**OPINIONBY:**

ALEXANDER

**OPINION:**

ORDER ON PLAINTIFFS' MOTION TO QUASH DEPOSITION SUBPOENA AND DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

The discovery motions which are the subject of this order are part of the proceedings in this personal injury action arising out of an automobile accident on January 4, 1987. Plaintiffs are proceeding under the Federal Tort Claims Act *(28 U.S.C. § § 1346*(b), 2671, et seq.) to claim damages for disability, lost earnings and medical expenses from the defendant, United States of America. At issue in both Plaintiffs' Motion to Quash and Defendant's Motion to Compel are plaintiff Hanna Greenberg's medical records.

PROCEDURAL HISTORY

On May 17, 1990, defendant served its second request for production of documents on the plaintiffs pursuant to *Fed. R. Civ. P. 34.* The request sought plaintiff Hanna Greenberg's signature on an authorization form which would allow defendant access [*2] to her medical records. n1 Plaintiff refused to sign the release on the grounds that the records were not in her "custody, possession or control." (Defendant's Opposition to Motion to Quash, hereafter "Defendant's brief", pp. 2-3). Defendant did not move the court for an order compelling plaintiff to execute the release at that time. Instead, defendant chose to depose plaintiff's physicians, and by subpoena duces tecum, require her doctors to bring to their depositions Hanna Greenberg's medical records. n2 Plaintiff has moved the court to quash the deposition subpoena issued to Dr. Horne on the grounds that it is substantively defective and improperly served. Plaintiff further claims that Dr. Horne's involvement in the case is "very limited", and that there is no claim that his services are related to the accident or Mrs. Greenberg's injuries. (Plaintiff's Memorandum in Support of Motion to Quash, hereafter "Plaintiff's brief", p. 5).

n1 The proposed release form can be found in Exhibit A to defendant's brief and would authorize "the United States, or any physician designated by the United States to examine, inspect, photograph, or copy any X-ray pictures taken of me and/or any records or reports which you may have regarding my condition or treatment. This authorization covers records maintained by any insurance companies, Medicaid and Medicare. It is understood that these documents will be used in connection with the above-entitled matter only."

[*3]

n2 Defendant issued deposition subpoenas to both Dr. Herbert Horne and Dr. Robert E. Johnson on July 30, 1990. Dr. Johnson's subpoena is not being questioned by plaintiff's motion, and is not before the court. (Plaintiff's brief, p. 1).

Defendant opposes the motion claiming the deposition subpoena is accurate, effective and properly served. Defendant states that Mrs. Greenberg's medical condition is at issue in this personal injury case, and that it is entitled to her medical records. Defendant has moved the court for an order compelling Mrs. Greenberg to authorize the release of her medical records.

I. Dr. Horne's Subpoena

Plaintiff claims the subpoena served on Dr. Horne should be quashed as it states:

You may avoid appearing at this deposition by providing a certified or notarized copy of the records requested to the Assistant U.S. Attorney named below on or before August 10, 1990, at 11:00 a.m.

Exhibit A to Plaintiff's Motion to Quash. Plaintiff claims that since the subpoena duces tecum is not issued in connection with a deposition, (i.e.: that defendant does not intend to depose [*4] Dr. Horne) it is defective and should be quashed.

It is true that a subpoena duces tecum served upon a non-party, and not in connection with a deposition of that party, is not permitted by the Federal Rules. *Fed. R. Civ. P. 45(a)* states:

Every subpoena . . . shall command each person to whom it is directed to attend and give testimony at a time and place therein specified. (emphasis added).

*Fed. R. Civ. P. 45(b)* continues:

A subpoena may also command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein . . . . (emphasis added).

The power to issue a subpoena duces tecum to a non-party is by the language of Rule 45 corollary to the power to depose non-party witnesses. This proposition is perspicuous when compared with the power of a litigant to request the production of documents from a party under Rule 34. When seeking document from non-parties, a litigant must proceed according to *Fed. R. Civ. P. 45* allowing depositions of witnesses.

The most recent case cited by plaintiff in support of her motion, *Bowers v. Buchanan, 110 F.R.D. at 406 (S.D.W.Va. 1986)* considered the validity of a subpoena [*5] duces tecum issued after the conclusion of a non-party witness' deposition. The court quashed the subpoena agreeing with the witness that "a subpoena duces tecum is limited to use in conjunction with a deposition and trial." *Bowers v. Buchanan, 110 F.R.D. 405 at 406.* See also *Turner v. Parsons, 596 F. Supp. 185 (E.D.Pa. 1984)* (non-party cannot be subpoenaed solely to produce documents); *Ghandi v. Police Dept. of Detroit, 74 F.R.D. 115 (E.D.Mich. 1977)* ("Rule 45 may not be invoked to obtain documentary evidence from non-parties prior to trial if the party invoking the rule has no intention of taking the deposition of the person to whom the subpoena is directed." (n.3, at 118)); *United States v. International Business Machines Corp., 71 F.R.D. 88 (S.D.N.Y. 1976); McLean v. Prudential S.S. Co., 36 F.R.D. 421 (E.D.Va. 1965); Newmark v. Abeel, 106 F. Supp. 758 (S.D.N.Y. 1952).*

Defendant appears to state its genuine intent to take Dr. Horne's deposition, but also states that its "needs extend only to the records themselves." (Defendant's brief at 4). It is apparent that defendant attempted to offer Dr. Horne "the opportunity to provide the documents prior to [*6] the date of his appearance" (Defendant's brief at 4) or "the option of sending the documents in lieu of [his] appearance" (Defendant's brief at 3). It is the latter option which is not permitted under *Fed. R. Civ. P. 45.* Defendant, of course, may depose Dr. Horne, and incident to that deposition require that he produce the requested documents. Defendant may not offer the witness the alternative, however appealing, of providing those documents "in lieu" of his appearance.

II. Service of a Subpoena Under *Fed. R. Civ. P. 45*

Plaintiff claims that Dr. Horne's subpoena should be quashed because it was delivered to Dr. Horne by U.S. mail. *Fed. R. Civ. P. 45(c)* provides in part:

A subpoena may be served by the marshal, by a deputy marshal, or by any other person who is not a party and is not less than 18 years of age. Service of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person . . .

There is no mention of service by mail.

Defendant claims that the permissive word "may" of the first sentence allows for alternative means of effective service. This court disagrees. The mandatory language of the second sentence requires personal [*7] delivery upon the person to be deposed. *In re Deposition Subpoena Directed to Smith, 126 F.R.D. 461 (E.D.N.Y. 1989)* (personal service upon a witness' attorney is not

permitted); *FTC v. Compagnine de Saint-Gobain-Pont-A-Monsson, 636 F.2d 1300 (D.C.Cir. 1980)* (delivery to witness' dwelling does not effect proper service of a subpoena). See also 5A Moore's Federal Practice 45.06[1]; Wright & Miller, Federal Practice & Procedure, § 2461 at 447.

As defendant noted in its brief, Dr. Horne will have to be served once again if defendant chooses to depose him. To comply with *Fed. R. Civ. P. 45(c)*, such service must be made by personally delivering the subpoena to Dr. Horne.

III. Defendant's Motion to Compel Production of Documents

Defendant served its Request for Production of Documents dated May 17, 1990 on plaintiffs seeking production of plaintiffs' medical records through their signatures authorizing the records' release. (The release, discussed earlier, is partially set out in footnote 1). Plaintiff Hanna Greenberg refused to comply on the grounds that the medical records were not in her custody or control, and are therefore beyond the reach of *Fed. R. Civ. P.* [*8] *34*. (Defendant's brief at p. 3-4). n3 This contention is specious. Plaintiff also appears to claim that the records are not relevant, and hence not discoverable. (Plaintiff's brief at p. 5). The Federal Rules require a party to allow the requesting litigant to

inspect and copy test or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served.

*Fed. R. Civ. P. 34(a)*. "Control" for purposes of the Rule is established where, although the party does not have physical possession of the requested documents, she has the legal right to obtain them. *In re Folding Carton Antitrust Litigation, 76 F.R.D. 420 (N.D.Ill. 1977)*; 18 Wright & Miller, Federal Practice & Procedure, § 2210; 4A Moore's Federal Practice, § 35.17.

n3 This court does not have before it any written objections to Defendant's Request to Produce Documents, or an opposition to Defendant's Motion to Compel, and relies on the statement of facts set out in defendant's brief as an accurate statement of plaintiff's position.

[*9]

Plaintiff is in control of her medical records, as she has the legal right to obtain them. In addition to her own access, "by granting or withholding her consent, plaintiff determines who might have access to [the records]." *Smith v. Maryland Casualty Co., 42 F.R.D. 587, 588 (E.D.La. 1967)*.

It is within the federal court's authority to order plaintiff to execute releases in order to obtain documents which she has a legal right to possess. *United States ex rel. Woodard v. Tynan, 776 F.2d 250 (1985)*.

n4 In the following cases, the court ordered a party to produce medical records by executing a release form: *Turick v. Yamaha Motor Corp., 121 F.R.D. 32 (S.D.N.Y. 1988); Urseth v. Dayton, 653 F. Supp. 1057 (S.D.Ohio 1986); Fleming v. Gardner, 84 F.R.D. 217 (E.D.Tenn. 1978)*.

Plaintiff appears to further claim that the records of her examinations by Dr. Horne are irrelevant to the present case. (Plaintiff's brief at p. 5). The standard of relevancy for discovery purposes is very broad requiring that the [*10] requested materials be relevant to the subject matter of the suit, and "reasonably calculated to lead to the discovery of admissible evidence." *Fed. R. Civ. P. 26(b) (1)*.

In this personal injury action, Hanna Greenberg's health is at the heart of her claim. Her medical records are relevant and discoverable under *Fed. R. Civ. P. 26(b)* and *34*. Plaintiff is, therefore, ordered to physically produce the requested medical records, or execute the proposed release to authorize defendant's access to them.

Plaintiff's Motion to Quash Dr. Horne's Deposition Subpoena is hereby granted for the reasons stated above. n5 Defendant's Motion to Compel the Production of Documents is hereby granted.

n5 Defendant may, however, consistent with this Order., re-notice the deposition of Dr. Horne.

EXHIBIT

*C*

LEXSEE 1997 US DIST LEXIS 7080

DANIELLE J. BRANDON v. DEPARTMENT OF PUBLIC WELFARE, et al.

CIVIL ACTION NO. 95-5597

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

*1997 U.S. Dist. LEXIS 7080*

May 14, 1997, Decided
May 14, 1997, FILED; May 15, 1997, ENTERED

COUNSEL: [*1] For DANIELLE J. BRANDON, PLAINTIFF: LEK DOMNI, LAW OFFICE OF LEK DOMNI, P.C., PHILADELPHIA, PA USA.

For DEPARTMENT OF PUBLIC WELFARE, BENSALEM YOUTH DEVELOPMENT CENTER, ZACHARY SAMS, DEFENDANTS: DENISE A. KUHN, OFFICE OF ATTORNEY GENERAL, PHILA, PA USA. For LAVERNE ALFORD, RICHARD A. SCZCUROWSKI, DANIEL GREEN, DEFENDANTS: ELIZABETH A. MALLOY, KLETT, LIEBER, ROONEY & SCHORLING, PHILADELPHIA, PA USA. CHARLES B. GIBBONS, KLETT, LIEBER, ROONEY AND SCHORLING, PITTSBURGH, PA USA.

JUDGES: THOMAS J. RUETER, United States Magistrate Judge

OPINIONBY: THOMAS J. RUETER

OPINION:

MEMORANDUM ORDER

Thomas J. Rueter
United States Magistrate Judge

May 14, 1997

Presently before the court is plaintiff's motion to compel defendant Terry Davis to execute a release of information authorization form and defendants' response thereto. n1 In order for this court to decide plaintiff's motion, it first must consider the Honorable James McGirr Kelly's order dated September 20, 1996 granting in part defendants' motion to dismiss the First Amended Complaint. In particular, this court must determine whether Terry Davis remains as a defendant in this case.

n1 By order dated September 20, 1996, the Honorable James McGirr Kelly referred this case to the undersigned for all further proceedings and the entry of judgment, in accordance with *28 U.S.C. § 636*(c) and the consent of the parties.

[*2]

I. DISCUSSION

A. Defendants' Motion to Dismiss and the September 20, 1996 Order.

In their motion to dismiss, defendants requested that the entire First Amended Complaint be dismissed pursuant to *Fed. R. Civ. P. 41(b)*. In the alternative, defendants' requested that: (1) plaintiff Tiauna Brandon be dismissed as a plaintiff; (2) Count IV of the First Amended Complaint be dismissed to the extent that it is brought against defendants Zachary Sams and Terry Davis; and (3) Count V of the First Amended Complaint be dismissed in its entirety. n2 See Defendants' Memorandum of Law in Support of Motion to Dismiss at 5-6.

n2 In the September 20, 1996 order, Judge Kelly granted in part defendants' motion to dismiss the First Amended Complaint. Judge Kelly denied defendants' request to dismiss the First Amended Complaint in its entirety pursuant to *Fed. R. Civ. P. 41(b)*. Judge Kelly dismissed Tiauna Brandon as a plaintiff in this case, leaving Danielle J. Brandon as the only plaintiff, and dismissed Count V of the First Amended Complaint in its entirety.

[*3]

With respect to defendant Terry Davis, the September 20, 1996 order stated that "Defendant Terry Davis is DISMISSED." The September 20, 1996 order, however, is accompanied and explained by a nine page Memorandum. In the Memorandum, Judge Kelly stated in pertinent part as follows: "As a preliminary matter, plaintiffs do not challenge those parts of defendants' motion which seek to have ... defendant Terry Davis dismissed from this action with prejudice. Accordingly, the Court shall grant those portions of defendants' motion as to all defendants." See Memorandum, No. 95-CV-5597 at 1-2 (E.D. Pa. Sept. 20, 1996). To the extent that the order seems to broadly state that defendant Davis is generally dismissed, the court's memorandum clearly explains that the court intended to grant only "those portions of defendants' motion" which relate to defendant Davis. Defendants' motion did not seek to have Davis dismissed as a defendant generally as to all counts in the First Amended Complaint. Rather, defendants' request to dismiss Davis as a defendant was specific to Count IV. Consequently, the September 20, 1996 order and memorandum granted only this portion of the motion and dismissed defendant [*4] Davis with respect to Count IV only.

Plaintiff also argues that Davis remains as a defendant in Count IV of the First Amended Complaint (raising a claim under Title VII) in his official capacity. In his memorandum, Judge Kelly concluded that, under the law as set forth by the Third Circuit Court of Appeals, individual employees are not liable under Title VII. See Memorandum, No. 95-CV-5597 at 5. Consequently, in addition to dismissing Count IV as to defendant Davis, the court also dismissed Count IV as to the other individual defendants "in their individual capacity". See Order dated September 20, 1996 at P 3. Judge Kelly further concluded that individuals may be held liable under Title VII in their "official capacity". Id. at 6. Judge Kelly did not dismiss Count IV as to any of the individual defendants in their "official capacities." Consequently, Davis remains as a defendant to Count IV in his official capacity.

**B. Plaintiff's Motion to Compel Defendant Terry Davis to Execute Release of Information Authorization Form.**

In her First Amended Complaint, plaintiff alleged that defendant Davis walked up behind her at work, put her arms around his waist, and rubbed [*5] his then erect penis against her buttocks. This event occurred during the period of March 13, 1995 through April 21, 1995. See First Amended Complaint at P 21. At his deposition on December 12, 1996, Davis testified that he was presently unable to have an erection, and was unable to have one in March, 1995. See Plaintiff's Motion to Compel Defendant Terry Davis to Execute Release of Information Authorization Form at Exh. A. On January 20, 1997, counsel for plaintiff served on counsel for defendant Davis a "Release of Information" authorization form authorizing the release of medical records from Davis' physician, David E. Nicklin, M.D. See Plaintiff's Motion to Compel Defendant Terry Davis to Execute Release of Information Authorization Form at Exh. B. Davis has not executed the form.

This court finds that defendant Davis' medical records concerning his ability to have an erection are relevant to this litigation. Defendant Davis placed this information in issue at his deposition. Consequently, this court shall order Davis and his counsel to execute the "Release of Information" authorization form and to produce his medical records that address his ability to have an erection. [*6]

For all the above reasons, it is hereby

**ORDERED**

1. Terry Davis remains as a defendant to Counts I, II, III, and VII of the First Amended Complaint;

2. Defendant Davis remains as a defendant to Count IV of the First Amended Complaint in his official capacity only;

3. Defendant Davis shall produce to plaintiff his medical records that address his ability to have an erection; and

4. Defendant Davis and his counsel shall execute the "Release of Information" authorization form requested by counsel for plaintiff, subject to the limitation in the subject matter of the medical records to be produced set forth in paragraph 3 of this order.

BY THE COURT:

THOMAS J. RUETER

United States Magistrate Judge

**EXHIBIT**

tabbies

D

LEXSEE 1996 MASS SUPER LEXIS 486

**Maria Tauro v. A. Gange & Sons, Inc., Anthony Gange, and Paul Gange**

**95-2757-C**

**SUPERIOR COURT OF MASSACHUSETTS, AT MIDDLESEX**

*1996 Mass. Super. LEXIS 486*

**July 17, 1996, Decided**
**July 18, 1996, Filed**

**LexisNexis(R) Headnotes**

**JUDGES:** [*1] Wendie I. Gershengorn, Justice of Superior Court.

**OPINIONBY:** Wendie I. Gershengorn

**OPINION:** Memorandum and Order

Plaintiff, Maria Tauro filed a complaint against defendants A. Gange & Sons, Anthony Gange and Paul Gange ("defendants") alleging that over the course of the ten (10) years she was employed by the defendants she was subjected to verbal sexual harassment. In her complaint and in her deposition, plaintiff alleges that she has sustained extreme emotional, psychological, physical and monetary harm, as a result of the alleged harassment.

Defendants seek to compel production of medical psychological records from her specified two physicians and two psychiatrists and pursuant to *G.L.c. 233, 20B(c)*.

Plaintiff alleges the material requested is privileged pursuant to G.L.c. 233.

The defendants' motion to compel is *allowed* subject to certain terms and conditions.

FINDINGS AND DISCUSSION

In this case the plaintiff has introduced her mental and emotional condition as an element of her claim. Medical/psychological records may reveal mental and emotional distress caused by prior, unrelated events. General laws c. 233, 20B(c) provides a waiver of the psychotherapist/patient [*2] privilege where the patient introduces her mental or emotional condition as an element of her claim or defense and the judge finds that it is more important to the interests of justice that the communica-

tion be disclosed than that the relationship be protected. *G.L.c. 233, 20B(c)*. I so find.

Plaintiff seeks to prove that she has suffered great emotional, psychological and physical harm as a result of defendants' actions. She has named doctors whose help she sought. Defense counsel should have the right to inquire into plaintiff's treatment for the purpose of showing that the distress was caused at least in part by circumstances other than those that were job related. Defense counsel must be allowed additionally to test opinions that may be given by therapists, if any such opinion is anticipated.

This Court *orders* release of the medical psychological records to defense counsel subject to the following terms and conditions.

ORDER

1. Counsel shall have access to the records solely in their capacity as officers of the court. Counsel shall not disclose or disseminate any portion of the contents of the treatment records to anyone, including the defendant, without prior [*3] application to and an order of the court.

2. The treatment records sought by the defendant shall be made available to counsel in the Court House during regular business hours under arrangements to be made by the clerk. Counsel may read and make notes concerning the treatment records, but no portion of the treatment records shall be photocopied or reproduced without prior application to and an order of the Court.

3. Counsel shall not offer or adduce any portion of the victim's treatment records in evidence at trial or in connection with any other proceeding except on order of the Court.

1996 Mass. Super. LEXIS 486, *

4. At the conclusion of any trial or other disposition of this action, counsel shall deliver to the clerk, under seal, all originals and all copies of any treatment records produced to counsel for the defendant pursuant to any subsequent order of the Court.

Wendie I. Gershengorn

Justice of Superior Court



EXHIBIT

E

LEXSEE 2003 US DIST LEXIS 18572

**YVONNE S. BLACKMOND, Plaintiff, vs. UT MEDICAL GROUP, INC., Defendant.**

**No. 02-2890 MaV**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE, WESTERN DIVISION**

*2003 U.S. Dist. LEXIS 18572*

**September 17, 2003, Decided**

**SUBSEQUENT HISTORY:** Motion denied by *Blackmond v. UT Med. Group, Inc., 2004 U.S. Dist. LEXIS 27197 (W.D. Tenn., Nov. 3, 2004)*

**DISPOSITION:** [*1] Defendant's motion to compel discovery granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** YVONNE S. BLACKMOND, plaintiff, Pro se, Memphis, TN.

For UT MEDICAL GROUP, INC., defendant: Frederick J. Lewis, Esq., Thomas L. Henderson, Esq., Whitney Fogerty, LEWIS FISHER HENDERSON CLAXTON AND MULROY, Memphis, TN.

DIANE VESCOVO, miscellaneous, Pro se, Memphis, TN.

**JUDGES:** DIANE K. VESCOVO, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** DIANE K. VESCOVO

**OPINION:**

ORDER GRANTING DEFENDANT'S MOTION TO COMPEL DISCOVERY

Before the court is the *Rule 37* motion of the defendant, UT Medical Group, Inc., filed August 25, 2003, requesting the court to compel the plaintiff, Yvonne S. Blackmond, to: (1) serve *Rule 26(a)(1)* initial disclosures, (2) respond to UT's interrogatories and requests for production, (3) execute an employment records authorization form and a medical records authorization form, and (4) appear for her deposition. The motion was referred to the United States Magistrate Judge for determi-

nation. For the reasons set forth below, UT's motion is granted.

Blackmond filed a pro se complaint alleging a violation of *Title VII of the Civil Rights Act of 1964* on November 20, 2002. On May 6, 2003, the court denied UT's motion to waive the requirements [*2] of *Rule 26(a)(1) of the Federal Rules of Civil Procedure* and ordered the parties to comply with the initial disclosure requirements of *Rule 26(a)(1)*. In compliance with the order, UT served its initial disclosures on Blackmond. As of August 25, 2003, Blackmond had not provided UT with her disclosures required by *Rule 26(a)(1)*.

On July 7, 2003 UT served its first set of interrogatories, its first request for production of documents, and a notice of deposition on Blackmond. In response, Blackmond served on UT and filed with the court "notices" to postpone all of the above, stating she would comply when a more "suitable date" was appropriate, without explanation of what date would be suitable. "Notices" declining to sign an authorization of health information and declining to sign an employment records release, both without explanation, were also filed and served. Because the "notices" did not comply with the Federal Rules of Civil Procedure, the court ordered them stricken from the docket as irregular documents.

UT then attempted to call Blackmond to obtain the discovery responses. After leaving an answering machine message for Blackmond on [*3] August 5, 2003, UT mailed Blackmond a letter on the same day requesting Blackmond to contact UT's counsel to discuss the "notices" declining to provide discovery. Blackmond responded by letter, dated August 8, 2003, stating she intended to respond to discovery and appear for a deposition at a mutually agreed upon time, yet failed to indicate when that time would be.

Pursuant to *Federal Rules of Civil Procedure 33 and 34*, the party upon whom interrogatories and requests for

2003 U.S. Dist. LEXIS 18572, *

production of documents are served shall serve written responses or objections within thirty days after service of the requests. *FED. R. CIV. P. 33, 34.* Blackmond failed to properly respond or object to the interrogatories and production requests within the thirty day time period. "As a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived." *In re United States, 864 F.2d 1153, 1156 (5th Cir. 1989).* Pro se litigants, like any other litigants, must [*4] comply with the Federal Rules of Civil Procedure. *Feinstein v. Moses, 951 F.2d 16, 20 (1st Cir. 1991).*

Blackmond did not comply with UT's request for an authorization of health information and an employment records release and she failed to properly object to the request pursuant to *Rule 34,* which requires that reasons for the objections be stated. *FED. R. CIV. P. 34(b). Rule 34(a)* allows a party to request documents that are in the possession, custody, or control of the party being served. Plaintiff has control over her medical and employment records because "by either granting or withholding [her] consent, [she] may determine who shall have access to them." *Lischka v. Tidewater Servs., 1997 U.S. Dist. LEXIS 538, Civ. A. No. 96-296, 1997 WL 27066 at *2 (E.D. La. Jan. 22, 1997),* (quoting *Smith v. Maryland Cas. Co., 42 F.R.D. 587, 589 (E.D. La. 1967)).* However, the request for plaintiff's authorization of health informa-

tion must comply with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Pub.L. 104-191, Title I, Aug. 21, 1996, 110 Stat. 1978.

Based on the foregoing, UT's motion is [*5] granted. Blackmond, shall (1) file and serve initial disclosures within eleven days of the date of service of this order, (2) answer UT's interrogatories and respond to UT's requests for production of documents within thirty days of the date of service of this order, (3) appear for a deposition within forty-five days of the date of service of this order at a time, date, and location to be noticed by UT, (4) immediately execute an employment records release and provide it to UT, and (5) immediately execute a medical records form and provide it to UT as long as it complies with HIPAA.

Blackmond is warned that any additional failure to appear for deposition and to give testimony and/or failure to comply with other discovery requests and other orders of this court will lead to dismissal of her lawsuit.

IT IS SO ORDERED this 17th day of September, 2003.

DIANE K. VESCOVO

UNITED STATES MAGISTRATE JUDGE



**EXHIBIT**

_F_

LEXSEE 1997 US DIST LEXIS 538

**JOHANNES LISCHKA and LISA LISCHKA VERSUS TIDEWATER SERVICES, INC., TIDEWATER MARINE SERVICE, INC., JACKSON MARINE CORP., GLOBAL MARINE DRILLING CO., and SHELL OIL CO.**

**CIVIL ACTION NO. 96-296 SECTION "R"(4)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA**

*1997 U.S. Dist. LEXIS 538*

**January 21, 1997, Decided**
**January 22, 1997, FILED; January 23, 1997, ENTERED**

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For JOHANNES LISCHKA, plaintiff: Joseph Brandeis Stahl, Joseph B. Stahl, Attorney at Law, New Orleans, LA. For LISA LISCHKA, plaintiff: Joseph Brandeis Stahl, (See above).

For TIDEWATER SERVICES, INC, defendant: William B. Gibbens, III, Charles A. Cerise, Jr., Stephanie D. Skinner, Gelpi, Sullivan, Carroll & Gibbens, New Orleans, LA. For TIDEWATER MARINE SERVICE, INC., defendant: William B. Gibbens, III, (See above). Charles A. Cerise, Jr., (See above). Stephanie D. Skinner, (See above). For JACKSON MARINE CORP, defendant: William B. Gibbens, III, (See above). Charles A. Cerise, Jr., (See above). Stephanie D. Skinner, (See above). For GLOBAL MARINE DRILLING CO., defendant: Arthur Anthony Crais, Jr., Shell Oil Company, Legal Dept, New Orleans, LA. For SHELL OFFSHORE INC, improperly identified as Shell Oil Company, defendant: Arthur Anthony Crais, Jr., (See above).

**JUDGES:** SARAH S. VANCE, UNITED STATES DISTRICT JUDGE

**OPINIONBY:** SARAH S. VANCE

**OPINION:**

### ORDER AND REASONS

Before the Court are three separate appeals by the plaintiffs, Johannes and Lisa Lischka, from various orders entered by Magistrate Judge Ronald Fonseca; a motion by defendants, Tidewater Services, Inc., Tidewater Marine [*2] Service, Inc. and Jackson Marine Corp. (hereinafter referred to collectively as "Tidewater"), for

Rule 11 sanctions against the plaintiffs; and a motion by defendants, Shell Offshore Co. ("Shell") and Global Marine Drilling Co. ("Global Marine"), for partial summary judgment. The facts pertinent to each of the motions are stated below. The motions are resolved as follows.

**I. Plaintiffs' Motion of Appeal From Magistrate's Minute Entry of September 17, 1996 (Record Doc. No. 38) Ordering Plaintiff to Sign Authorizations and Produce Various Documents**

Plaintiffs appeal Magistrate Judge Fonseca's September 17, 1996 Minute Entry granting defendant Shell's motion to compel plaintiffs Johannes and Lisa Lischka to respond to Shell's February 22, 1996 request for production of documents. In that Minute Entry, Magistrate Judge Fonseca ordered plaintiffs to sign various authorizations--to release medical, employment, tax, and Social Security information--that Shell had sent to plaintiffs in blank with its request for production. See Record Doc. No. 28, Minute Entry, and Record Doc. No. 10, Request for Production of Documents. Plaintiffs invoke no privilege on any of the information [*3] sought by Shell. See Record Doc. No. 48 at 13. Nor do they argue that the scope of the discovery sought is too broad. Rather, plaintiffs maintain that Magistrate Judge Fonseca's decision to compel plaintiffs to sign the authorizations was wrong as a matter of law and an abuse of discretion n1 because the Federal Rules of Civil Procedure do not authorize him to issue such an Order. Plaintiff further argues that it would violate the separation of powers doctrine for a federal court to enforce such an order, as such an action would amount to a judicial usurpation of legislative power. Defendants argue that this is an "absolutely frivolous" appeal of a routine discovery Order. For the reasons stated below, plaintiffs' motion is denied, and Magistrate Judge Fonseca's Order is affirmed.

n1 A magistrate judge's decision on a non-dispositive matter is reviewed by a district court on a clearly erroneous or contrary to law basis. *28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72 (a)*.

## A. The Scope of Rule 34

Plaintiffs [*4] first argument is that *Federal Rule of Civil Procedure 34*, which covers the production of documents, does not authorize a magistrate judge to compel a party to sign an authorization consenting to the production of documents. Rule 34 provides, in pertinent part, that:

> **(a) Scope.** Any party may serve on any other party a request (1) to produce and permit the party making the request, or someone acting on the requestor's behalf, to inspect and copy, any designated documents... which are in the possession, custody, or control of the party upon whom the request is served.

*Fed. R. Civ. P. 34(a)*.

Plaintiffs argue that because Rule 34 refers to documents that are, at the time of the request, "in the possession of the party upon whom the request is served" the rule does not cover authorizations sent by the requesting party that need to be signed and sent back to the requesting party. According to plaintiffs, Rule 34 entitles defendants to no more than the right to inspect and photocopy documents that already exist, not to the production of a document yet to have been created.

Plaintiffs do not cite a single case in support of their reading of Rule 34 and completely ignore [*5] the fact that the rule allows for production of documents "which are in the possession, custody, *or control*" of the party upon whom the request is served. *Fed. R. Civ. P. 34(a)* (emphasis added). As other courts in this district have held on this identical issue, this Court finds that, for purposes of Rule 34, plaintiffs are in control of records that can be released via an authorization, "because, by either granting or withholding [their] consent, [they] may determine who shall have access to them." *Smith v. Maryland Casualty Company, 42 F.R.D. 587, 589 (E.D. La. 1967)*.

Plaintiffs also completely ignore a large body of case law that addresses this identical issue. The cases almost universally hold, explicitly or implicitly, that Rule 34, along with Rule 37, n2 empowers federal courts to compel parties to sign written authorizations consenting to the production of various documents. *See e.g., McKnight v. Blanchard, 667 F.2d 477, 481-82 (5th Cir. 1982)* (strongly suggesting that when a party puts his or her physical condition at issue that a court can, upon proper motion, order him or her to sign a medical authorization); *Phillips v. Insurance Company of North America,* [*6] *633 F.2d 1165, 1167-68 (5th Cir. 1981)* (finding that district court could sanction party who failed to comply with discovery order compelling written tax authorizations); *United States, ex rel. Woodard v. Tynan, 776 F.2d 250, 252 (10th Cir. 1985)* (district court has power to issue order compelling party to sign documentation authorizing the release of discoverable documents in possession of non-party); *Snyder v. Brownlow, 1994 U.S. Dist. LEXIS 8220, 1994 WL 273317* at *1-2 (E.D. Va. June 20, 1994) (compelling written authorizations on grounds that documents are within parties "control", for purposes of Rule 34, when they can be released via signed authorization); *Occhino v. Lannon, 150 F.R.D. 613, 615 (D. Minnesota 1993)* (compelling plaintiff to sign written medical authorizations); *Grove v. Aetna Casualty & Suretyship Company, 855 F. Supp. 113, 116 (W.D. Pennsylvania 1993)* ("there is ample support for requiring... signed authorizations, as well as for. judicial imposition of sanctions upon parties who frivolously refuse to provide such authorizations."); *Lewis v. Chicago Housing Authority, 1991 U.S. Dist. LEXIS 13360, 1991 WL 195795 (N.D. Ill. Sept. 25, 1991)* (party compelled to sign forms for IRS to effectuate a subpoena); [*7] *Mary Imogene Bassett Hospital v. Sullivan, 136 F.R.D. 42, 48 (N.D.N.Y. 1991)* (presupposing that federal courts are empowered to compel written authorizations); *Funk v. Disciplinary Board of Commonwealth of Pennsylvania, 1990 U.S. Dist. LEXIS 7143, 1990 WL 82120* at *2 (E.D. Pa. June 12, 1990) (reference made to Order compelling written authorizations for tax and social security information). n3

n2 *Federal Rule of Civil Procedure 37* empowers federal courts to compel disclosure or discovery of items that are properly discoverable under Rule 34. *See Fed. R. Civ. P. 37(a)(2)(B)*.

n3 *See also LaBounty v. McCoy, 1989 WL 153812* at *1 (W.D.N.Y. Dec. 7, 1989) (compelling medical authorizations); *Kramer v. Boeing Company, 126 F.R.D. 690, 698 (D. Minn. 1989)* (compelling written authorizations for disclosure of documents by the Federal Aviation Administration); *Bosarge v. Penrod Drilling Company, 1988 U.S. Dist. LEXIS 9829, 1988 WL 92043* at *1 (E.D. La. Aug. 30, 1988) (ordering written authorizations from IRS, previous employers, health care providers, and Social

Security Administration); *Horace v. Bechtel, 1986 WL 3955* at *2 (E.D. Penn. March 31, 1986) (reference made to Order compelling party to sign authorizations for various college records); *Lammers v. Conrad, 601 F. Supp. 1543, 1548* (E.D. Wisc. Feb. 11, 1985) (precluding plaintiff from prosecuting claims for personal injuries because of refusal to sign written medical authorizations); *Granberg v. Ashland County, 590 F. Supp. 1005, 1011-12 (W.D. Wisc. 1984)* (imposing sanctions on party refusing to sign medical authorizations); *Sklagen v. Greater Southeast Community Hospital, 625 F. Supp. 991, 992-93 (D. D.C. 1984)* (compelling medical authorizations on grounds that federal discovery rules are not implicated); *Fleming v. Gardner, 84 F.R.D. 217, 217-18 (E.D. Tenn. 1978)* (plaintiff may comply with order to produce medical records by signing written authorization); *Smith v. Maryland Casualty Company, 42 F.R.D. 587, 588 (E.D. La. 1967)* (Rule 34 permits courts to require signed authorizations because it permits courts to require a party to produce any document under his control); *Leszynski v. Russ, 29 F.R.D. 10, 13 (D. Maryland 1961)* (medical authorizations required); *Schwartz v. Travelers Insurance Company, 17 F.R.D. 330 (S.D.N.Y. 1954)* (plaintiff exercises control over her hospital records because she determines who shall have access to them by granting or withholding her consent).

[*8]

**B. Plaintiffs' Arguments by Analogy**

Instead of citing any of the relevant cases, plaintiffs make *reductio ad absurdum* arguments, such as the following:

> If there were any law requiring a party to sign and then produce documents sent to it by an adversary, any plaintiff could simply attach to its Complaint a Request for Production that the defendant sign and produce an attached check, in any amount filled in by the plaintiff, to pay off the plaintiff's demands asserted in the Complaint. Which is not the law. Nor is it the law in a products liability case that the plaintiff can send the defendant manufacturer a hunk of steel or other material with a request that the respondent make it into exactly the same product that allegedly harmed the plaintiff and then send it back.

> The Magistrate Judge's ruling herein is a dangerous precedent that flings wide open the door to this and much else of mischief...

Record Doc. No. 48 at 3-4.

These arguments are facially inapplicable. It simply does not follow that if Rule 34 permits courts to compel parties to sign written authorizations, it must also permit parties to compel their adversaries to *create* documents [*9] (or objects) of their choosing. Signing an authorization is an act that can be construed as production of a document under a party's control. *See e.g., Snyder, 1994 U.S. Dist. LEXIS 8220, 1994 WL 273317 at *2* (authorizations show that documents are under a party's control); *Smith, 42 F.R.D. at 589* ("Rule 34 permits the Court to require a party to produce any document under his control. Obviously, the plaintiff is in control of these records, because, by either granting or withholding her consent, she may determine who shall have access to them."). Plaintiffs' failure to even address this argument or to cite any of the numerous cases applying this rationale to find that Rule 34 permits courts to compel the signing of authorizations is inexplicable.

The Court also rejects the plaintiffs' tortured argument that the existence of a Louisiana discovery rule explicitly providing for requests for medical authorizations, *see L.S.A.-C.C.P., Article 1465.1,* n4 bears out plaintiffs' reading of Federal Rule 34. Plaintiffs argue that because the Louisiana legislature essentially adopted the Federal discovery rules prior to passing Article 1465.1 in Articles 1420-1473, the mere passage of Article 1465.1 suggests [*10] that the Federal discovery rules did not provide for the signing of written medical authorizations. *See L.S.A. C.C.P., Articles 1420-1473.* Plaintiffs reason that there would have been no need for the Louisiana legislature to have passed Article 1465.1 if the Federal discovery rules already provided for the signing of written authorizations. The Court is unpersuaded.

> n4 Article 1465.1 provides, in pertinent part, that:

> > A. Any party may serve upon the plaintiff or upon any other party whose medical records are relevant to an issue in the case a request that the plaintiff or other authorized person signed a medical records release authorizing the health care provider to release to

the requesting party the medical records of the party whose medical condition is at issue. The release shall be directed to a specific health care provider, shall authorize the release of medical records only, and shall state that the release does not authorize verbal communications by the health care provider to the requesting party.

*L.S.A.-C.C.P., Art. 1465.1(A).*

[*11]

Plaintiffs' speculations about what the Louisiana legislature might have intended Article 1465.1 and the Louisiana analog to Rule 34 to mean do not affect the meaning of Federal Rule 34, n5 particularly when there is abundant federal authority interpreting the rule. Further, this Court is persuaded by the sound reasoning that has been applied by almost every federal court that has addressed this issue--namely, that written authorizations can be compelled under Rule 34 because they simply compel parties to disclose documents which are under their control.

n5 Plaintiffs cite no Louisiana legislative history in support of their arguments about legislative intent. An equally arguable explanation for the adoption of Article 1465.1 is that it was prompted by the split among the courts concerning the appropriateness, under the Federal Rules, of compelling plaintiffs to sign written authorizations consenting to ex parte interviews of plaintiffs' treating physicians by defendants' counsel. *See e.g., Gobuty v. Kavanagh, 795 F. Supp. 281, 289 n.2 (D. Minn. 1992)* (noting no circuit court authority on point and citing cases demonstrating split among federal district courts on the issue). Article 1465.1 makes it clear that the Louisiana discovery rules do not allow such ex parte interviews. *See L.S.A.-C.C.P., Article 1465.1(A)* ("the release shall... state that the release does not authorize verbal communications by the health care provider to the requesting party."). The legislature could have intended Article 1465.1 simply to spell out what medical authorizations could and could not include to clarify Louisiana's stand on this controversial issue.

[*12]

**C. Separation of Powers**

In addition, the Court finds that plaintiffs' arguments concerning the separation of powers doctrine adds little to the discussion. Plaintiffs' argument that courts cannot compel authorizations if they have not been empowered by Congress to do so begs the very question to be decided. If courts are not empowered by the Federal Rules of Civil Procedure to compel parties to sign written authorizations, then it is a violation of the separation of powers for a court to order a party to sign such authorizations. However, there is no separation of powers problem if the court finds--as this Court does--that the Federal Rules of Civil Procedure do empower the federal courts to compel the signing of written authorizations.

**D. Sanctions**

Plaintiffs' motion borders on the frivolous. While a frivolous appeal from a Magistrate Judge's discovery order is an appropriate basis for Rule 11 sanctions, *see Reid v. St. Luke's Roosevelt Hospital Center, 1995 U.S. Dist. LEXIS 3531, 1995 WL 125387 at *2 (S.D.N.Y. March 22, 1995),* Rule 11(c)(1)(A) requires that motions for sanctions be made separately from other motions and that the party who engaged in allegedly sanctionable behavior be given [*13] 21 days to remedy its conduct before the motion for sanctions is presented to the court. n6 *See Fed. R. Civ. P. 11(c)(1)(A); see also, Elliott v. Tilton, 64 F.3d 213, 215-16 (5th Cir. 1995); Reid, 1995 U.S. Dist. LEXIS 3531, 1995 WL 125387 at *2.* While defendants asked this court to apply sanctions because of the frivolity of this appeal, they did not follow the procedural requirements of Rule 11. Thus, this Court declines to sanction plaintiffs for this appeal.

n6 Rule 11(c)(1)(A) provides, in pertinent part, that:

A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It... shall not be filed with were presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

*Fed. R. Civ. P. 11(c)(1)(A).*

Nevertheless, plaintiffs' [*14] motion is denied.

## II. Plaintiffs' Motion to Appeal From That Part of Magistrate's Minute Entry of September 17, 1996 (Record Doc. No. 37) Denying Expenses for Plaintiffs' Motion to Compel Discovery

Plaintiffs appeal the part of Magistrate Judge Fonseca's September 17, 1996 Minute Entry denying plaintiffs' counsel fees for plaintiffs' unopposed motion to compel discovery responses from Global Marine. *See* Record Doc. No. 37. In that Minute Entry, Magistrate Judge Fonseca granted plaintiffs' request for an Order requiring Global Marine to answer interrogatories under oath and to produce all requested documents and things, but denied plaintiffs' request for $ 1,000 in attorney's fees as expenses in bringing the motion. The Court finds that Magistrate Judge Fonseca was wrong as a matter of law in refusing to award plaintiffs' counsel his attorney's fees. Plaintiffs' motion for attorney's fees is therefore granted and Magistrate Judge Fonseca's decision is reversed.

### A. The Mandatory Nature of Rule 37(a)(4)

Motions to compel discovery responses are governed by *Federal Rule of Civil Procedure 37*. That rule provides that "if a party fails to make a disclosure required [*15] by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." *Fed. R. Civ. P. 37 (a)(2)*. Subsection (a)(4)(A) of Rule 37, which governs sanctions under the rule, mandatorily requires the award of reasonable expenses, including attorney's fees, unless the motion to compel discovery was unjustified or other circumstances make the award unjust. That subsection states that:

> **(4) Expenses and Sanctions**
> (A) If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially jus-

tified, or that other circumstances make an award of expenses unjust.

*Fed. R. Civ.* [*16] *P. 37(a)(4)(A)*

In this case, Magistrate Judge Fonseca made none of the required findings for refusing to grant plaintiffs sanctions--namely, he did not find that plaintiffs filed the motion without making a good faith effort to obtain the discovery without court action or that Global Marine's lack of response was substantially justified, or that there were any other circumstances that would have made an award of expenses unjust. Rather, Magistrate Judge Fonseca simply granted plaintiffs' motion to compel as unopposed and summarily refused to grant plaintiffs' request for sanctions. *See* Record Doc. No. 37.

### B. The Facts Supporting Sanctions

Moreover, the facts surrounding plaintiffs' motion to compel do not lend themselves to any of the above exceptions. In fact, Global Marine's behavior concerning the discovery material in question strikes this Court as dilatory in the extreme and worthy of sanctions. Global Marine has not contested the facts as related by the plaintiffs, which are as follows:

On January 29, 1996, plaintiffs served interrogatories and a request for production on Global Marine, along with their complaint. Approximately seven months later, on July 26, 1996, [*17] at a conference set up in regard to Global Marine's failure to answer, Global Marine's counsel represented to the plaintiffs' counsel that he had already completed Global Marine's discovery responses but had simply forgotten to mail them, and that he would mail them within two weeks time. *See* Record Doc. No. 54 at 1. By September 3, 1996, plaintiffs still had not received a response from Global Marine. As a result, plaintiffs filed their motion to compel before Magistrate Judge Fonseca, which was set for hearing on September 18, 1996. Global Marine did not oppose plaintiffs' motion to compel, and on September 17, 1996, almost nine months after service of discovery, Global Marine was finally ordered by the court to respond to discovery. Based on these facts, Magistrate Judge Fonseca decided to deny plaintiffs' request for expenses. *Id.* at 2.

The Court finds that the decision to deny sanctions was clearly erroneous and wrong as a matter of law. As the Fifth Circuit has noted, "[under Rule 37,] the award of expenses is mandatory against a party whose conduct necessitated a motion to compel discovery, and/or against the attorney who advise such conduct, 'unless the court finds [*18] that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.' *Merritt v. International Brotherhood of Boilermakers, 649 F.2d 1013, 1019 (5th*

*Cir. 1981)* (quoting *Fed. R. Civ. P. 37(a)(4)*); *see also, Tiberi v. Cigna Insurance Company, 40 F.3d 110, 111 (5th Cir. 1994)* (Rule 37 sanctions mandatory unless opposing party's response was justified). On these facts, the Court finds that Global Marine's response was not substantially justified.

### C. The Amount of Sanctions

Finally, the Court finds plaintiffs' figure of $ 1,000 for attorney's fees acceptable given both the nature of Global Marine's conduct and the fact that Global Marine has chosen not to oppose the reasonableness of this figure.

Accordingly, this Court reverses Magistrate Judge Fonseca's Minute Entry of September 18, 1996 in so far as it denies plaintiffs' unopposed motion for defendant Global Marine to pay $ 1,000 in attorney's fees as expenses for bringing plaintiffs' motion to compel discovery and orders Global Marine to pay plaintiffs' counsel $ 1,000 in attorney's fees for bringing plaintiffs' motion to compel discovery.

### III. Plaintiffs' [*19] Motion for Appeal of Magistrate's Order Compelling Second Neurosurgical Examination

Plaintiffs also appeal Magistrate Judge Fonseca's Minute Entry of September 25, 1996, ordering plaintiff Johannes Lischka to submit to a physical examination by Dr. Robert L. Applebaum, M.D., a neurosurgeon, on October 1, 1996. *See* Record Doc. No. 47. Plaintiff suffered two fractured spinal vertebrae in the accident that is the subject of this case and has been examined and/or treated by 9 separate doctors, including Dr. D.H. Dinh, M.D., a neurosurgeon who examined plaintiff on January 12, 1996 and rendered a completely negative neurosurgical report.

In their memorandum in support of their motion, plaintiffs argue that Magistrate Judge Fonseca's Order was clearly erroneous, contrary to law, and an abuse of discretion n7 because 1) plaintiff's neurological condition is not "in controversy" in light of plaintiff's earlier negative neurosurgical evaluation by Dr. Dinh; 2) Dr. Applebaum has a strong pro-defense bias and plaintiff is, at the very least, entitled to an evidentiary hearing concerning Dr. Applebaum's qualifications; and 3) Dr. Applebaum's medical opinion would be cumulative. n8 In [*20] the opposition memorandum, defendants contend that plaintiff's appeal is another frivolous appeal of a routine discovery decision, designed to delay the discovery process and drive up costs. Defendants request sanctions against plaintiffs for filing this appeal. The Court resolves these issues as follows.

n7 A magistrate judge's decision on a non-dispositive matter is reviewed by a district court on a clearly erroneous or contrary to law basis. *28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a)*.

n8 Plaintiffs raise an additional issue in their memorandum--namely, they object to the fact that Magistrate Judge Fonseca ordered plaintiff to submit to the physical examination before his time to file an appeal had expired. This issue requires no ruling from this Court, especially in light of the fact that plaintiff received a stay of the magistrate's ruling pending the results of this appeal. *See* Record Doc. No. 55.

### A. The Scope of Rule 35

*Rule 35 of the Federal Rules of Civil Procedure* governs physical [*21] examinations. That rule states, in pertinent part, that:

> When the... physical condition...of a party... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitable licensed or certified examiner... The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specified the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

*Fed. R. Civ. P. 35(a).*

The United States Supreme Court has elaborated that "Rule 35... requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause,' which requirements... are necessarily related." *Schlagenhauf v. Holder, 379 U.S. 104, 118, 85 S. Ct. 234, 242, 13 L. Ed. 2d 152 (1964).* From this, the Fifth Circuit has concluded that there are three requirements necessary to enable a court to order a Rule 35 [*22] exam: "(1) the party's physical or mental condition must be in controversy; (2) the expert must be either a physician or psychologist; and (3) good cause must be shown." *Acosta v. Tenneco Oil Company, 913 F.2d 205, 208 (5th Cir. 1990).* Plaintiffs argue that, in light of the prior examination by Dr. Dinh showing no neurosurgical problems, the defendants have failed to

show that plaintiff's neurological condition is "in controversy" and that there is "good cause" for the examination, as required under Rule 35.

At the November 21, 1996 status conference, however, all parties to this action indicated that the plaintiff's neurological condition was still at issue in this case. Having conceded that plaintiff's neurological condition is still at issue in this personal injury case, plaintiffs have clearly failed to show that the magistrate judge was wrong *as a matter of law* in finding that there was "good cause" for Dr. Applebaum's examination and that plaintiff's neurological condition was "in controversy". *See Schlagenhauf, 379 U.S. at 119, 85 S. Ct. at 243* ("A plaintiff in a negligence action who asserts mental or physical injury... places that mental or physical injury clearly [*23] in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury.") (internal citation omitted). Nor has the plaintiff shown that the magistrate judge was wrong as a matter of law in failing to find that Dr. Applebaum's testimony would be cumulative. Plaintiffs have represented to this Court that in spite of Dr. Dinh's negative report, they are not willing to concede that plaintiff, Johannes Lischka, has no neurological damage from the accident. Clearly, then, Dr. Applebaum's testimony would not necessarily be cumulative.

Moreover, the Court is unconvinced by plaintiffs' charges that Dr. Applebaum is such a "pro-defendant" witness that he should be disqualified as an examiner. The Court has seen Dr. Applebaum testify on several occasions and disagrees with plaintiffs' description of him as a 'knee-jerk' defense witness. Plaintiffs do not quarrel with Dr. Applebaum's medical credentials. The Court finds that there is no need to hold an evidentiary hearing on Dr. Applebaum's qualifications and sees no need to order an examination by one of plaintiffs' suggested doctors instead of Dr. Applebaum.

**B. Sanctions [*24]**

Defendants requested sanctions for the costs of defending this motion, but once again failed to follow the requirements of Rule 11(c)(1)(A) that motions for sanctions be made separately from other motions and that the party who engaged in allegedly sanctionable behavior be given 21 days to remedy its conduct before the motion for sanctions is presented to the court. *See Fed. R. Civ. P. 11(c)(1)(A); Elliott 63 F.3d at 215-16; Reid, 1995 U.S. Dist. LEXIS 3531, 1995 WL 125387* at *2. Thus, the defendant's motion for sanctions is not properly before the Court. In any event, the Court does not view plaintiffs' conduct on this issue as sanctionable.

Nevertheless, plaintiff's appeal from Magistrate Judge Fonseca's Order compelling a neurological exami-

nation of the plaintiff by Dr. Robert L. Applebaum is denied.

**IV. Shell and Global Marine's Motion for Partial Summary Judgment**

Defendants Shell and Global Marine request that this Court grant summary judgment to dismiss the claims of Lisa Lischka for loss of consortium on the grounds that there is no cause of action for loss of consortium under the general maritime law. Shell and Global Marine are non-employer defendants. No comparable motion has [*25] been filed by the plaintiff's employer, Tidewater. However, Tidewater has filed a Rule 11 motion in connection with plaintiffs' loss of consortium claims against it. *See Section V, infra.* The Court will discuss each of these motions in turn.

**A. Standard of Review**

Under *Fed. R. Civ. P. 56*, summary judgment is proper when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. *Celotex v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986).* All inferences will be made in favor of the party opposing summary judgment. However, the opposing party may not rely on mere allegations or denials but must set forth specific facts establishing that genuine issues exist for trial. See *Fed. R. Civ. P. 56(e)*. Only factual disputes "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).*

**B. Loss of Consortium**

The parties concede that there is no genuine issue as to any material fact and that the issue before the Court is entirely [*26] a question of law. At dispute is the state of the law. Defendants claim that, under the current state of the law, there is no cause of action under general maritime law for loss of consortium against either an employer or a non-employer. Plaintiffs concede that the Fifth Circuit has precluded such a cause of action against employers and that various courts have extended this reasoning to non-employers but argue that this Court should decline to extend the preclusion that far. For the reasons stated below, the Court agrees with the defendants and finds that there is no cause of action under general maritime law against non-employers.

In *Miles v. Apex Marine Corporation, 498 U.S. 19, 111 S. Ct. 317, 112 L. Ed. 2d 275 (1990),* the United States Supreme Court found that a deceased seaman's surviving parent could not recover nonpecuniary damages for loss of society for the wrongful death of a seaman under the Jones Act, *46 U.S.C. App. § 688.* In

reaching its decision, the Court noted that Congress, in the Death on the High Seas Act, *46 U.S.C. App. § 761 et seq.* ("DOHSA"), explicitly limited recoverable damages in suits for wrongful death on the high seas to pecuniary losses. The [*27] Court found that although the Jones Act does not have an explicit provision limiting recoverable losses to pecuniary losses, Congress' intent to incorporate a pecuniary limitation on damages was made clear by its incorporation of the substantive provisions of the Federal Employers' Liability Act, *45 U.S.C. § § 51-59*, into the Jones Act. *Miles, 498 U.S. at 31, 111 S. Ct. at 325*. In light of this Congressional intent, the Court concluded that "there is no recovery for loss of society in a Jones Act wrongful death action." *Id.* The Court also went on to apply this same principle to the general maritime law, reasoning that "it would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially-created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence." *Id. at 32-33, 111 S. Ct. at 326*. The intent of the *Miles* Court was to impose a uniform rule on all actions for the wrongful death of a seaman, whether brought under the Death on the High Seas Act, the Jones Act, or the general maritime law. *See id.* Thus, the Court highlighted the fact that it [*28] "restored a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law." *Id.*

In *Michel v. Total Transportation, Inc., 957 F.2d 186 (5th Cir. 1992),* the Fifth Circuit extended the reasoning of *Miles* to conclude that "damages recoverable in general maritime causes of action for personal injury of a Jones Act seaman do not include loss of consortium." *Michel, 957 F.2d at 191*. That case, like *Miles*, involved an action against the seaman's employer.

Shortly after the *Michel* case was decided, its holding was confirmed by another panel of the Fifth Circuit, in *Murray v. Anthony J. Bertucci Construction Company, Inc., 958 F.2d 127* (5th Cir.), *cert. denied, 506 U.S. 865, 113 S. Ct. 190, 121 L. Ed. 2d 134 (1992)*. In *Murray*, the Fifth Circuit concluded that *Miles* precluded a suit for loss of society against a Jones Act seaman's employer. The Court reasoned that:

> The Supreme Court's emphasis in *Miles* on the importance of uniformity in remedies in maritime death cases must apply equally to injury actions. If we recognize Mrs. Murray's loss of society claim, we would [*29] create the very sort of anomaly *Miles* sought to avoid. Therefore, we follow the Supreme Court's lead in

*Miles* and hold that the spouse of an injured seaman has no cause of action for loss of society under the general maritime law.

*Murray, 958 F.2d at 132; see also, Anglada v. Tidewater, Inc., 752 F. Supp. 722 (E.D. La. 1990)* (loss of society or consortium damages must be rejected in context of personal injury and wrongful death unseaworthiness claims).

Plaintiffs recognize that *Miles, Michel,* and *Murray* are binding on this Court, but argue that causes of action brought in those decisions can be distinguished from the loss of consortium action brought against Shell and Global Marine in this case, because the causes of action in those cases were brought against the seaman's employers and that the action here is against Shell and Global Marine, who are non-employers of the plaintiff. Plaintiffs further argue that the Supreme Court's recent decision in *Yamaha Motor Corp., U.S.A., Inc. v. Calhoun, U.S. , 133 L. Ed. 2d 578, 116 S. Ct. 619 (1996),* sufficiently undermines the Court's underlying "uniformity" rationale in *Miles* to [*30] allow for a finding that the *Miles, Michel,* and *Murray* decisions do not apply to non-employers. Finally, plaintiffs point to various law review articles and secondary sources that are critical of the Court's reasoning in *Miles. See e.g.,* R. Force, The Curse of *Miles v. Apex Marine Corporation*: The Mischief of Seeking "Uniformity" and "Legislative Intent" in Maritime Personal Injury Cases, *55 La. L. Rev. 745, 747-48 (1995)*. The Court is unpersuaded by plaintiffs' arguments.

First, the Court agrees with the overwhelming number of cases, which have found that the reasoning of *Miles* extends to loss of consortium actions against non-employers as well as against employers. To make a distinction between employer and non-employer defendants, as plaintiffs suggest, would result in the exact kind of inconsistency that the Supreme Court and the Fifth Circuit sought to avoid in *Miles, Michel,* and *Murray. See e.g., Dixon v. Cliffs Drilling Company, 633 So. 2d 277, 279-80 (La. App. 1st Cir. 1993)* ("As stated in *Miles* and reiterated in *Murray* and *Michel*, the holding in *Miles* stemmed from a desire for consistency under DOHSA, the Jones Act and general [*31] maritime law. To... allow consortium claims against non-employer defendants, but not against employer defendants, would result in the antithesis of consistency."). n9

> n9 *See also, Trahan v. Texaco, Inc., 625 So. 2d 295 (La. App. 4th Cir. 1993)* (wife of injured seaman has no cause for loss of consortium

against non-employer under general maritime law); *Phillips v. Water Towing, Inc.*, D.W., 620 So. 2d 1387, 1390 (La. App. 4th Cir. 1993) (same), *writ denied*, 629 So. 2d 1135 (La. 1993); *Earhart v. Chevron U.S.A. Inc.*, 852 F. Supp. 515 (E.D. La. 1993) (same); *Ellender v. John E. Graham & Co.*, 821 F. Supp. 1136, 1136-37 (E.D. La. 1992) (same); *Duplantis v. Texaco, Inc.*, 771 F. Supp. 787 (E.D. La. 1991) (same); *Cater v. Placid Oil Co.*, 760 F. Supp. 568, 569-70 (E.D. La. 1991) (denying plaintiff's motion to amend complaint bringing loss of consortium claims against employer and non-employer on the ground that no such claim exists under general maritime law); *Turley v. Co-Mar Offshore Marine Corporation*, 766 F. Supp. 501, 501-502 (E.D. La. 1991) (dismissing loss of consortium claims against both employer and non-employer on grounds that there is no recovery for non-pecuniary damages under general maritime law).

[*32]

Moreover, the Court does not agree with plaintiffs that the Supreme Court's recent *Yamaha* decision so significantly undermines *Miles'* reasoning that it warrants such a distinction between employers and non-employers. In *Yamaha*, the Court applied state law in awarding non-pecuniary damages to the admiralty-suitor survivors of a non-seaman killed on a jet ski in state territorial waters. In doing so, however, the Court reaffirmed *Miles*, carefully distinguishing the facts in *Yamaha* from those in *Miles*:

When Congress has prescribed a comprehensive tort recovery regime to be uniformly applied, there is, we have generally recognized, no cause for enlargement of the damages statutorily provided." *See Miles*, 498 U.S. at 30-36, 111 S. Ct. at 324-328... But Congress has not prescribed remedies for the wrongful deaths of nonseafarers in territorial waters. *See Miles* 498 U.S. at 31, 111 S. Ct. at 325. There is, however a relevant congressional disposition... [which] by its terms, simply stops DOHSA from displacing state law in territorial waters. *See Miles*, 498 U.S. at 25, 111 S. Ct. at 321-322... Taking into account what Congress sought to [*33] achieve, we preserve the application of state statutes to deaths within territorial waters.

*Yamaha*, U.S. , 116 S. Ct. at 628. (citations omitted).

*Miles*, *Michel*, and *Murray* are still good law, and their rationale has not been undermined by *Yamaha*. These decisions compel a finding that there is no loss of consortium claim against non-employers under general maritime law. Defendants' motion for summary judgment is therefore granted.

### V. Defendant Tidewater's Motion for Rule 11 Sanctions

The Tidewater defendants, following the requirements of *Federal Rule of Civil Procedure 11(c)(1)(A)*, have requested that this Court impose sanctions against the plaintiffs for bringing their claim for loss of consortium against it as an employer. For the reasons that follow, defendants' motion is denied.

Rule 11(b) states, in pertinent part, that:

**(b) Representation to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable [*34] under the circumstances,--

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;...

*Fed. R. Civ. P. 11(b)*.

Defendants argue that the loss of consortium claim is not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. The Court disagrees.

1997 U.S. Dist. LEXIS 538, *

While the Court rejects plaintiffs' arguments concerning the loss of consortium claims, the Court does not find them to be completely frivolous. Plaintiffs have recognized that the Supreme Court and Fifth Circuit cases of *Miles, Murray,* and *Michel* make their argument a difficult one, but offer several reasons, outlined above, why the rationale of these cases should not apply to their case. While plaintiffs' proffered reasons as to an employer-defendant are especially weak, the Court finds that plaintiffs' arguments are [*35] incorrect, but not frivolous. In particular, plaintiffs' argument concerning Yamaha's effect on the validity of the underlying rationale of *Miles, Michel,* and *Murray* is a good faith argument for the modification or reversal of existing law. As the Fifth Circuit has held, "Rule 11 does not require that the legal theory espoused in a filing prevail... Even if erroneous, a legal posture does not violate Rule 11 unless it is 'unreasonable from the point of you both of existing law and of its possible extension, modification, or reversal.'" *CJC Holdings, Inc. v. Wright & Lato, Inc., 989 F.2d 791, 793 (5th Cir. 1993).* "Misapplication of Rule 11 can chill counsel's enthusiasm and stifle the creativity of litigants in pursuing novel factual or legal theories, contrary to the intent of the framers." *Id. at 794* (internal quotations and citations omitted). Defendant's motion for Rule 11 sanctions is therefore denied.

Accordingly,

IT IS ORDERED that plaintiffs' motion for appeal from the Magistrate Judge's Order compelling plaintiffs to sign written authorizations is hereby DENIED, and the Magistrate Judge's Order compelling plaintiffs to sign written authorizations is hereby [*36] AFFIRMED. Defendants' motion for sanctions with respect to this motion is DENIED.

IT IS FURTHER ORDERED that plaintiffs' motion for appeal from that part of the Magistrate Judge's Order denying expenses for plaintiffs' discovery motion is hereby GRANTED, and the Magistrate Judge's Order denying expenses for plaintiffs' discovery motion is hereby REVERSED.

IT IS FURTHER ORDERED that defendant Global Marine Drilling Co. shall pay plaintiffs $ 1,000 as attorney's fees for bringing plaintiffs' motion to compel discovery.

IT IS FURTHER ORDERED that plaintiffs' motion for appeal from the Magistrate Judge's Order compelling plaintiff Johannes Lischka to submit to a neurosurgical examination by Dr. Robert L. Applebaum is hereby DENIED, and the Magistrate Judge's Order compelling plaintiff Johannes Lischka to submit to a neurosurgical examination by Dr. Robert L. Applebaum is hereby AFFIRMED. Defendants' motion for sanctions with respect to this motion is DENIED.

IT IS FURTHER ORDERED that Shell Offshore, Inc. and Global Marine, Inc.'s motion for partial summary judgment to dismiss the claims of Lisa Lischka for loss of consortium and/or loss of society damages against Shell Offshore Inc. [*37] and Global Marine, Inc. is hereby GRANTED.

IT IS FURTHER ORDERED that the Tidewater defendants' motion for Rule 11 sanctions against plaintiffs for bringing their loss of consortium claims is hereby DENIED.

New Orleans, Louisiana, this 21st day of January, 1997.

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE