UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CRAIG GOULET, | ) | Civil Action No. 04-12577 JLT |
| | ) | |
| Plaintiff, | ) | JUDGE TAURO |
| | ) | |
| vs. | ) | **MOTION OF DEFENDANT NEW PENN** |
| | ) | **MOTOR EXPRESS, INC.** |
| NEW PENN MOTOR EXPRESS, INC., | ) | **FOR SUMMARY JUDGMENT** |
| et. al., | ) | |
| | ) | |
| Defendants. | ) | |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant New Penn Motor Express, Inc. ("New Penn"), hereby moves this Court for summary judgment in its favor on Plaintiff's Complaint on the grounds that there are no genuine issues as to any material facts in dispute and New Penn is entitled to judgment as a matter of law.

Pursuant to Local Rule 56.1 of the United States District Court for the District of Massachusetts, a Concise Statement of the Material Facts and a Memorandum in Support of the Motion of New Penn for Summary Judgment are attached hereto and incorporated herein by reference.

Respectfully submitted,

/s/ Carl H. Gluek
T. Merritt Bumpass, Jr. (Ohio Bar # 0015189)
mbumpass@frantzward.com
Carl H. Gluek (Ohio Bar #0029531)
cgluek@frantzward.com
FRANTZ WARD LLP
2500 Key Center
127 Public Square
Cleveland, Ohio  44114-1230
(216) 515-1660
(216) 515-1650 (facsimile)

and

Nicholas A. Klinefeldt (BBO # 647422)
nklinefeldt@klhboston.com
KELLY, LIBBY & HOOPES, P.C.
175 Federal Street
Boston, Massachusetts  02110
(617) 338-9300
(617) 338-9911 (facsimile)

Attorneys for Defendant New Penn Motor
Express, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Motion of Defendant New Penn Motor Express, Inc. for Summary Judgment was served upon  Scott A. Lathrop, Esq. of Scott A. Lathrop & Associates, Attorney for Plaintiff, 122 Old Ayer Road, Groton, MA 01450 and Kathleen Pennini, Esq. of Dwyer, Duddy, Facklam, Attorney for Teamsters Local 25, One Center Plaza, Suite 360, Boston, MA  02108, via electronic filing and ordinary U.S. mail, postage prepaid, this 13th day of January, 2006.

/s/ Carl H. Gluek
Carl H. Gluek, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CRAIG GOULET, | ) | CASE NO. 04-12577 JLT |
| | ) | |
| Plaintiff, | ) | JUDGE TAURO |
| | ) | |
| vs. | ) | |
| | ) | |
| NEW PENN MOTOR EXPRESS, INC., | ) | |
| et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1

Defendant certifies that it has complied with the provisions of Local Rule 7.1.

Respectfully submitted,

/s/ Carl H. Gluek
T. Merritt Bumpass, Jr. (Ohio Bar # 0015189)
mbumpass@frantzward.com
Carl H. Gluek (Ohio Bar #0029531)
cgluek@frantzward.com
FRANTZ WARD LLP
2500 Key Center
127 Public Square
Cleveland, Ohio 44114-1230
(216) 515-1660
(216) 515-1650 (facsimile)

and

Nicholas A. Klinefeldt (BBO # 647422)
nklinefeldt@klhboston.com
KELLY, LIBBY & HOOPES, P.C.
175 Federal Street
Boston, Massachusetts 02110
(617) 338-9300
(617) 338-9911 (facsimile)

Attorneys for Defendant New Penn Motor
Express, Inc.

1

Volume I
Pages 1 to 35
Exhibits 1 to 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - -x
                    :
CRAIG GOULET,           :
       Plaintiff,    :
                    :
      vs.          :  Civil Action
                    :  No. 04-12577 JLT
NEW PENN MOTOR EXPRESS, INC.;  :
and TEAMSTERS LOCAL 25,     :
INTERNATIONAL BROTHERHOOD OF  :
TEAMSTERS,             :
       Defendants.   :
                    :
- - - - - - - - - - - - - - - - -x

      DEPOSITION OF GEORGE D. FRANCEY, a witness
called on behalf of the Plaintiff, taken pursuant to
the Federal Rules of Civil Procedure, before Ken A.
DiFraia, Registered Professional Reporter and Notary
Public in and for the Commonwealth of Massachusetts,
at the Offices of Scott A. Lathrop & Associates,
122 Old Ayer Road, Groton, Massachusetts, on
Wednesday, October 12, 2005, commencing at 9:10 a.m.

PRESENT:

   Scott A. Lathrop & Associates
       (by Scott A. Lathrop, Esq.)
       122 Old Ayer Road, Groton, MA 01450,
       for the Plaintiff.

   Frantz Ward LLP
       (by Carl H. Gluek, Esq.)
       2500 Key Center, 127 Public Square,
       Cleveland, OH 44114-1230, for the Defendant
       New Penn Motor Express Inc.



EXHIBIT

A

(Continued on Next Page)

2

PRESENT:   (Continued)

    Dwyer, Duddy and Facklam
        (by Kathleen A. Pennini, Esq.)
        Two Center Plaza, Suite 430, Boston, MA
        02108-1804, for the Defendant Teamsters
        Local 25, International Brotherhood of
        Teamsters.

ALSO PRESENT:  Craig Goulet

                     *  *  *  *  *

14

1     Q.    Do you know if Mr. Carnes was there?

2     A.    Good possibility.  I don't remember talking

3  to him, but he was probably there.

4     Q.    Could you identify for the record who

5  George Cashman was at the time.

6     A.    President of Local 25.

7     Q.    And who was Shawn O'Brien?

8     A.    Business agent.

9     Q.    Do you know for what --

10    A.   Oh, he didn't have anything to do with us.

11  I mean, these guys were there simply because they

12  are the Local 25 leadership.

13        APA going out of business was a pretty big

14  hit for Local 25 because we had two terminals, one

15  in Dracut and then the Canton facility.  You are

16  talking, what, 72 guys in Canton, and I don't know

17  how many up in Dracut.  There was probably over 30

18  anyway.

19     Q.    Was this meeting at the union hall

20  therefore for the Dracut and Canton APA drivers?

21     A.    I believe we were all together, I believe.

22     Q.    When you say "all together," you mean both

23  the Dracut and the Canton employees?

24     A.    I believe so.

34

1                    C E R T I F I C A T E

2          I, GEORGE D. FRANCEY, do hereby certify that I

3     have read the foregoing transcript of my testimony,

4     and further certify under the pains and penalties of

5     perjury that said transcript (with/without)

6     suggested corrections is a true and accurate record

7     of said testimony.

8          Dated at _____, this ____ day of _____,

9     2005.

10

11                              _____

12

13

14

15

16

17

18

19

20

21

22

23

24

35

1  COMMONWEALTH OF MASSACHUSETTS)

2  SUFFOLK, SS.                    )

3      I, Ken A. DiFraia, Registered Professional

4  Reporter and Notary Public in and for the

5  Commonwealth of Massachusetts, do hereby certify

6  that there came before me on the 12th day of Oct.,

7  2005, at 9:10 a.m., the person hereinbefore named,

8  who was by me duly sworn to testify to the truth and

9  nothing but the truth of his knowledge touching and

10  concerning the matters in controversy in this cause;

11  that he was thereupon examined upon his oath, and

12  his examination reduced to typewriting under my

13  direction; and that the deposition is a true record

14  of the testimony given by the witness.

15      I further certify that I am neither attorney or

16  counsel for, nor related to or employed by, any

17  attorney or counsel employed by the parties hereto

18  or financially interested in the action.

19      In witness whereof, I have hereunto set my hand

20  and affixed my notarial seal this 27th day of

21  October, 2005.

22                    *Ken A. DiFraia*

23                    Notary Public

24              My commission expires 4/3/09

1-107

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * * *
                                  *
CRAIG GOULET,                     *
                                  *
      Plaintiff,                  *
                                  *
- vs. -                           *    C.A. # 04-12577-JLT
                                  *
NEW PENN MOTOR EXPRESS,           *
                                  *
and                               *
                                  *
TEAMSTERS LOCAL 25                *
INTERNATIONAL BROTHERHOOD OF      *
TEAMSTERS,                        *
                                  *
      Defendant.                  *
                                  *
* * * * * * * * * * * * * * * * *
```

DEPOSITION of CRAIG GOULET, a witness called by and

on behalf of the defendants, pursuant to the provisions of

the Massachusetts Rules of Civil Procedure, before Michael

C. Janey, a Professional Reporter and Notary Public in and

for the Commonwealth of Massachusetts, at the offices of

Dwyer, Duddy and Facklam, P.C., Two Center Plaza, Suite

430, Boston, Massachusetts, 02108 on Tuesday, October 4,

2005, commencing at 10:05 a.m.

EXHIBIT
tabbies
B

2

APPEARANCES:

     Scott A. Lathrop, Esquire, law office of SCOTT A. LATHROP, 122 Old Ayer Road, Groton, Massachusetts, 01450, (978) 448-8234; on behalf of the Plaintiff.

     Kathleen A. Pennini, Esquire, law offices of DWYER, DUDDY AND FACKLAM, Two Center Plaza, Suite 430, Boston, Massachusetts, 02108, (617) 723-9777; on behalf of the Defendant, International Brotherhood of Teamsters, Local 25.

     Carl H. Gluek, Esquire, law office of FRANTZ WARD, LLP, 2500 Key Center, 127 Public Square, Cleveland, Ohio, 44114-1230, (216) 515-1660; on behalf of Defendant, New Penn Motor Express.


Also Present: Mark Harrington


JANEY ASSOCIATES

1          began working for Sanborn Trucking -- I mean, when

2          Sanborn was bought out by APA?

3    A.    No, I went to work at the APA Canton facility.

4    Q.    When did you begin work at APA in Canton?

5    A.    October of 1986.

6    Q.    How long did you work for APA?

7    A.    I worked for them from October, 1986 until March

8          11th, 1987.

9    Q.    And what happened on March 11th, 1987?

10   A.    I was involved in a industrial accident.

11   Q.    Could you explain this industrial accident for

12         me, please?

13   A.    I was loading a -- unloading a truck with a

14         forklift and the truck pulled away from the loading

15         dock.

16   Q.    How did that result in injury to you?

17   A.    Myself and the forklift both went off the

18         loading dock and I ended with a herniated disc in my

19         neck, lower back, torn rotator cuff in my shoulder,

20         torn ligament in my knee.

21   Q.    Did you go to the hospital on March 11th

22         following this injury?

23   A.    Yes, I did.

24   Q.    And what hospital?

COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.

I, Michael C. Janey, a Massachusetts Verbatim Court Reporter and Notary Public duly commissioned and qualified in and for the Commonwealth of Massachusetts, do hereby certify that there came before me on the 4th day of October, 2005, at 10:05 a.m., the person hereinbefore named, who was by me duly sworn to testify to the truth and nothing but the truth of his knowledge touching and concerning the matters in controversy in this cause; that he was thereupon examined under his oath and his examination reduced to typewriting under my direction; and that the deposition is a true record of the testimony given by the witness.

I further testify that I am neither attorney or counsel for, nor related to or employed by any of the parties to the action in which this deposition is taken and, further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto or financially interested in the action.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal this 15th day of October, 2005.
My Commission expires on
October 28, 2005.

_____
Michael C. Janey, CR, Notary Public

JANEY ASSOCIATES

107

I have read the foregoing transcript
of the testimony and the same
contains a true and accurate
recording of my answers given to the
questions therein set forth.

_____

Signed under the pains and penalties
of perjury.

_____
Date



"WONDERFUL"

# A-P-A TRANSPORT CORP.

2100 88th Street, North Bergen, New Jersey 07047 • 201-869-6600 212-564-3130
Fax 201-869-5472

October 16, 2001

NEJAC
Case #87-404
<u>Craig Goulet vs. A-P-A Transport Corp.</u>

Gentlemen:

On March 11, 1987, Mr. Goulet was discharged for his gross negligence which caused a serious accident (Exhibit A).

At approximately 7:45 p.m. on March 11, 1987, Mr. Goulet was operating a forklift at 38 Door and was attempting to remove a skid of printed forms from Truck #1237 when the truck rolled forward and the forklift fell to the ground and Mr. Goulet jumped off and fell to the ground. Mr. Goulet was also the person who backed Truck #1237 into the platform.

The forklift wound up three (3) feet away from the dock in an upright position and the truck approximately 35 feet from the dock.

I will now read into the record Exhibit B which is Supervisor T. Whittles's report:

The supervisor's report of injury (Exhibit C) reflects that Mr. Goulet had a bruised right shin and no other findings of visible injury were noted. Although the forklift was damaged, it was driveable and Mr. Goulet was instructed to take it to the garage, which he did and to return back to 38 Door (Exhibit D).

Gentlemen, Mr. Goulet exhibited gross negligence resulting in a serious accident because he failed to properly secure Truck #1237. Furthermore, besides damaging the forklift, and during 14 years of intermittent hearings, appeals, and rehearings, Mr. Goulet has caused A-P-A Transport to expend over $200,000 in partial disability benefits (600 weeks), medical bills and legal costs, all because of <u>his gross negligence</u> for not properly securing the vehicle which rolled away.

Gentlemen, based upon all of the facts presented, we respectfully request the Claim of the Union be denied and the discharge upheld.

Very truly yours,

A-P-A TRANSPORT CORP.

Burton C. Trebour
Vice President
Labor & Administration

**EXHIBIT**

_C_

BCT:th

A GREAT ORGANIZATION — BUILT ON KEPT PROMISES

1

Volume I
Pages 1 to 76
Exhibits 1 to 12

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - -x
                        :
CRAIG GOULET,              :
         Plaintiff,    :
                        :
     vs.               :  Civil Action
                        :  No. 04-12577 JLT
NEW PENN MOTOR EXPRESS, INC.; :
and TEAMSTERS LOCAL 25,    :
INTERNATIONAL BROTHERHOOD OF :
TEAMSTERS,             :
         Defendants.   :
- - - - - - - - - - - - - - - -x

       DEPOSITION OF MARK A. HARRINGTON, a witness
called on behalf of the Plaintiff, taken pursuant to
the Federal Rules of Civil Procedure, before Ken A.
DiFraia, Registered Professional Reporter and Notary
Public in and for the Commonwealth of Massachusetts,
at the Offices of Scott A. Lathrop & Associates,
122 Old Ayer Road, Groton, Massachusetts, on
Wednesday, October 12, 2005, commencing at
10:15 a.m.

PRESENT:

    Scott A. Lathrop & Associates
        (by Scott A. Lathrop, Esq.)
        122 Old Ayer Road, Groton, MA 01450,
        for the Plaintiff.

    Frantz Ward LLP
        (by Carl H. Gluek, Esq.)
        2500 Key Center, 127 Public Square,
        Cleveland, OH 44114-1230, for the Defendant
        New Penn Motor Express, Inc.

**EXHIBIT**
tabbies

D

(Continued on Next Page)

2

PRESENT:   (Continued)

    Dwyer, Duddy and Facklam
       (by Kathleen A. Pennini, Esq.)
       Two Center Plaza, Suite 430, Boston, MA
       02108-1804, for the Defendant Teamsters
       Local 25, International Brotherhood of
       Teamsters.

ALSO PRESENT:   Craig Goulet

               * * * * *

7

1    agent, did you cease being a field representative

2    and organizer?

3        A.    Yes, but the functions of the field

4    representative and the business agent are pretty

5    much the same.  In 1991, I represented -- basically

6    I functioned as a business agent.  It was just that

7    it was not an elected position.  The trustee was an

8    elected position.

9        Q.    I lost you.  When you became a business

10    agent, was that an elected position?

11        A.    I was elected to two positions, trustee,

12    then business agent.

13        Q.    You remained a business agent through some

14    point in 2002?

15        A.    Uh-huh.

16        Q.    That's yes?

17        A.    Yes.

18        Q.    Did you have any positions with Teamsters

19    Local 25 thereafter?

20        A.    I became the secretary treasurer.

21        Q.    When did you become the secretary

22    treasurer?

23        A.    2002.

24        Q.    Is that your current position?

8

1      A.    It is.

2      Q.    What were your duties as a business agent

3  for Local 25?

4      A.    I negotiated contracts, handled grievances,

5  arbitrations, et cetera.

6      Q.    Were you assigned a certain geographical

7  area or certain employers?

8      A.    Certain employers, certain crafts.

9      Q.    Throughout your tenure as a business agent,

10  were you assigned to the same crafts, or did it

11  change?

12      A.    It changes from term to term, depending on

13  people, you know, retiring within the organization,

14  reassignments by the principal officer.

15      Q.    What crafts did you represent originally?

16      A.    I represented the laundry division, I

17  represented healthcare, car rental, car haul,

18  building materials, tank haul, freight, public

19  sector, maintenance, oil, heating oil division,

20  office clerical, and whatever else I was assigned

21  to.

22           That's probably pretty much the gamut of

23  what we had.

24      Q.    Are you familiar with a company called "APA

76

1  COMMONWEALTH OF MASSACHUSETTS)

2  SUFFOLK, SS.                    )

3      I, Ken A. DiFraia, Registered Professional

4  Reporter and Notary Public in and for the

5  Commonwealth of Massachusetts, do hereby certify

6  that there came before me on the 12th day of Oct.,

7  2005, at 10:15 a.m., the person hereinbefore named,

8  who was by me duly sworn to testify to the truth and

9  nothing but the truth of his knowledge touching and

10 concerning the matters in controversy in this cause;

11 that he was thereupon examined upon his oath, and

12 his examination reduced to typewriting under my

13 direction; and that the deposition is a true record

14 of the testimony given by the witness.

15     I further certify that I am neither attorney or

16 counsel for, nor related to or employed by, any

17 attorney or counsel employed by the parties hereto

18 or financially interested in the action.

19     In witness whereof, I have hereunto set my hand

20 and affixed my notarial seal this 27th day of

21 October, 2005.

22              _Ken A. DiFraia_

23                    Notary Public

24        My commission expires 4/3/09

1

Volume I
Pages 1 to 47
Exhibits 1 to 7

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - -x
                                :
CRAIG GOULET,                   :
            Plaintiff,          :
                                :
      vs.                       :   Civil Action
                                :   No. 04-12577 JLT
NEW PENN MOTOR EXPRESS, INC.;   :
and TEAMSTERS LOCAL 25,         :
INTERNATIONAL BROTHERHOOD OF    :
TEAMSTERS,                      :
            Defendants.         :
                                :
- - - - - - - - - - - - - - - -x

          DEPOSITION OF PAUL DUBIEL, a witness called
on behalf of the Plaintiff, taken pursuant to the
Federal Rules of Civil Procedure, before Ken A.
DiFraia, Registered Professional Reporter and Notary
Public in and for the Commonwealth of Massachusetts,
at the Offices of Scott A. Lathrop & Associates,
122 Old Ayer Road, Groton, Massachusetts, on
Tuesday, November 15, 2005, commencing at 1:18 p.m.

PRESENT:

    Scott A. Lathrop & Associates
         (by Scott A. Lathrop, Esq.)
         122 Old Ayer Road, Groton, MA 01450,
         for the Plaintiff.

    Frantz Ward LLP
         (by Carl H. Gluek, Esq.)
         2500 Key Center, 127 Public Square,
         Cleveland, OH 44114-1230, for the Defendant
         New Penn Motor Express, Inc.

EXHIBIT
E

(Continued on Next Page)

JAN-13-2006  13:42        FRANTZ WARD LLP                    216 515 1650      P.04/05
Jan 13 06 02:12p    DORIS O WONG ASSOCIATES      617-482-7813              p.4

11

1      Q.   When you were the terminal manager for

2   Dracut, did you have seniority lists for your

3   drivers?

4      A.   Yes.

5      Q.   Let me restate that.  Did you have

6   seniority lists that covered also dock workers?

7      A.   There was one seniority list.

8      Q.   One seniority list?

9      A.   Right.

10      Q.   Let me back up.  Local 25 represented

11   drivers and dock workers in Dracut?

12      A.   They do, yes.

13      Q.   Local 25 represented drivers and dock

14   workers in Canton?

15      A.   Yes.

16      Q.   And in Billerica?

17      A.   Yes.

18      Q.   Going back, in Dracut, there was one

19   seniority list for all unionized employees?

20      A.   That's correct.

21      Q.   Whether you be a driver or a dock worker,

22   correct?

23      A.   Correct.

24      Q.   During your tenure in Dracut, which persons

47

1  COMMONWEALTH OF MASSACHUSETTS)

2  SUFFOLK, SS.                                )

3      I, Ken A. DiFraia, Registered Professional

4  Reporter and Notary Public in and for the

5  Commonwealth of Massachusetts, do hereby certify

6  that there came before me on the 15th day of Nov.,

7  2005, at 1:18 p.m., the person hereinbefore named,

8  who was by me duly sworn to testify to the truth and

9  nothing but the truth of his knowledge touching and

10  concerning the matters in controversy in this cause;

11  that he was thereupon examined upon his oath, and

12  his examination reduced to typewriting under my

13  direction; and that the deposition is a true record

14  of the testimony given by the witness.

15      I further certify that I am neither attorney or

16  counsel for, nor related to or employed by, any

17  attorney or counsel employed by the parties hereto

18  or financially interested in the action.

19      In witness whereof, I have hereunto set my hand

20  and affixed my notarial seal this $30^{rh}$ day of Nov.,

21  2005.

22      _Ken A. DiFraia_

23              Notary Public

24      My commission expires 4/3/09

# Teamsters, Chauffeurs, Warehousemen and Helpers

## UNION LOCAL No. 25

*Affiliated with*
*International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*
*Teamsters Joint Council No. 10          Eastern Conference of Teamsters*



WILLIAM J. McCARTHY
*President*

OFFICE:
544 MAIN STREET
BOSTON, MASSACHUSETTS 02129
TELEPHONE 241-8825

March 18, 1987

A-P-A Transport Corporation
30 Industrial Drive
Canton, MA 02021

Att:  Mr. Justin W. Poor, III
      Terminal Manager

Dear Sir:

In accordance with the provisions of the current New England Freight Agreement, we are hereby registering a complaint relative to the letter sent to Mr. Craig Goulet dated March 12, 1987.

If there are any questions on this matter, please contact Business Agent George W. Cashman.

Very truly yours,

*William J. McCarthy*

WILLIAM J. McCARTHY
President

GWC:aj

**EXHIBIT**

F



# Teamsters Local 25
## International Brotherhood of Teamsters

544 MAIN STREET • BOSTON, MASSACHUSETTS 02129-1113 • 617-241-8825 • Fax 617-242-4284
www.teamsterslocal25.com

GEORGE W. CASHMAN
President / Principal Officer

JOSEPH C. CONLON
Secretary-Treasurer

WILLIAM H. CARNES
e President / Business Agent

RITCHIE E. REARDON
ding Secretary / Business Agent

MARK A. HARRINGTON
Trustee / Business Agent

LOU DiGIAMPAOLO
stee / Director of Organizing /
Field Representative

ERNEST C. SHEEHAN JR.
Trustee / Business Agent

VINCENT J. PISACRETA
Business Agent

JOHN A. MURPHY
Business Agent

ARTHUR J. LAZAZZERO
Field Representative

### TEAMSTERS LOCAL 25
### VS.
### APA TRANSPORT CORP.
### CASE # 87-404

Issue: Unjust Termination of Craig Goulet

Grievant: Craig Goulet

## Background and Statement of the Facts:

Brother Goulet has been a Teamster since 1979. He was employed by Sanborn's Transportation earning seniority in August of 1984. After the acquisition of Sanborn's by APA, he went to work in the Canton, MA terminal in October of 1987.

Brother Goulet, during his career, worked for many reputable union carriers. On March 11, 1987 he was discharged by A.P.A. Transport for gross negligence, allegedly as a result of a serious accident. (The alleged incident was that Brother Goulet drove a forklift off the dock).

On the night in question, Brother Goulet reported for duty at 7:00 p.m. He was on the 7:00 p.m. dock bid and was given an assignment to unload the # 38 door. He proceeded to the loading dock area and rolled up the overhead doors of both the dock and the truck. He observed that the stripper was a palletized load and required the use of a forklift. He placed his bills on a dock desk and pulled up the dock plate. He then secured a forklift and drove onto the truck, which was a straight job.

As he proceeded to enter the truck the vehicle started to roll away. Upon realizing what was going on he grabbed the track of the roll-up door of the straight job. The forklift then crashed into the yard on all fours and Goulet fell onto the

EXHIBIT
G

ground. He fell approximately eight feet and sustained many serious injuries; a torn rotator cuff, two herniated disks as well as a torn ligament in his right knee.

He was laying on the ground and supervisor Tom Whitels came around the corner almost immediately and inquired as to what had occurred. He went back on the dock and was notified that he was terminated. A mechanic took Craig to the Goddard Memorial Hospital in Stoughton, MA for treatment. He was observed at the hospital and sent home. The company called a few days later and said he was required to go to New Jersey to be evaluated by their doctors. Brother Goulet was unable to travel due to his injuries and he informed the company that he would seek treatment from his own doctor.

Brother Goulet went out on an industrial accident and his case had been pending on committee hold since that time.

Union's Position:

It is Local 25's position that the discharge of Craig Goulet is without merit. He should be reinstated with his proper seniority and made whole for all lost earnings and benefits.

It is inconceivable that Brother Goulet would willfully drive a forklift off the dock. The facts of the case do not support that Brother Goulet would take such action. In fact, in reviewing the circumstances that had been ongoing at APA, one would question if some sort of conspiracy actually were invoked against Brother Goulet.

Upon reviewing the activities that had occurred at the terminal during that time span one comes away with the notion that Brother Goulet was not wanted by APA.

Also, upon reviewing the notes that Brother Goulet compiled regarding an incident on February 5, 1987 it is apparent that management at APA took exception to Brother Goulet's desire to certain legal and contractual rights. For example, on February 5, 1987 he was told to report to the terminal manager's office. Upon entering the office Brother Goulet was immediately confronted by the terminal manager, Jack Poor. Mr. Poor said to Goulet "you are going to lose Craig, sooner or later you're going to lose. It may not be today or tomorrow, but you can't win. Bigger men than you have gone through that door."

This type of attitude towards Brother Goulet certainly speaks of the hostile environment that was in existence at the time of the incident.

Local 25 does not believe that Brother Goulet would willfully drive himself off the end of the dock riding on a six thousand pound Brama bull which resulted in over fourteen years of injuries, lost pension and health benefits, earning opportunity

and many other struggles.  In fact, when reviewing a case based on negligence, one must look to the legal theory of the "reasonable man".  Negligence will exist upon failure to do, something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs would do or something which a reasonable and prudent person would not do".  (43 S.W. 508, 509).

Gentlemen, in conclusion, Brother Goulet must be returned to work with all his contractual rights.

Respectfully submitted,

MARK A. HARRINGTON
Business Agent



# A-P-A TRANSPORT CORP.

2100 88th Street, North Bergen, New Jersey 07047 • 201-869-6600  212-564-3130
Fax 201-869-5472

October 16, 2001

NEJAC
Case #87-404
Craig Goulet vs. A-P-A Transport Corp.

Gentlemen:

On March 11, 1987, Mr. Goulet was discharged for his gross negligence which caused a serious accident (Exhibit A).

At approximately 7:45 p.m. on March 11, 1987, Mr. Goulet was operating a forklift at 38 Door and was attempting to remove a skid of printed forms from Truck #1237 when the truck rolled forward and the forklift fell to the ground and Mr. Goulet jumped off and fell to the ground. Mr. Goulet was also the person who backed Truck #1237 into the platform.

The forklift wound up three (3) feet away from the dock in an upright position and the truck approximately 35 feet from the dock.

I will now read into the record Exhibit B which is Supervisor T. Whittles's report:

The supervisor's report of injury (Exhibit C) reflects that Mr. Goulet had a bruised right shin and no other findings of visible injury were noted. Although the forklift was damaged, it was driveable and Mr. Goulet was instructed to take it to the garage, which he did and to return back to 38 Door (Exhibit D).

Gentlemen, Mr. Goulet exhibited gross negligence resulting in a serious accident because he failed to properly secure Truck #1237. Furthermore, besides damaging the forklift, and during 14 years of intermittent hearings, appeals, and rehearings, Mr. Goulet has caused A-P-A Transport to expend over $200,000 in partial disability benefits (600 weeks), medical bills and legal costs, all because of his gross negligence for not properly securing the vehicle which rolled away.

Gentlemen, based upon all of the facts presented, we respectfully request the Claim of the Union be denied and the discharge upheld.

Very truly yours,

A-P-A TRANSPORT CORP.

Burton C. Trebour
Vice President
Labor & Administration

BCT:th

**EXHIBIT**
H

# NEW ENGLAND JOINT AREA GRIEVANCE COMMITTEE
## DECISION FORM

Established in accordance with the terms and conditions of the National Master Freight Agreement and the New England Supplemental Freight Agreement, entered into by and between the Local Unions and Carriers engaged in City Pickup and Delivery and/or Over-the-Road Freight Operations.

*******************************************************************************************

Teamster Local(s) No./Agent: 2 5 / M  Harrington

Grievant: Craig  Goulet

CASE NO.: 87-404

Employer: APA Transport Corp.

*******************************************************************************************

We, the undersigned parties to the National Master Freight Agreement and the New England Supplemental Freight Agreement hereby agree to submit the dispute to arbitration under the Rules of Procedure prescribed by the NE Joint Area Grievance Committee, by virtue of its authority, as set forth in Articles 7 and 8 of the National Master Freight Agreement and Articles 45 and 46 of the New England Supplemental Freight Agreement, the following:

Alleged violation of Article 47.  Union seeks man to be returned to work will all lost wages, H, W and Pension. 3/01- Union request this case be placed back on the SNE JAC docket for hearing.

The undersigned further agree that a majority decision of the NE Joint Area Committee in the above dispute will be final, conclusive and binding with no appeal and, further, that neither party will attempt through any overt acts, to void the decision rendered. Failure to comply may result in economic action within the confines of Article 8 of the National Master Freight Agreement and Article 45 and 46 of the New England Supplemental Freight Agreement.

Employer: APA Transport Corp.

Signed: B Trebour

Local Union(s): 2 5

Signed: M Harrington

This is the Official Award and Decision of the New England Joint Area Grievance Committee. Decision must be promptly complied with, and all Monetary Awards must be paid in pay period for the week following receipt of Decision.

## - DECISION -

The Panel in Executive Session, motion made, seconded and carried the Company's Point of Order was not upheld.  The Panel after hearing the case, motion made, seconded and carried that upon submitting acceptable documentation to the Company of his ability to return to unrestricted duties, the grievant shall serve a ten (10) day suspension.  Upon completion of the suspension he shall be reinstated to the seniority list in his original position.

DECISION DATE: 10/16/2001

EMPLOYER PANEL:

Scaizo

Picarello

UNION PANEL:

Mundy*

Fenlason

**EXHIBIT**

I

FEBRUARY 13, 2002

## AGREEMENT BETWEEN
## THE TEAMSTERS NATIONAL FREIGHT
## INDUSTRY NEGOTIATING COMMITTEE
## AND NEW PENN MOTOR EXPRESS, INC.

1.    APA has notified TNFINC that the company intends to cease operations immediately. Absent the efforts contemplated by this Agreement, APA's existing customers will be divided among many competitors, most of them non-union regional carriers. This will result in the loss of many NMFA-covered jobs in the industry.    New Penn Motor Express (NPME) had no involvement in APA's decision to terminate operations and has no independent obligation, contractual, statutory or otherwise, to APA, TNFINC or APA's employees in connection with this closure.

2.    After being advised of APA's decision to close, however, NPME began negotiations with APA to explore the possibility of acquiring certain customer information. Obtaining this customer information would allow NPME to capture a portion of APA's LTL business and keep that business with a NMFA carrier. Any arrangement between NPME and APA regarding customer information is contingent upon approval of this Agreement by TNFINC.

3.    Under the contingent agreement between NPME and APA, NPME is seeking customer information and access. NPME is not a purchaser and does not seek to purchase any of APA's equipment or terminals from APA. NPME is not seeking or participating in any merger or acquisition of APA or any of its rights or authority or stock. NPME is not the legal successor employer of APA.

4.    NPME does not believe its contingent agreement with APA creates any obligation to TNFINC or to APA NMFA employees, either legally or under the NMFA. However, NPME will extend an opportunity to those APA NMFA employees who are employed in the local supplemental areas where NPME has an established terminal operation to become NPME employees under terms and conditions hereinafter described. In return for extending such opportunities, TNFINC will agree that NPME has fulfilled all contractual or legal obligations, if any, to TNFINC and the APA NMFA employees.

5.    NPME's discussions with APA regarding its customer lists and NPME's offer to extend opportunities to APA NMFA employees is voluntary. NPME is undertaking these efforts because it believes there is some benefit to APA NMFA employees as well as a benefit to NPME. However, NPME has negotiated with APA contingent upon reaching agreement with TNFINC. Absent such agreements and approvals, NPME will abandon any further discussions with APA and will not extend the opportunities outlined herein, and shall have no obligation to TNFINC or the APA NMFA employees.

**EXHIBIT**

tabbies®

J

Haugton Ex 2

6.    Because of the serious and urgent nature of APA's current financial condition and the need to avoid the immediate erosion of APA's customer base, the timing of this agreement is of the essence.

7.    As of February 20, 2002 APA will cease to make any pick ups of LTL freight. APA will continue to make deliveries of that freight in their system. It is not the intent or the plan of NPME to deliver any APA freight but will make itself available to do so on a limited basis.

8.    Following the termination of APA's operations, NPME will provide opportunities to APA NMFA employees as described herein:

    a.    NPME and APA have terminals in different locations. NPME will provide to TNFINC and APA a list of its terminals and a general description of its pick up and delivery territory for each terminal as well as will advise which NPME terminals have road operations and which NPME terminals do not in an effort to assist APA NMFA employees.

    b.    Thereafter each APA NMFA employee, whether active or inactive, employed in the same local supplemental area where NPME has existing direct terminal operations, shall have the right to place his/her name on the call list of only ONE NPME terminal (or the classification seniority list, where applicable) within the same local supplement where they currently are employed. APA NMFA over-the-road drivers, active or inactive on separate over-the-road seniority at the Buffalo, NY, Philadelphia, PA and North Bergen, NJ terminals, shall only have the right to place his/her name on the over-the-road terminal seniority call list at one of the following NPME terminals where such same separate seniority exists. Albany, NY, Cinnaminson, NJ (Philadelphia area), Newburgh, NY and Trenton, NJ. (Footnote: In the event NPME opens a Burlington VT terminal, APA NMFA employees on the Burlington VT terminal seniority list shall be provided an opportunity to place their names on the list for the NPME Burlington VT terminal and gain seniority in accordance with the terms of this Agreement). NPME does not have any operations in Central States, nor does NPME have any operations in the Maritime Provinces of Canada as does APA, and thus those APA NMFA employees are not covered by this Agreement. It is clearly understood that during the period between the date of APA's termination of operations and the effective date of this Agreement, NPME shall be able to utilize APA NMFA employees as necessary without regard to seniority.

    c.    No APA NMFA employee shall be required to place his/her name on any NPME terminal call list. NPME shall have no obligation to any APA NMFA employee who chooses to not place his/her name on a NPME terminal call list by March 1, 2002. Additionally, NPME shall have no obligation to APA NMFA employees until TNFINC provides the APA NMFA terminal selection call lists in accordance with this Agreement.

    d.    When an APA NMFA employee places his/her name on a NPME terminal call list, it will appear below all NPME employees names on that terminal seniority list (end-tailed). APA NMFA employees shall be arranged (and called as casuals) according to their current APA NMFA seniority. If more than one employee has the same seniority date, their positioning on the list will be decided by "coin-tossing" conducted by union officials. NPME is not obligated to hire any APA employee not covered by the NMFA.

e.    Employees who are on a NPME terminal call list, will be offered work in accordance with their seniority position and qualifications. NPME shall not be penalized for passing an employee for work opportunity if the employee cannot perform all of the duties required of the job being filled or until APA NMFA employees meet all government pre-employment requirements.

f.    APA NMFA employees shall have work opportunity ahead of NPME casual employees, but shall not have work opportunity ahead of any probationary or preferred casual employees, if applicable.

g.    APA NMFA employees added to the NPME terminal call lists as described above shall be treated and paid as casual employees in accordance with the local supplement and shall establish seniority at NPME in accordance with the following provision. Any APA NMFA employee who works thirty (30) days within any two (2) consecutive calendar month period shall be deemed to have obtained seniority and shall be placed on the NPME seniority list in accordance with that established seniority date, end-tailed after the NPME seniority employees on such seniority list.

h.    NPME shall only be obligated to offer work to APA NMFA employees as outlined above until March 31, 2003 at which time such obligation will no longer exist.

If during the term of the current 1998-2003 NMFA, but not later than March 31, 2003, the list of former APA NMFA employees at any terminal is exhausted, those APA NMFA employees on other terminal lists in that local supplement, who have not obtained seniority at NPME, will be offered a second opportunity to place their name on the call list of such terminal.

i.    APA NMFA employees on a NPME terminal call list shall be paid in accordance with the casual rate listed in the NMFA until such time as they obtain NPME seniority. Thereafter they shall be paid ninety (90%) of the current NMFA rate for the first six (6) months and thereafter, one-hundred percent (100%) of the current rate in effect.

j.    Any APA NMFA employee who achieves seniority status at NPME and qualifies for vacation will receive one (1) bonus week of vacation in addition to the vacation earned under the local supplement unless or until such APA NMFA employee qualifies for three (3) weeks vacation, in which case the bonus week shall no longer apply. Under no circumstances shall any APA NMFA employee receive more than one bonus week of vacation in any vacation year. The vacation year being contract or calendar in accordance with the Local Supplemental Agreement.

k.    NPME shall have no obligation to relocate any APA NMFA employee.

l.    NPME shall have no responsibility, obligation or liability for any claim or for anything of any kind or nature regarding or involving APA NMFA employees added to NPME seniority lists as described prior to the time they are added to such NPME seniority list. This includes but is not limited to, unemployment or workers compensation claims, short-paid or

3

underpaid wages, short-paid or under paid health and welfare or pension contributions, any unfunded or withdrawal pension liability, or claims or any kind against APA or others.

  m. NPME will make contributions for each APA NMFA employee into the respective Health and Welfare and Pension fund where such APA NMFA employee is currently enrolled. All payments of Health and Welfare and Pension contributions made by NPME on behalf of the APA NMFA employee shall be made in accordance with the requirements of the NMFA and applicable Local Supplements. NPME shall not be obligated for Health and Welfare and Pension contributions on behalf of any APA NMFA employee on disability or workers compensation.

  n. APA NMFA employees added to the NPME seniority lists shall be eligible to participate in the Teamsters 401-K program as do other NPME employees.

8. It is acknowledged that the benefits provided to the APA NMFA employees under this Agreement are greater than would otherwise be provided under the NMFA for these employees under these circumstances, and that NPME has fulfilled any legal or contractual obligation it had or may have to these APA NMFA employees.

9. This Agreement will become effective February 25, 2002, but only if (i) there is an agreement finalized between NPME and APA regarding customer lists and (ii) there is approval by the affected APA NMFA employees.

TNFINC       NEW PENN MOTOR EXPRESS, INC.

_____  _____
Phil Young - Co-Chairman   Stephen M. O'Kane - President

_____  _____
James McCall - IBT Counsel   John Ring - Counsel

4

1

Volume I
Pages 1 to 57
Exhibits 1 to 8

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - -x
                                 :
CRAIG GOULET,                    :
          Plaintiff,             :
                                 :
     vs.                         :   Civil Action
                                 :   No. 04-12577 JLT
NEW PENN MOTOR EXPRESS, INC.;    :
and TEAMSTERS LOCAL 25,          :
INTERNATIONAL BROTHERHOOD OF     :
TEAMSTERS,                       :
          Defendants.            :
                                 :
- - - - - - - - - - - - - - - -x

          DEPOSITION OF WILLIAM H. CARNES, a witness
called on behalf of the Plaintiff, taken pursuant to
the Federal Rules of Civil Procedure, before Ken A.
DiFraia, Registered Professional Reporter and Notary
Public in and for the Commonwealth of Massachusetts,
at the Offices of Scott A. Lathrop & Associates,
122 Old Ayer Road, Groton, Massachusetts, on
Thursday, September 8, 2005, commencing at
10:04 a.m.

PRESENT:

     Scott A. Lathrop & Associates
          (by Scott A. Lathrop, Esq.)
          122 Old Ayer Road, Groton, MA 01450,
          for the Plaintiff.

     Frantz Ward LLP
          (by Carl H. Gluek, Esq.)
          2500 Key Center, 127 Public Square,
          Cleveland, OH 44114-1230, for the Defendant
          New Penn Motor Express, Inc.

(Continued on Next Page)



EXHIBIT

tabbies

K

50

1   has any prejudices against Mr. Goulet?

2       A.   No, sir.

3       Q.   Do you know of anybody at Local 25 that

4   would like to see ill will suffered upon

5   Mr. Goulet?

6       A.   No, sir.

7       Q.   With respect to the agreement, which has

8   been identified as Exhibit 1, is it your

9   understanding that the employees of APA had an

10  obligation to advise the union that they wanted to

11  be on this call list?

12           MR. LATHROP:   Objection.

13      A.   (No response)

14      Q.   Do you know one way or the other?

15      A.   I really don't.

16      Q.   Do you know under the agreement, Exhibit 1,

17  that the union had an obligation to forward the

18  names of APA employees that wanted to be on a call

19  list?

20      A.   Correct.

21      Q.   Were you aware that under Exhibit 1, there

22  was a time period within which the union was to

23  forward those names?

24           MR. LATHROP:   Objection.

57

1    COMMONWEALTH OF MASSACHUSETTS)

2    SUFFOLK, SS.                      )

3         I, Ken A. DiFraia, Registered Professional

4    Reporter and Notary Public in and for the

5    Commonwealth of Massachusetts, do hereby certify

6    that there came before me on the 8th day of Sept.,

7    2005, at 10:04 a.m., the person hereinbefore named,

8    who was by me duly sworn to testify to the truth and

9    nothing but the truth of his knowledge touching and

10   concerning the matters in controversy in this cause;

11   that he was thereupon examined upon his oath, and

12   his examination reduced to typewriting under my

13   direction; and that the deposition is a true record

14   of the testimony given by the witness.

15        I further certify that I am neither attorney or

16   counsel for, nor related to or employed by, any

17   attorney or counsel employed by the parties hereto

18   or financially interested in the action.

19        In witness whereof, I have hereunto set my hand

20   and affixed my notarial seal this *19th* day of

21   September, 2005.

22                    *Ken A. DiFraia*

23                      Notary Public

24           My commission expires 4/3/09



# Teamsters Local 25
# International Brotherhood of Teamsters

544 MAIN STREET • BOSTON, MASSACHUSETTS 02129-1113 • 617-241-8825 • Fax 617-242-4284
www.teamsterslocal25.com

GEORGE W. CASHMAN
*President / Principal Officer*

RITCHIE E. REARDON
*Secretary-Treasurer*

WILLIAM H. CARNES
*Vice President / Business Agent*

JOHN A. MURPHY
*Recording Secretary / Business Agent*

MARK A. HARRINGTON
*Trustee / Business Agent*

LOU DiGIAMPAOLO
*Trustee / Director of Organizing /
Field Representative*

ERNEST C. SHEEHAN JR.
*Trustee / Business Agent*

VINCENT J. PISACRETA
*Business Agent*

ARTHUR J. LAZAZZERO
*Business Agent*

February 28, 2002

Dan Schmidt
Vice President of Labor Relations
New Penn Motor Express
625 So. 5th Ave. P.O. Box 630
Lebanon, PA 17042

Dear Mr. Schmidt:

Enclosed please find updated list of former employees of A.P.A. in Canton, Massachusetts. Please note that R. Petit's area code number has changed from (781) to (617) and T. Sullivan has changed his preference from Providence, Rhode Island to Billerica, Massachusetts.

Should you have any question, please contact Mark Harrington at 617-241-8825 extension #277.

Thank you for your attention to this matter.

Sincerely,

George W. Cashman
President/Principal Officer

GWC/jem



*We will only accept deliveries from UNION carriers! All other deliveries will be refused!*

| | NAME | ADDRESS | CITY | ST. | ZIP | TELEPHONE | SS# | SEN.DATE | PRE. |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Prout, R. | 56 Spring St. | Braintree | MA | 02184 | (781) 848-5305 | 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 | 11/12/68 | Ret. |
| 2 | Burill, P. | 6 Grt. Woods Cl. | Norton | MA | 02766 | (508) 285-9452 | 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 | 6/30/70 | Prov. |
| 3 | McCaffrey, M. | 29B Shaw St. | Braintree | MA | 02184 | (781) 848-9223 | 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 | 10/7/70 | Bil. |
| 4 | Heroux | 215 Forest Trail | Hanson | MA | 02311 | (781) 447-9455 | 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 | 6/14/73 | Ret. |
| 5 | Mastropietro, R. | 72 Paul Rd. | Hanover | MA | 02339 | (781) 871-3625 | 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 | 1/3/73 | Bil. |
| 6 | Setterland, D. | 560 Bedford St. | Abington | MA | 02351 | (781) 871-0416 | 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 | 1/11/74 | Ret. |
| 7 | Loud, D. | 11 Hinson Rd. | Weymouth | MA | 02188 | (781) 337-3557 | 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 | 3/11/74 | Ret. |
| 8 | Petit, A | 115 Highland Ave. | Quincy | MA | 02169 | (781)471-0098 | 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 | 9/15/75 | Bil. |
| 9 | Petit, R. | 111 Pond St. | Swansea | MA | 02777 | (508) 674-7683 | 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 | 9/30/75 | Prov. |
| 10 | Durette, M. | 23 Garfield St. | Foxboro | MA | 02035 | (508) 543-2978 | 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 | 8/17/76 | Ret. |
| 11 | Hoyt, H. | 1573 Liberty St. | Braintree | MA | 02184 | (781) 843-1549 | 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 | 8/27/76 | Bil. |
| 12 | Ellis, R. | 31 Washington St. | Sherborn | MA | 01770 | (508) 652-6086 | 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 | 1/24/77 | Bil. |
| 13 | Deramo, M. | 17 Hillside Dr. | Plymouth | MA | 02360 | (508) 224-5584 | 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 | 1/24/77 | Prov. |
| 14 | Sullivan, T. | P.O. Box 265 | Easton | MA | 02356 | (508) 230-2436 | 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 | 1/4/78 | Prov. |
| 15 | Rabideau, R. | 306 Field St. | Brockton | MA | 02403 | (508) 583-0861 | 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 | 3/27/78 | Bil. |
| 16 | Kelley, Jr., W. | 4 Kathy Ln. | Hanson | MA | 02341 | (781) 826-2751 | 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 | 11/14/78 | Prov. |
| 17 | Monahan, H. | 633 King St. | Hanover | MA | 02339 | (781) 871-7648 | 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 | 4/23/79 | Bil. |
| 18 | Petit, Jr., E. | 53 Rosalind St. | N. Weymouth | MA | 02188 | (781) 337-6278 | 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 | 8/3/81 | Bil. |
| 19 | Pickering, G. | 17 Marsh Ave. | Salem | NH | 03079 | (603) 890-6183 | 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 | 5/17/83 | Bil. |
| 20 | Tisbert, B. | 22 Bixby Dr. | E Bridgewater | MA | 02333 | (508) 378-3792 | 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 | 7/20/83 | Prov. |
| 21 | Damiano, J. | 283 Central St. | E. Bridgewater | MA | 02333 | (508) 378-0466 | 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 | 5/14/84 | Prov. |
| 22 | Gwynn, P. | 804 Maple St. | Mansfield | MA | 02048 | (508) 339-5134 | 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 | 9/24/84 | Prov. |
| 23 | Cardoza, P. | 20 E. Nilsson St. | Brockton | MA | 02301 | (508) 588-6540 | 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 | 9/30/85 | Bil. |
| 24 | Bouffard, R. | 230 State Rd. | Plymouth | MA | 02360 | (508) 888-6964 | 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 | 4/6/73 | Ret. |
| 25 | Coull, D. | 437 Commonwealth Rd. | Wayland | MA | 01778 | (508) 653-8174 | 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 | 10/25/82 | Ret. |
| 26 | McGee, R. | 324 Flagg St. | Bridgewater | MA | 02324 | (508) 697-9620 | 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 | 4/30/84 | Prov. |
| 27 | Francey, G. | 103 So. Pickens St. | Lakeville | MA | 02347 | (508) 946-0330 | 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 | 11/15/84 | Prov. |
| 28 | Cruise, M. | 16 Carver St. | Watertown | MA | 02472 | (617) 926-5324 | 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 | 2/25/85 | Bil. |
| 29 | Power, K. | 160 Washington St., Unit #68 | Plainville | MA | 02762 | (508) 695-3075 | 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 | 8/26/85 | Prov. |
| 30 | Fennelly, E. | 1165 Main St. | Walpole | MA | 02081 | (508) 668-0244 | 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 | 3/9/87 | Prov. |
| 31 | McGrath, H | 28 Poole Cl. | Holbrook | MA | 02343 | (781) 767-6229 | 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 | 5/8/89 | Bil. |
| 32 | Bain, S | 139 Church St. | Westwood | MA | 02090 | (781) 329-3587 | 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 | 5/15/89 | Bil. |
| 33 | Holderried, J | 127 Everett Cl. | Stoughton | MA | 02072 | (781) 344-1904 | 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 | 5/31/90 | Prov. |
| 34 | Howe, T. | 53 Bradford St. | Stoughton | MA | 02072 | (781) 344-3871 | 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 | 12/9/91 | Prov. |
| 35 | Howe, S | 367 Pond St. | So. Weymouth | MA | 02190 | (781) 335-4217 | 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 | 12/9/91 | Pass. |
| 36 | Berry, S | 4 Hadley Rd. | Holbrook | MA | 02343 | (508) 285-4918 | 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 | 12/9/91 | Bil. |
| 37 | Sullivan, C. | 1 Pebble Path | Norton | MA | 02766 | (508) 477-5324 | 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 | 12/9/91 | Prov. |
| 38 | MacDonald, J. | 4 First St. | Forestdale | MA | 02644 | (508) 339-8545 | 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 | 3/1/93 | Prov. |
| 39 | Hulbert, M. | 75 Chestnut W. | Mansfield | MA | 02048 | (781) 986-8686 | 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 | 9/3/93 | Prov. |
| 40 | O'Meara, W. | 755 Washington St | Randolph | MA | 02368 | (508) 668-5435 | 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 | 9/3/93 | Prov. |
| 41 | Fontes, M | 36 Brown St. | Walpole | MA | 02081 | (508) 994-5614 | 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 | 9/9/93 | Prov. |
| 42 | Pimental, J. | 5 Fall Ln. | Fair Haven | MA | 02719 | (781) 828-3354 | 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 | 9/9/93 | Prov. |
| 43 | Friel, P. | 4 South St. | Canton | MA | 02021 | (781) 828-6595 | | 9/10/93 | Prov. |
| 44 | Lehan, D. | | Canton | MA | 02021 | | | | |

| # | Name | Address | City | State | Zip | Phone | | Date | Status |
|---|------|---------|------|-------|-----|-------|---|------|--------|
| 45 | Houde, G. | 360 Cedar St. | New Bedford | MA | 02740 | (508) 996-6028 | 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 | 9/14/93 | Prov. |
| 46 | Roche, J. | 3 Buttercup Ln. | Medway | MA | 02053 | (508) 533-7249 | 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 | 9/16/93 | Prov. |
| 47 | Stephen, J. | 29 Jessie Ave. | S. Attleboro | MA | 02703 | (508) 761-6979 | 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 | 9/17/93 | Prov. |
| 48 | Carvalho, D. | 363 Wareham St. | Middleboro | MA | 02346 | (508) 947-6163 | 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 | 9/18/93 | Pass |
| 49 | Carey, P. | 19 Grist Mill Ln. | Pembroke | MA | 02359 | (781) 829-8773 | 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 | 10/27/93 | Prov. |
| 50 | Creighton, R. | 42 Brooke Ter. | Weymouth | MA | 02188 | (781) 335-8815 | 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 | 9/1/94 | (Prov. |
| 51 | Perry, J | 59 Yellowstone Ave. | Warwick | RI | 02886 | (401) 463-8145 | 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 | 9/10/94 | Prov. |
| 52 | Blake, R. | 17 Glenfeld Rd. | N. Attleboro | MA | 02760 | (508) 643-2239 | 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 | 1/13/95 | Prov. |
| 53 | Kearley, M. | 30 Carol St. | Acushnet | MA | 02743 | (508) 763-4960 | 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 | 4/4/95 | Military |
| 54 | DeSouza, B. | 80 McCabe St. | S. Dartmouth | MA | 02748 | (508) 763-9680 | 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 | 4/5/95 | Prov. |
| 55 | Osmer, J | 31 Arlington St. Apt. 3 | Nashua | NH | 03060 | (603) 598-2982 | 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 | 7/24/95 | Bil. |
| 56 | Dolan, J. | 19 Willowdean Ave. | W. Roxbury | MA | 02132 | (617) 323-2026 | 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 | 7/25/95 | Bil. |
| 57 | Pendleton, J | 1540 Broadway Lot 23 | Raynham | MA | 02767 | (508) 822-7740 | 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 | 7/8/96 | Bil. |
| 58 | Gilmore, M. | 24 Keith Ave. | Brockton | MA | 02301 | (508) 588-1327 | 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 | 9/23/96 | Prov. |
| 59 | Parquette, D. | 103 Hart St. | Taunton | MA | 02780 | (508) 823-7150 | 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 | 9/24/96 | Prov. |
| 60 | Spano, J. | 53 W. Chestnut St. | Brockton | MA | 02301 | (508) 559-0189 | 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 | 10/1/96 | Prov. |
| 61 | Kelley, Jr., R | 674 Hancock St. | Abington | MA | 02351 | (781) 982-9328 | 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 | 3/25/97 | Bil. |
| 62 | Johnson, Jr. R. | 186 Wareham St. | Middleboro | MA | 02346 | (508) 946-1129 | 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 | 4/15/97 | Prov. |
| 63 | Choiniere, Jr., R | 52 Prospect St. | Attleboro | MA | 02703 | (508) 222-5776 | 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 | 12/30/98 | (Prov. |
| 63 | Crawford, H. | 4 W. Belcher Rd. | Foxboro | MA | 02035 | (508) 543-2196 | 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 | 12/31/98 | Ret. |
| 64 | Clark, D | 7 Garden St. | Randolph | MA | 02368 | (781) 326-4327 | 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 | 1/3/99 | Ret. |
| 65 | White, A. | 95 Harvard St. | Dedham | MA | 02026 | (781) 329-5737 | 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 | 8/26/99 | Prov. |
| 66 | Kelleher, T. | 239 Winter St. | Brockton | MA | 02402 | (508) 559-5477 | 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 | 9/15/99 | Prov. |
| 67 | Winquist, P. | 21 Dingley Dell Ln. | Duxbury | MA | 02332 | (781) 834-5908 | 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 | 9/17/99 | Prov. |
| 68 | Gould, D. | 9 Boxberry Ln. | Rochester | MA | 02770 | (508) 763-9521 | 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 | 9/17/99 | Prov. |
| 69 | Morris, T. | 24 Lake St. | Rehoboth | MA | 02769 | (508) 336-6919 | 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 | 10/28/99 | Prov. |
| 70 | Hamilton, D | 8 Uncatena Rd. | W. Wareham | MA | 02576 | (508) 295-3979 | 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 | 11/9/99 | Prov. |
| 71 | Kelley, G. | 104 Brentwood Cl. | Plymouth | MA | 02360 | (508) 224-7012 | 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 | 12/22/99 | Bil. |
| 72 | Wertz, E. | 137 Lawrence St. | Brockton | MA | 02302 | (508) 588-4847 | 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 | 12/23/99 | Prov. |
| 73 | Palm, W. | 89 Lester St. | Brockton | MA | 02301 | (508) 586-6682 | 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 | 11/28/00 | Prov. |
| 74 | Zutaut, Jr. B. | 365 Grance Pk. | Bridgewater | MA | 02324 | (508) 284-3796 | 032-54-667 | 12/4/00 | Bil. |

# TEAMSTERS UNION LOCAL 25
## GRIEVANCE REPORT

COMPANY: NEW PENN MOTOR EXPRESS

NAME: CRAIG GOULET

ADDRESS  305 COX ST. HUDSON, MA. 01749

BUSINESS AGENT'S NAME: William H. CARNES

DATE of Complaint  (APRIL 7th 2003)

NATURE of GRIEVANCE: SENIORITY RIGHTS:

IN ACCORDANCE with The NATIONAL MASTER FREIGHT AGREEMENT ARTICLE #5 AND All of ARTICLE #5 SUBSECTIONS ALONG with the NEW ENGLAND SUPPLEMENTAL FREIGHT AGREEMENT ARTICLE #43 - SENIORITY including All of ARTICLE 43'S SUBSECTIONS, I AM FILING A GRIEVANCE AGAINST NEW PENN MOTOR EXPRESS TO INCLUDE All TIME LOST, BACK PAY, SENIORITY AND CONTRACTUAL BENIFITS UNDER The CONTRACT AGREEMENT, FROM MARCH 1ST 2002 UP TO AND CONTINUING PAST MARCH 1ST 2003, BASED ON AGREEMENT BETWEEN TNFINC AND NPME AS A RESULT of the CLOSURE of A.P.A. OPERATIONS

EXHIBIT
M

Craig Goulet



# Teamsters Local 25
## International Brotherhood of Teamsters

544 MAIN STREET • BOSTON, MASSACHUSETTS 02129-1113 • 617-241-8825 • Fax 617-242-4284
www.teamsterslocal25.com

**GEORGE W. CASHMAN**
*President / Principal Officer*

**RITCHIE E. REARDON**
*Secretary-Treasurer*

**WILLIAM H. CARNES**
*Vice President / Business Agent*

**JOHN A. MURPHY**
*Recording Secretary / Business Agent*

**MARK A. HARRINGTON**
*Trustee / Business Agent*

**LOU DiGIAMPAOLO**
*Trustee / Director of Organizing / Field Representative*

**COLLEEN BRADY**
*Trustee / Special Projects Coordinator*

**ARTHUR J. LAZAZZERO**
*Business Agent*

**SEAN M. O'BRIEN**
*Business Agent*

**JAMES E. WILSON**
*Business Agent*

April 18, 2003

Mr. Charles Zaccaria, Vice President
New Penn Motor Express, Inc.
Sterling Road
Post Office Box 516
Billerica, MA 01821

Dear Mr. Zaccaria:

Enclosed for your processing, please find a copy of the grievance received by Vice President/Business Agent William H. Carnes from Craig Goulet, dated April 7, 2003.

If you have any questions, please do not hesitate to contact Mr. Carnes at the above number.

Very truly yours,

GEORGE W. CASHMAN
President

WHC/mh

Enclosure: 1

C: Craig Goulet



**EXHIBIT**

**N**

*We will only accept deliveries from UNION carriers! All other deliveries will be refused!*

# EASTERN REGION JOINT AREA COMMITTEE

Established in accordance with the terms and conditions of the National Master Freight Agreement and the NE Supplemental Agreement, entered into by and between the Local Union and carriers engaged in City Pickup and Delivery and/or Over-the-Road Freight Operations.

DOCKET NO. SC-21-04

IN THE MATTER OF THE DISPUTE BETWEEN

TEAMSTERS LOCAL NO. 25
BOSTON, MA

SUBMISSION FORM

and

NEW PENN MOTOR EXPRESS, INC.

We, the undersigned, parties to the National Master Freight Agreement and the NE Supplemental Agreement, hereby agree to submit the dispute to arbitration under the Rules of Procedure prescribed by the Eastern Region Joint Area Committee, by virtue of its authority, as set forth in Article 45 and 46 of the NE Supplemental Agreement, the following:

On behalf of Craig Goulet, Union alleges violation of Article 32, Section 1,2, September, 2003, grievant should have been called for work at New Penn per APA/New Penn agreement; requesting grievant be returned to proper seniority.

The undersigned further agree that a majority decision of the Eastern Region Joint Area Committee in the above dispute will be final, conclusive and binding with no appeal and, further, that neither party will attempt through any overt acts, to void the decision rendered.

The undersigned also agree that failure to comply with the decision of a majority of the Committee within ten (10) days of the date of the decision will result in the loss of all contract rights, privileges and benefits due them under Article 45 of the NE Supplemental Agreement.

| | | | |
|---|---|---|---|
| Date | July 28, 2004 | | |
| Employer | NEW PENN MOTOR EXPRESS, INC. | Local Union | 25 |
| Signed by | D. W. Schmidt, V. P. | Signed by | Mark A. Harrington, Bus. Agent |

## DECISION

The Panel, in executive session, motion made, seconded and carried, the initial docketing of this case was not within thirty (30) days; therefore, the Company's point of order is upheld. Cost Union.

R. L. SCHAEFFER
Employer Co-Secretary

JULY 28, 2004
Date

RONALD M. JENKINS
Union Co-Secretary

JULY 28, 2004
Date



LEXSEE 2000 U.S. APP. LEXIS 644

**MICHAEL CROMER, JAMES KLINEDINST, JOHN KENNEDY, and JAMES MOORE, Plaintiffs-Appellants, v. AMERISOURCE CORPORATION and UNITED INDUSTRIAL WORKERS/SERVICE TRANSPORTATION, PROFESSIONAL & GOVERNMENT WORKERS OF NORTH AMERICA OF THE SEAFARES INTERNATIONAL UNION OF NORTH AMERICA, ATLANTIC, GULF, LAKES AND INLAND WATERS DISTRICT, Defendants-Appellees.**

No. 98-4441

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

*2000 U.S. App. LEXIS 644*

**January 13, 2000, Filed**

**NOTICE:** [*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: *2000 U.S. App. LEXIS 7949.*

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO. 96-01062. Hogan (M). 10-29-98.

**DISPOSITION:** AFFIRMED.

**COUNSEL:** For MICHAEL CROMER, JAMES KLINEDINST, JOHN KENNEDY, JAMES MOORE, Plaintiffs - Appellants: Mark Joseph Byrne, Jacobs, Kleinman, Seibel & McNally, Cincinnati, OH.

For AMERISOURCE CORPORATION, Defendant - Appellee: Robert D. Weisman, James E. Davidson, Daniel W. Srsic, Schottenstein, Zox & Dunn, Columbus, OH.

For UNITED INDUSTRIAL WORKERS, SERVICE TRANSPORATION, PROFESSIONAL & GOVERNMENT OF NORTH AMERICA OF THE SEAFARERS INTERNATIONAL UNION OF NORTH AMERICA, ATLANTIC, GULF, LAKES AND INLAND WATER DISTRICT, Defendants - Appellees: Joan Torzewski, Lackey, Nusbaum, Harris, Reny & Torzewski, Toledo, OH.

For UNITED INDUSTRIAL WORKERS, SERVICE TRANSPORATION, PROFESSIONAL & GOVERNMENT OF NORTH AMERICA OF THE SEAFARERS INTERNATIONAL [*2] UNION OF NORTH AMERICA, ATLANTIC, GULF, LAKES AND INLAND WATER DISTRICT, Defendants - Appellees: Stanford Dubin, Camp Springs, MD.

**JUDGES:** BEFORE: KEITH, NORRIS, and CLAY, Circuit Judges.

**OPINIONBY:** CLAY

**OPINION:**

CLAY, Circuit Judge. Plaintiffs, Michael Cromer, James Klinedinst, John Kennedy, and James Moore, appeal from the judgment entered by the district court pursuant to the order entered by Magistrate Judge Timothy S. Hogan, presiding by authority of the Honorable Herman J. Weber, on October 29, 1998, granting summary judgment to Defendants, Amerisource Corporation and United Industrial Workers Service, Transportation, Professional & Government of North America, in this case brought under § 301 of the Labor Management Relations Act (LMRA) *29 U.S.C. § 185 et seq.* For the reasons set forth below, the district court's judgment is **AFFIRMED**.

**BACKGROUND**

*Procedural History*

EXHIBIT

P

Plaintiffs are former employees of Defendant Amerisource Corporation ("Amerisource"), and former members of Defendant United Industrial Workers Service, Transportation, Professional & Government of North America of the Seafarers International Union of North America, Atlantic, [*3] Gulf, Lakes and Inland Waters District ("the Union") (collectively "Defendants"). Plaintiffs were employed by Amerisource as full-time delivery truck drivers at its Cincinnati, Ohio distribution center until Amerisource closed down its Cincinnati depot in the spring of 1996. Amerisource is a wholesale distributor of pharmaceuticals, health, and beauty aide products. At all times relevant to this case, the Union was Plaintiffs' exclusive bargaining representative with Amerisource. On November 4, 1996, Plaintiffs filed suit against Defendants pursuant to *29 U.S.C. § 185 et seq.* alleging breach of the duty of fair representation by the Union, and alleging breach of the Collective Bargaining Agreement ("CBA") by Amerisource ("hybrid § 301" claim). After a period of discovery, Amerisource and the Union filed motions for summary judgment. Plaintiffs filed a memorandum in opposition to Defendants' respective motions. The parties consented to have the case heard by Magistrate Judge Hogan pursuant to *28 U.S.C. § 636*(c), and appeared before the magistrate on August 24, 1998, to argue the pending motions. Thereafter, the magistrate issued an [*4] order granting the Union's motion for summary judgment; denying Amerisource's motion as moot; and dismissing the case in its entirety. The corresponding judgment dismissing the case from the district court's docket was entered on October 29, 1998, and it is from this judgment that Plaintiffs now appeal.

### Facts

In January of 1996, the Union and Amerisource entered into a CBA which governed Plaintiffs' employment at all times relevant to this appeal. The provisions of the CBA which form the basis of Plaintiffs' complaint are "Article 25, Section 6," and "Appendix C." Article 25, Section 6 provides as follows:

SECTION 6. In the event of the partial of complete closure or relocation of any Company facility covered by this Agreement, the Company shall not be obligated to bargain with the Union over the decision or effects of the decision, and the Company's total obligation to the Union and the associates in the event of such a complete or partial closure or relocation, shall consist of payment of severance allowance to associates actively employed as of the date of the closure or relocation of the facility at the rate of 1.2 weeks of pay for each full year of service at their [*5] regular hourly rate at the time of the closure.

(J.A. at 781.) Appendix C, which did not exist prior to the ratification of the contract in 1996, provides as follows:

APPENDIX C

DRIVING WORK FORCE

In the event that a decision is made to move more deliveries to subcontracting the following specifies how the company driving force will be reduced.

Of the current full time drivers who take runs directly out of the Columbus warehouse the company agrees that it will not reduce, due to subcontracting more than the numbers below during the life of the contract:

| YEAR | NUMBER ALLOWED TO REDUCE |
|------|--------------------------|
| 1996 | 5 |
| 1997 | 3 |
| 1998 | 2 |
| 1999 | 2 |

A driving associate reduced due to subcontracting has the following options:

Bump into the warehouse by seniority. All contract language regarding qualification/disqualification will apply. (See below for wage guarantees)

> Resign from the company and take sever-
> ance pay as outlined in Article 25, Section
> 6. This option is also available to drivers
> who choose to bump, during the first 90
> calendar days that they work in the job
> that they bump into.

(J.A. at 787.)

On April 16, 1996, all of the Cincinnati [*6] drivers
attended a meeting conducted by Amerisource's Human
Resources Manager and Shipping Supervisor, at which
time the drivers were informed that the Cincinnati depot
would be closing and the drivers would be laid-off, as
well as that the work would be outsourced. All of the
drivers received a severance letter and general releases.
*Id.* Each Plaintiff was required to sign a release in ex-
change for receiving the severance pay provided for un-
der the terms of the CBA.

Plaintiffs subsequently met with Union Vice-
President Bill Ellis, and requested that Ellis file a griev-
ance on two issues regarding their terminations: 1) their
bumping rights under the CBA to bump into employment
positions in Amerisource's Columbus, Ohio warehouse
as opposed to being terminated; and 2) their right to re-
ceive severance pay without executing the proposed
waiver and general release. In response to Plaintiffs' re-
quest, Ellis agreed to file a grievance regarding the issue
of severance pay; however, Ellis declined to file a griev-
ance regarding the issue of bumping rights on the basis
that the CBA provision which addressed such rights ap-
plied only to full-time drivers at Amerisource's Colum-
bus location. [*7] According to Ellis, some unidentified
long standing oral agreement between Amerisource and
the Union allegedly prevented drivers working out of
Cincinnati to bump to Columbus.

Thereafter, Plaintiffs filed the instant suit, claiming
that Amerisource breached the terms of the CBA by ter-
minating Plaintiffs and that the Union breached its duty
of fair representation "by failing to interview important
witnesses and obtain important documents, by failing to
permit and encourage Plaintiffs to testify at the hearing,
[and] by failing to show Plaintiff's [sic] counsel to attend
the meeting of July 19, 1996." Defendants filed respec-
tive motions for summary judgment, wherein Ameri-
source argued that Plaintiffs could not prove that Ameri-
source violated the CBA because severance pay was
properly conditioned upon execution of a severance
agreement under the CBA, that Plaintiffs' terminations
were consistent with the terms of the CBA, and that
Plaintiffs were not entitled to bump into a position in the
Columbus warehouse. Amerisource also argued that the
Union did not breach its duty of fair representation.

Similarly, the Union argued that summary judgment was
appropriate inasmuch as it did not [*8] breach its duty of
fair representation by failing to file a grievance on the
bumping issue, or by failing to fully investigate Plain-
tiffs' grievance with respect to the severance pay issue.
The Union claimed that based upon past practice be-
tween the Union and Amerisource, as well as the Union's
understanding of Appendix C to the CBA, truck drivers
in Cincinnati did not have a right to bump into the Co-
lumbus warehouse or into any other Columbus position,
and that Plaintiffs did not have an absolute right to force
the Union to file a grievance particularly where the
grievance was frivolous.

The severance issue was not resolved during the
grievance process. As such, the question of whether
Plaintiffs were required to sign a waiver and release pro-
ceeded to arbitration before an agreed upon neutral arbi-
trator as provided for under the CBA. On April 7, 1997,
the arbitrator rendered a decision and award in favor of
Amerisource finding that Plaintiffs were not entitled to
payment of severance benefits unless they executed the
waiver and general release tendered by Amerisource.

The district court noted the parties' arguments, as
outlined above, and found that summary judgment was
appropriate [*9] as to the Union inasmuch as no genuine
issue of material fact remained for trial as to whether the
Union breached its duty of fair representation as it re-
lated to the severance pay grievance and arbitration.
However, the district court refused to consider the issue
of the Union's breach regarding Plaintiffs' bumping issue
inasmuch as Plaintiffs never pleaded such allegations in
their complaint. Because the district court concluded that
the Union did not breach its duty of fair representation
on the severance pay issue, the court concluded that
Amerisource's motion for summary judgment was moot.
Plaintiffs filed the instant appeal, challenging only the
district court's failure to consider the bumping issue as it
related to the Union's breach of fair representation, and
the issue of whether an issue of fact remains for trial
regarding Amerisource's breach of the CBA.

## ANALYSIS

A "hybrid" § 301/fair representation claim, com-
prises two causes of action: 1) an action against the un-
ion alleging a breach of the union's duty of fair represen-
tation; and 2) an action against the employer alleging a
breach of the CBA. *See DelCostello v. Int'l Brotherhood
of Teamsters, 462 U.S. 151, 164-65, 76 L. Ed. 2d 476,
103 S. Ct. 2281 (1983).* [*10] As described by the *Del-
Costello* Court:

> The suit against the employer rests on §
> 301, since the employee is alleging a

breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. "Yet the two claims are inextricably interdependent. 'To prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.'"

*Id.* (quoting *United Parcel Serv., Inc., v. Mitchell, 451 U.S. 56, 66-67, 67 L. Ed. 2d 732, 101 S. Ct. 1559 (1981)* (Stewart, J. concurring in the judgment) (quoting *Hines v. Anchor Motor Freight, 424 U.S. 554, 570-71, 47 L. Ed. 2d 231, 96 S. Ct. 1048 (1976)).* Unless the plaintiff demonstrates both violations, he cannot succeed against either party. *White, 899 F.2d 555, 560.*

Because we find that no genuine issue of fact remains for trial as to whether Amerisource breached the terms of the CBA, we need not reach [*11] the issue of whether the district court erred in refusing to consider Plaintiff's claim on the bumping rights issue. *See White, 899 F.2d at 560; see also City Management Corp. v. U.S. Chemical Co., Inc., 43 F.3d 244, 251 (6th Cir. 1994)* (noting that this Court may affirm a district court's judgment on any grounds support by the record, even though they may be different grounds than those relied upon by the district court).

Article 25, Section 6 of the CBA expressly states that "in the event of the partial or complete closure or relocation of any Company facility . . . the Company shall not be obligated to bargain with the Union over the decision or effects of that decision, *and the Company's total obligation to the Union and the associates in the event of such a complete or partial closure or relocation shall consist of severance pay . . . .*" In addition to this express contractual provision, Union Vice President Ellis informed Plaintiffs from the outset that they had no bumping rights based upon past practices at Amerisource, and both Ellis and Amerisource's Vice President, Jack Miller, testified that such bumping has never been allowed. n1 In [*12] light of this express language the CBA, as well as this unrebutted testimony, Amerisource did not breach the terms of the CBA in terminating Plaintiffs. *See DelCostello, 462 U.S. at 164-65.*

n1 Plaintiffs claim that a question of fact remains on this issue inasmuch as a driver at the Cincinnati facility, Diane Stiltner, was allowed to bump the Columbus facility. However, a thorough review of this claim indicates that it is factually misplaced. Stilner began working at the Columbus facility in 1982, that she worked at the Cincinnati depot for a short time after it opened in 1985, and that she returned to the Columbus facility shortly thereafter when she voluntarily resigned in November of 1985. (*See* J.A. at 849). Indeed, Plaintiffs cite to no employees who have been allowed to bump as they wish to do.

As such, the district court properly dismissed Plaintiffs' § 301 claim, and we therefore **AFFIRM** the district court's judgment.

LEXSEE 2005 U.S. APP. LEXIS 18628

**Jeffrey A. Kendall, Plaintiff-Appellant, -v.- William J. Fisse, Laurie Ledford, Gilbert Sutcliff, Lawrence Phillips, Citibank, N.A., Citigroup Inc., Defendants-Appellees.**

04-3761

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

*2005 U.S. App. LEXIS 18628*

**August 29, 2005, Decided**

**NOTICE:** [*1] RULES OF THE SECOND CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the Eastern District of New York (Johnson, J.).

*Kendall v. Fisse, 2004 U.S. Dist. LEXIS 28505* (E.D.N.Y., May 25, 2004)

**COUNSEL:** FOR APPELLANT: Ruth M. Pollack, Pollack & Kotler, Mineola, NY.

FOR APPELLEES: Joseph Baumgarten, Proskauer Rose LLP, New York, NY.

**JUDGES:** PRESENT: HON. DENNIS JACOBS, HON. ROBERT A. KATZMANN, HON. PETER W. HALL, Circuit Judges.

**OPINION:**

### SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

Plaintiff-Appellant Jeffrey Kendall appeals from a judgment of the United States District Court for the Eastern District of New York (Johnson, J.), granting summary judgment in favor of Defendants-Appellees and denying Kendall's motion for sanctions. We assume that the parties are familiar with the facts, the procedural history, and the scope of the issues presented on appeal.

This Court reviews the district court's grant of summary judgment de novo. See *Young v. County of Fulton, 160 F.3d 899, 902 (2d Cir. 1998).* [*2]

The district court dismissed properly as time-barred Kendall's claim for employment discrimination pursuant to the Americans with Disabilities Act ("ADA"), *42 U.S.C. § 12101* et seq, as Kendall failed to file a claim with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discriminatory act, namely his termination, as required by the ADA. *Kendall v. Fisse, 2004 U.S. Dist. LEXIS 28505, No. 00-Civ-5154, 2004 WL 1196811,* at *1, *3 (E.D.N.Y. May 25, 2004). Kendall argues for the first time on appeal that the 300-day limitations period should be equitably tolled because of his alleged mental disability. Because Kendall failed to raise this argument before the district court, however, we do not consider it now. See *United States v. Angell, 292 F.3d 333, 337 (2d Cir. 2002).*

As to Kendall's claims for employment discrimination pursuant to New York State Human Rights Law ("NYSHRL"), N.Y. McKinney's Exec. Law § 290 et seq., and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, et seq., the district court held that Kendall's claim of unlawful termination was timely, but that the applicable three-year [*3] statute of limitations barred Kendall from complaining about conduct that preceded August 1997. *Kendall, 2004 U.S. Dist. LEXIS 28505, 2004 WL 1196811,* at *3-*4. Kendall argues, however, that because he was subjected to an "ongoing policy of discrimination," he should be permitted to bring suit based on the time-barred claims pursuant to the "continuing violation" exception set forth in *Berry v. Bd. of Supervisors of L.S.U., 715 F.2d 971, 981-982 (5th Cir. 1983).* Although the district court considered this argument (and rejected it), we need not as the Supreme Court has rejected the continuing (or serial) violation exception. *AMTRAK v. Morgan, 536 U.S. 101, 113-15, 153 L. Ed. 2d 106, 122 S. Ct.*



2005 U.S. App. LEXIS 18628, *

*2061 (2002)* (holding that because "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify," they are "not actionable if time barred, even when they are related to acts alleged in timely filed charges").

With respect to his remaining discrimination claims, Kendall has the burden to establish that: (1) Defendants-Appellees are subject to the NYSHRL and NYCHRL; (2) he was disabled within the meaning of those laws; (3) he was otherwise [*4] qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability. See *Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001)*. The only contested issue on appeal is whether Kendall was otherwise qualified to perform the essential functions of his job with or without reasonable accommodation. As the district court properly found, Kendall failed to present evidence that he was qualified; instead, the record indicates that Kendall stated in a benefits application submitted to the Social Security Administration ("SSA") that he was unable to work since November 1998, just after he received notice of his termination. *Kendall, 2004 U.S. Dist. LEXIS 28505, 2004 WL 1196811*, at \*5-\*6. The SSA declared Kendall permanently disabled on the basis of those statements. Based on this unexplained inconsis-

tency, we conclude that Kendall cannot meet his burden of proof on his discrimination claims. *Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806, 143 L. Ed. 2d 966, 119 S. Ct. 1597 (1999)*.

Kendall also alleges that Defendants-Appellees improperly terminated him to prevent him from [*5] receiving severance pay and benefits in violation of § 510 of the Employee Retirement Income Securities Act ("ERISA"), *29 U.S.C. § 1140*. Because Kendall conceded that he received severance benefits, and because Kendall failed to show that Defendants-Appellees had the specific intent to engage in conduct prohibited by ERISA, the district court properly dismissed this claim.

Finally, we conclude that the district court did not abuse its discretion, see *Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 333 (2d Cir. 1999)* ("We review all aspects of a District Court's decision to impose sanctions for abuse of discretion."), in declining to sanction Defendants-Appellees for allegedly "dishonest conduct," as Kendall failed to establish that he was prejudiced by Defendants-Appellees' conduct or that they acted in bad faith.

For the reasons set forth above, the judgment of the district court is hereby **AFFIRMED**.