UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CRAIG GOULET, | ) | Civil Action No. 04-12577 JLT |
| | ) | |
| Plaintiff, | ) | JUDGE TAURO |
| | ) | |
| vs. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **MOTION OF DEFENDANT NEW PENN** |
| NEW PENN MOTOR EXPRESS, INC., | ) | **MOTOR EXPRESS, INC. FOR** |
| et. al., | ) | **SUMMARY JUDGMENT** |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

Plaintiff Craig Goulet alleges a claim under §301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, alleging breach of a collective bargaining agreement against Defendant New Penn Motor Express, Inc. ("New Penn") and a breach of the duty of fair representation against Defendant Teamsters Local 25, International Brotherhood of Teamsters ("Local 25"). Specifically, Plaintiff claims that New Penn breached its contractual obligations, as set forth in the applicable collective bargaining agreement, by failing to include Plaintiff's name on a terminal seniority call list and by failing to offer him work subsequent to a plant closure. In the same vein, Plaintiff alleges that Local 25 breached its duty of fair representation by likewise failing to include his name on the subject seniority list and for failing to timely pursue his related grievance against New Penn.

Summary judgment in favor of New Penn is appropriate because there exist no issues of material fact in dispute that New Penn complied with the collective bargaining agreement. In addition, summary judgment is appropriate because Plaintiff was not physically able to work and, thus, Plaintiff's claim for back pay, reinstatement and front pay must fail as a matter of law.

Finally, any claim for damages should likewise be dismissed because it is undisputed that Plaintiff has made absolutely no attempt to mitigate his alleged damages.

Accordingly, and for the reasons more fully set forth below, summary judgment should be granted in favor of New Penn on Plaintiff's Complaint and New Penn should be dismissed from this action.

## STATEMENT OF THE FACTS

### Plaintiff's Employment at A.P.A. Transport Company

A.P.A. Transport Company ("A.P.A.") was a corporation engaged in the trucking business, with several terminals, including terminals located in Dracut and Canton Massachusetts.[1] On March 11, 1987, while he was employed by A.P.A.,[2] Plaintiff seriously injured himself at work while operating a fork lift.[3] A.P.A. subsequently investigated the incident and determined that the accident was caused by Plaintiff's own gross negligence.[4] A.P.A therefore terminated Plaintiff's employment.[5]

Defendant Teamsters Local 25 International Brotherhood of Teamsters ("Local 25") represented the drivers and dockworkers at A.P.A.'s Canton terminal for purposes of collective bargaining.[6] Pursuant to the applicable collective bargaining agreement, Plaintiff filed a grievance through Local 25 in connection with his termination.[7] Plaintiff's grievance was held in

---

[1] Deposition of George Francey at 14 (attached hereto as "Exhibit A").
[2] Deposition of Plaintiff at 10 (attached hereto as "Exhibit B").
[3] Id.
[4] See 10/16/01 Letter from A.P.A. to NEJAC, attached as Exhibit 14 to Local 25's responses to Plaintiff's First Request for Production of Documents (attached hereto as "Exhibit C").
[5] Id.; Deposition of Plaintiff at 14.
[6] See Deposition of Mark Harrington at 7-8 (attached hereto as "Exhibit D"); Deposition of Paul Dubiel at 11 (attached hereto as "Exhibit E").
[7] See 3/18/87 Letter from Local 25 to A.P.A., attached as Exhibit 10 to Local 25's Responses to Plaintiff's First Request for Production of Documents (attached hereto as "Exhibit F"); See also, Exhibit G, attached as Exhibit 11 to Local 25's Responses to Plaintiff's First Request for Production of Documents.

2

abeyance during his pursuit and receipt of workers' compensation benefits.[8]  In total, Plaintiff

collected the maximum of 600 weeks of partial disability workers' compensation benefits

between the years 1987 and 2000.[9]

In addition to receiving workers' compensation benefits, Plaintiff began receiving social

security disability benefits starting in 1995 (retroactive to 1987).[10]  Plaintiff continues to receive

these social security benefits:

> Q:    Are you currently receiving Social Security benefits?
>
> A:    Yes, I am.
>
> Q:    Now when you received the Social Security benefits in 1995, did it go retroactive?
>
> A:    Yes.
>
> Q:    To what period?
>
> A:    March 11th, 1987.
>
> Q:    What is your monthly benefit on your Social Security currently?
>
> A:    $2,160.00
>
> Q:    And has that remained the same or has that gone up?
>
> A:    It goes up every year.[11]

*        *        *

Fourteen years after his termination from A.P.A., and after the exhaustion of his workers'

compensation benefits, Plaintiff pursued his grievance against A.P.A.[12] Ultimately, on October

16, 2001, the New England Joint Area Grievance Committee ordered that Plaintiff, as a

---

[8] Deposition of Plaintiff at 16.
[9] *See* Deposition of Plaintiff at 15-16; *See also* 10/16/01 Point of Order from A.P.A., attached as Exhibit 12 to Local 25's responses to Plaintiff's First Request for Production of Documents (attached hereto as "Exhibit H").
[10] Deposition of Plaintiff at 75.
[11] *Id.*
[12] *Id.* at 15-16; Deposition of Harrington at 10-11.

prerequisite to his reinstatement onto A.P.A.'s seniority list, provide A.P.A. with documentation establishing his physical ability to return to unrestricted duties and submit to a ten-day suspension.[13] Plaintiff failed to produce the necessary documentation and, as a result, was never reinstated.[14]   Indeed, as of the date of this filing, Plaintiff has not submitted the necessary documentation.

### New Penn and The Applicable Collective Bargaining Agreement

New Penn is a corporation engaged in the trucking business throughout the northeast. One of its terminals is located in Billerica, Massachusetts.[15]   Local 25 represents the New Penn drivers and dockworkers at its Billerica terminal.[16]  In February, 2002, A.P.A. ceased operations.[17]

As a result of A.P.A's closure, New Penn hoped to increase its market share by servicing A.P.A's customers.[18]   Consequently, New Penn negotiated an agreement with The Teamsters National Freight Industry Negotiating Committee ("TNFINC") regarding the potential hiring of A.P.A. employees.[19]

In order to receive work opportunities from New Penn, Local 25 was required to provide New Penn with a list identifying by name all of the A.P.A. employees who wanted to be placed on New Penn's call list, along with their terminal preferences.[20]  Under the express terms of the

---

[13] *See* New England Joint Area Grievance Committee Decision Form, attached as Exhibit 15 to Local 25's responses to Plaintiff's First Request for Production of Documents and as Exhibit 1 to Plaintiff's deposition (attached hereto as "Exhibit I").
[14] *See, e.g.,* Deposition of Plaintiff at 26; Deposition of Mark Harrington at 29-30; 57.
[15] Plaintiff's Complaint at para. 3; Defendant's Answer at para. 3.
[16] *See* Deposition of Harrington at 9-10; Deposition of William Carnes at 9-10; Deposition of Paul Dubiel at 6.
[17] Deposition of Francey at 7.
[18] *See* 2/13/02 Agreement between the TNFINC and New Penn (hereinafter "collective bargaining agreement") at paras. 1-2, marked as Exhibit 2 to deposition of Harrington (attached hereto as "Exhibit J").
[19] *See* collective bargaining agreement.
[20] *See, e.g.,* Deposition of William Carnes at 50 (attached hereto as "Exhibit K"). Mr. Carnes, the Teamsters Local 25 business agent for A.P.A. during the relevant time period, acknowledged that the union was obligated under the collective bargaining agreement to provide A.P.A. with the names of all A.P.A. employees who wanted to be included on the call list. *See also*, collective bargaining agreement at p. 2, para. 8c.

agreement, Local 25 was obligated to provide New Penn with this list no later than March 1, 2002.[21]  If an A.P.A. employee worked 30 days in a two-month period from March 1, 2002 through March 30, 2003, that employee would receive seniority at New Penn.[22]  New Penn's obligation to provide the above employees with work expired after March 31, 2003.[23]

Under the express terms of the collective bargaining agreement, New Penn was not obligated to place any APA employee on the terminal call list or to provide any APA employee with work unless he or she placed his name on the seniority call list by March 1, 2002:

> No APA NMFA[24] employee shall be required to place his/her name on any NPME[25] terminal call list.  **NPME shall have no obligation to any APA NMFA employee who chooses to not place his/her name on a NPME terminal call list by March 1, 2002.  Additionally, NPME shall have no obligation to APA NMFA employees until TNFINC[26] provides the APA NMFA terminal selection call lists in accordance with this Agreement.**[27]

*     *     *

Local 25 provided New Penn with the required terminal call list by March 1, 2002. Plaintiff's name, however, was not on it.[28]  Consequently, under the express language of the collective bargaining agreement, New Penn was not obligated to and never did offer Plaintiff work. Nevertheless, on April 7, 2003, Plaintiff filed a grievance against New Penn.[29]  The grievance was subsequently denied because it had been untimely filed.[30]

---

[21] *See* collective bargaining agreement at p.2, para. 8c.a.
[22] *Id.* at p.3, para. g.
[23] *Id.* at para. h.
[24] "NMFA" is the acronym for National Master Freight Agreement.
[25] "NPME" is the acronym for "New Penn Motor Express."
[26] "TNFINC" is the acronym for "Teamsters National Freight Industry Negotiating Committee."
[27] *See* collective bargaining agreement, p.2, paragraph 8c.
[28] *See* 2/28/02 letter from Local 25 to New Penn, marked as Exhibit 6 to Harrington Deposition (attached hereto as "Exhibit L"); *See also,* Deposition of Harrington at 68.
[29] *See* 4/7/03 Grievance Report, marked as "Exhibit 2" to Plaintiff's deposition (attached hereto as "Exhibit M"); *See also,* 4/18/03 Letter from Local 25 to A.P.A (attached hereto as "Exhibit N").
[30] *See* 7/28/04 Decision, attached hereto as "Exhibit O."

Despite the clear language establishing the contrary, Plaintiff now claims that New Penn somehow breached the collective bargaining agreement by failing to include his name on the terminal call list and to offer him work subsequent to the closing of A.P.A.[31]

### Plaintiff's Physically Inability to Work

While Plaintiff's claim for damages is dependent upon proof that he was physically able to work during the relevant time period, Plaintiff admitted in his deposition that he continues to be plagued by the following physical injuries, which significantly limit his ability to function and to work, and which necessarily undercuts his damages claim:

Q:    The question still remains, since March 1st, 2002 until the present, ***do you have any restrictions that effects [sic] your ability to work?***

A:    Yes.

Q:    What are those restrictions?

A:    I have a herniated disc in my lower back.

Q:    Still?

A:    Still.

Q:    Any other restrictions?

A:    A herniated disc in my neck.

Q:    Still?

A:    Still.

Q:    Any other restrictions?

A:    And the ligament in my knee.

Q:    Now your herniated disc in your lower back, does that effect [sic] your ability to sit?

A:    On occasion, yes.

---

[31] *See* Plaintiff's Complaint at paras. 14, 19, 21-22.

Q:    Does that effect [sic] your ability to stand?

A:    Yes.

Q:    Does that effect [sic] your ability to lift?

A:    Yes.

Q:    Does it effect [sic] your ability to turn?

A:    Yes.

Q:    Does it effect [sic] your ability to bend?

A:    Yes.

Q:    All in negative ways?

A:    Yes.[32]

\*        \*        \*

In addition to the above, Plaintiff suffered a knee injury, which makes it "tough to get around some days."[33]  Plaintiff is awaiting surgical reconstruction of his knee.[34]

When questioned about whether he would even be physically *able* to perform dock work at the present time in light of his significant functional limitations, Plaintiff admitted the following:

Q:    With your limitations, could you currently do dock work?

A:    I could try.

Q:    That is not the question.  Do you know if you could currently do dock work with your limitations?

A:    I do not know.

Q:    With your limitations, do you know if you could currently do driving work?

---

[32] Deposition of Plaintiff at 71-72.
[33] *Id.* at 74.
[34] *Id.* at 70-71.

A:    I do not know.[35]

                                 *       *       *

Plaintiff further admitted his inability to prove that he would have been physically *able* to perform dock work as of the March 1, 2002 the deadline for Local 25's submission of the A.P.A. seniority list. Specifically, when asked whether he would have been able to work for the required 30 day period between March 1, 2002 and March 30, 2003 in order to obtain seniority at New Penn, Plaintiff testified as follows:

> Q:    Between March 1, 2002 and March 30, 2003, do you know if you could have worked 30 days at New Penn?
>
> A:    *Nope*.
>
> Q:    Let me rephrase that question. Between March 1, 2002 and March 30, 2003, do you know if you could have worked 30 days in a two month period at New Penn?
>
> A:    *No*.[36]

                                 *       *       *

Moreover, Plaintiff never provided A.P.A. with the required medical documentation establishing that he could return to work without restriction and Plaintiff never served the mandatory ten-day suspension, both of which were conditions precedent to his reinstatement onto A.P.A.'s seniority list. [37]

Finally, as demonstrated below, Plaintiff has continuously represented himself to be *totally disabled* and, thus, unable to work.[38] Plaintiff's receipt of social security disability

---

[35] *Id.*
[36] *Id.* at 80 (emphasis added).
[37] *Id.* at 26; Deposition of Mark Harrington at 57.
[38] Deposition of Plaintiff at 75.

benefits since 1995, retroactive to 1987 – and his appeal of his partial disability workers' compensation award – was predicated upon that very representation:

> Q:  You testified that you appealed your award of partial disability, is that correct?
>
> A:  Yes.
>
> Q:  Why did you appeal it?
>
> A:  Why did I appeal it?
>
> Q:  Is it because you thought you should have gotten total disability?
>
> A:  Yes.
>
> Q:  *Do you still believe you should have gotten total disability*?
>
> A:  *Yes*.
>
> Q:  *Do you believe that you are currently totally disabled*?
>
> A:  *Yes*.[39]

\*      \*      \*

Thus, the uncontraverted testimony establishes that, even if Plaintiff had been placed on A.P.A.'s seniority list, he would have been physically unable to perform dock work during the relevant time period – a critical fact which is fatal to his damages claim.

### Plaintiff's Utter And Unexplained Failure to Mitigate His Alleged Damages

Despite Plaintiff's clear duty to mitigate his alleged damages, Plaintiff unapologetically admitted in his deposition that he has made no effort whatsoever since *1987* to seek alternative employment.[40]  His dilatory tactics are illustrated by the following testimony:

> Q:  While you were receiving partial Worker's Compensation benefits, did you hold any other employment?

---

[39] *Id.* at 74-75 (emphasis added).
[40] *Id.* at 17.

A:    No.

Q:    Did you look for additional employment between March 11, 1987 and October of 2001 [the date that his grievance was heard]?

A:    No.[41]

\*       \*       \*

Q:    I believe I understood your testimony that *since your accident at APA until March 1st, 2002* you had not worked, is that correct?

A:    Yes.

Q:    Since March 1st, 2002 to the present have you been employed?

A:    No.

Q:    Since March 1st, 2002 until the present, have you been offered employment by any employer?

A:    No.

Q:    Since March 1st, 2002 until the present, have you been offered employment by any employer?

A:    No.

Q:    Since March 1st, 2002 until the present, have you had any interviews for employment?

A:    No.

Q:    Since March 1st, 2002 until the present, have you filed any applications for employment?

A:    No.

Q:    Since March 1st, 2002 until the present, have you sent out any resumes?

A:    No.

Q:    Since March 1st, 2002 until the present, have you contacted any employment counselors?

---

[41] *Id.*

A:     Nope.

Q:     Since March 1st, 2002 until the present, have you gone to the library or purchased any books in terms of how one goes about finding employment?

A:     No.

Q:     Since March 1st, 2002 until the present, have you gotten on the computer to look for employment?

A:     No.

Q:     Since March 1st, 2002 until the present, have you made any efforts to find employment?

A:     No.

\*          \*          \*

Q:     Okay.  Have you talked to anybody at New Penn since March 1st, 2002?

A:     No.

Q:     Have you called up New Penn and asked if you are going to be called?

A:     No.

Q:     Have you ever filled out an application at New Penn?

A:     Nope.[42]

\*          \*          \*

In short, the record evidence establishes as a matter of law that Plaintiff is unable to substantiate his claims for breach of the collective bargaining agreement by New Penn and/or that he suffered any damages resulting from the supposed breach.  Accordingly, summary judgment should be entered in New Penn's favor on Plaintiff's hybrid §301 action.

---

[42] *Id.* at 69-71; 78 (emphasis added).

**LAW AND ARGUMENT**

A.   **Summary Judgment Should Be Granted On Plaintiff's Hybrid §301 Claim Because, Under The Express Terms Of The Collective Bargaining Agreement,  Plaintiff Is Unable To Prove Any Breach By New Penn.**

Plaintiff's claims against New Penn and Local 25 are premised upon §301 of the Labor Management Relations Act, 29 U.S.C. §185.  In order to prevail on such a "hybrid §301 claim," "an employee must show *both* that the employer breached the collective bargaining agreement, *and* that the union breached its duty of fair representation." *Ely v. Newell-Rubbermaid, Inc.*, 50 Fed. Appx. 681, 686 (6th Cir. 2002) (summary judgment affirmed on hybrid §301 action because of plaintiff's failure to establish breach of a collective bargaining agreement and duty of fair representation).   Thus, "a plaintiff's failure to establish *either* the breach of the collective bargaining agreement *or* the breach of the duty of fair representation *dooms the cause of action in its entirety*." *Id.* at 686 (emphasis added); *see also, Laurin v. The Providence Hosp.*, 150 F.3d 52, 57 (1st Cir. 1998) (plaintiff's failure to prove breach of the collective bargaining agreement by her employer was "fatal" to her hybrid §301 claim); *Baize v. Phillip Morris, Inc.*, 120 Fed. Appx. 576, 579 (6th Cir. 2004) (summary judgment on plaintiffs' hybrid §301 claim affirmed for plaintiffs' failure to prove breach of contract by the employer); *Heffron v. Adamar of N.J., Inc.*, 270 F.Supp.2d 562 (D.C. N.J. 2003) (summary judgment granted on plaintiff's hybrid §301 action because of plaintiff's failure to prove breach of collective bargaining agreement), *citing Adcox*, 21 F.3d at 1386, *supra*; *Cromer v. Amerisource Corp.*, No. 98-4441, 2000 U.S. App. Lexis 644 *10-*11 (6th Cir. 2000)(attached hereto as "Exhibit P"); *Stevenson v. Nabisco Brands, Inc.*, 757 F. Supp. 1026, 1029 (E. Dist. Mo. 1991).

It is well-settled that traditional rules of contract interpretation apply to collective bargaining agreements. *Heffron, supra*, 270 F. Supp.2d at 570.  Where, as here, the "contract

language is clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning." *Williams v. Chrysler Corp.*, 991 F. Supp. 383 (D.C. De. 1998). The "existence or absence of ambiguity is itself a 'threshold' question of law for the court to decide." *Heffron, supra*, 270 F. Supp.2d at 570.

The burden of proving that New Penn's actions "constituted a breach of its contractual obligations under the collective bargaining agreement rests squarely with the Plaintiff." *Id.* at 575.   In order to survive on summary judgment, Plaintiff must therefore present "concrete evidence" of a breach by New Penn. *Id.* If Plaintiff "'fails to provide such evidence, then he is not entitled to a trial and [New Penn] is entitled to summary judgment as a matter of law.'" *Id.*

In this case, Plaintiff simply cannot satisfy his requisite burden of proof. Plaintiff's claim against New Penn rests entirely upon the flawed assertion that New Penn was required to place Plaintiff's name on the terminal seniority call list and to offer him work subsequent to A.P.A.'s closing. The clear and unambiguous language of the collective bargaining agreement, however, establishes as a matter of law that New Penn had no such duty. On the contrary, as demonstrated below, it was *Local 25's* responsibility under the agreement to provide New Penn with a seniority list by March 1, 2002, identifying all A.P.A. employees who wanted to be contacted by New Penn for work:

> No APA NMFA employee shall be required to place his/her name on any NPME terminal call list. **NPME shall have no obligation to any APA NMFA employee who chooses to not place his/her name on a NPME terminal call list by March 1, 2002. Additionally, NPME shall have no obligation to APA NMFA employees until TNFINC provides the APA NMFA terminal selection call lists in accordance with this Agreement.**[43]

*     *     *

---

[43]*See* collective bargaining agreement at p.2, para. 8c (emphasis added); Deposition of William Carnes at 50. Mr. Carnes, the Teamsters Local 25 business agent for A.P.A. during the relevant time period, acknowledged that the union was obligated under the collective bargaining agreement to provide A.P.A. with the names of all A.P.A. employees who wanted to be included on the call list.

It is undisputed that Local 25 provided New Penn with a terminal call list by the March 1, 2002 deadline. It is further undisputed that Plaintiff's name was not included on that list.[44] Therefore, under the express terms of the collective bargaining agreement, New Penn was not obligated to– and did not -- offer Plaintiff work subsequent to A.P.A.'s closing. Because Plaintiff cannot prove any breach of the collective bargaining agreement by New Penn, his hybrid §301 claim is "doomed" in its entirety and New Penn should be dismissed from this action on summary judgment. *See, e.g., Ely, supra*, 50 Fed. Appx. at 686.

**B.    Summary Judgment Should Be Granted On Plaintiff's Damages Claim Because Plaintiff Is Unable To Prove As A Matter Of Law That He Was Physically Able To Work During The Relevant Time Period.**

In this case, Plaintiff is seeking employment from New Penn and award of back pay as a remedy for New Penn's alleged breach of the collective bargaining agreement. Assuming, *arguendo*, that New Penn did somehow breach the terms of the collective bargaining agreement, Plaintiff's claim for resulting damages must nevertheless fail as a matter of law. Plaintiff cannot establish that he was even physically *able* to work during the relevant time period, which summarily defeats any claim for back pay, reinstatement and/or front pay. *Acevedo v. Coatings Inc.*, 286 F. Supp.2d 107 (Dist. P.R. 2003)(discussion, *infra*).

By Plaintiff's own admission, Plaintiff cannot demonstrate that he was ever able to perform dock work in light of his severe physical limitations.[45] Plaintiff admitted at his deposition that he considers himself to be totally disabled and, thus unable to work.[46] In fact, Plaintiff has applied for and has been granted social security disability benefits since 1995 (retroactive to 1987). In his application for social security disability benefits, Plaintiff must have

---

[44] *See,* Exhibit L; *See also,* Deposition of Harrington at 68.
[45] Deposition of Plaintiff at 74.
[46] Deposition of Plaintiff at 75.

represented to the Social Security Administration that he was unable to work.[47] His continuing

receipt of social security disability benefits is predicated upon Plaintiff's representation that he is

totally disabled and the presumed truth of that representation. The inherent inconsistency

between Plaintiff's claim for and receipt of disability benefits (on the basis that he is *unable* to

work) and his claim for back pay, reinstatement and front pay (which is dependent upon his

*ability* to work) is both conspicuous and self-defeating.

The Social Security Administration provides benefits only to those individuals whose

disabilities are so severe that they are "unable to do their previous work" and "cannot . . . engage

in any other kind of substantial gainful work which exists in the national economy." *Cleveland*

*v. Policy Mgt. Sys. Corp.*, 526 U.S. 795, 797 (1999), *citing* 42 U.S.C. §423(d)(2)(A). Thus, to

survive summary judgment, Plaintiff must sufficiently explain the inconsistency between the

statements made in connection with his application and receipt of social security disability

benefits and his alleged entitlement to damages.  Put differently, if Plaintiff is unable to

sufficiently reconcile his social security disability status with his claim for back pay, front pay

and reinstatement, his damages claim must fail as a matter of law. *See, e.g., Cleveland*, 526 U.S.

795 (1999) (holding that, absent sufficient explanation, a plaintiff's statement of total disability in

her social security disability application estops her from asserting that she can perform her job

with reasonable accommodation in a claim brought under the Americans with Disabilities Act);

*Acevedo v. Coatings Inc.*, 286 F.Supp.2d 107 (D.C. Puerto Rico, 2003)( following a jury verdict

in plaintiff's favor, court held that plaintiff was not entitled to back pay, front pay or

reinstatement because her Age Discrimination in Employment Act claim was inconsistent with

her application for and receipt of social security disability benefits); *Kelly v. Lockheed Martin*

---

[47] New Penn is still awaiting a copy of Plaintiff's social security disability file, which was the subject of a Motion to Compel.

15

*Services*, 198 F.Supp.2d 136 (D.C. Puerto Rico, 2003); *Barry v. Wing Mem. Hosp.*, 142 F. Supp.2d 161 (D.C. Mass. 2001) (summary judgment granted on plaintiff's handicap discrimination claim where the record evidence, including plaintiff's testimony and her application for social security disability and workers' compensation benefits, indicated that she had been disabled without interruption and unable to return to work); *Disanto v.McGraw Hill, Inc.*, 220 F.3d 61 (2nd Cir. 2000); *Kendall v. Fisse*, No. 04-3761, 2005 U.S. App. Lexis 18628 (2nd Cir. 2005) (attached hereto as "Exhibit Q") (summary judgment affirmed due to the "unexplained inconsistency" between plaintiff's disability discrimination claim and his social security benefits application and resulting status as "permanently disabled").

In *Acevedo, supra*, the court held that the plaintiff was not entitled to an award of back pay, front pay or reinstatement as a matter of law because she failed to sufficiently explain the inconsistency between her representation to the Social Security Administration that she was totally disabled and her allegation that she was able to work for purposes of her age and retaliation claims.    In that case, plaintiff Acevedo represented to the Social Security Administration that she was totally disabled to work during the relevant time period.    The court held that her social security application "logically suggest[ed] that Acevedo was totally disabled to work and had no intention of returning to the workforce." *Acevedo*, 286 F.Supp.2d at 116. Similar to the Plaintiff herein, "Acevedo never sought alternate employment nor took steps that would have enabled her to go back to work."    *Id.*    In other words, "Acevedo voluntarily took herself out of the job market." *Id.*

The *Acevedo* court ultimately held that back pay, front pay and reinstatement are not awardable where, as here, the plaintiff receives "benefits for a disability that allegedly precluded her from engaging in gainful employment and [she] has not otherwise submitted evidence to

16

prove that she is fit to go back to work." *Id.* at 117.   Indeed, the court held that it "would be inconsistent for an ADEA plaintiff to allege a total disability that precludes him from working, take no efforts to seek employment and then seek back pay and reinstatement." *Id.*

In this case, Plaintiff is likewise unable to sufficiently explain the glaring inconsistency between his application for and receipt of social security disability benefits and his alleged entitlement to back pay, reinstatement and/or front pay.   Plaintiff is admittedly unable to prove that he would have been physically able to perform dock work during the relevant time period. Thus, even if New Penn had somehow breached the terms of the collective bargaining agreement, Plaintiff would nevertheless be unable to establish any damages flowing from that breach.  His claimed entitlement to lost wages and reinstatement should therefore be barred as a matter of law.

**C.**      **Summary Judgment Should Be Granted On Plaintiff's Claims For Damages As A Result Of Plaintiff's Total And Inexcusable Failure To Mitigate.**

Summary judgment should be granted in favor of New Penn on the additional basis that Plaintiff has failed to make any effort whatsoever to mitigate his alleged damages.   It is axiomatic that an employee claiming an entitlement to back pay is "required to make reasonable efforts to mitigate." *Aguinaga v. United Food and Commercial Workers Int'l Union*, 993 F.2d 1463 (10th Cir. 1993).  An award of back pay, reinstatement and front pay is improper where, as here, the plaintiff has made no effort to secure alternative employment. *Acevedo, supra.*  In this case, Plaintiff unabashedly admitted that he has not worked since his injury in 1987 and has made no effort since then to seek alternative employment.[48]   Instead, he has chosen to sit completely idle for the past *eighteen years*, collecting workers' compensation and social security benefits.  In so doing, Plaintiff has effectively removed himself from the job market. *Acevedo,*

---

[48] Deposition of Plaintiff at 17; 69-71; 78.

*supra.* Thus, even assuming that Plaintiff's claim against New Penn for breach of the collective bargaining agreement was somehow cognizable, his dilatory conduct nevertheless bars him from recovering a windfall at the expense of New Penn.

## CONCLUSION

As demonstrated above, Plaintiff is unable to prove that New Penn breached the terms of the applicable bargaining agreement, which dooms his entire hybrid §301 action as a matter of law. Even if that were not the case, Plaintiff is unable to prove that he was even physically able to work during the relevant time period, which is fatal to his claim for resulting damages. Finally, Plaintiff's sworn testimony establishes as a matter of law that he failed to make any effort to seek alternative employment, which likewise bars his claim for damages. Accordingly, New Penn respectfully moves this Court for summary judgment on Plaintiff's Complaint and for an order dismissing it from this action.

Respectfully submitted,

/s/ Carl H. Gluek
T. Merritt Bumpass, Jr. (Ohio Bar # 0015189)
mbumpass@frantzward.com
Carl H. Gluek (Ohio Bar #0029531)
cgluek@frantzward.com
FRANTZ WARD LLP
2500 Key Center
127 Public Square
Cleveland, Ohio 44114-1230
(216) 515-1660
(216) 515-1650 (facsimile)

and

Nicholas A. Klinefeldt (BBO # 647422)
nklinefeldt@klhboston.com
KELLY, LIBBY & HOOPES, P.C.
175 Federal Street
Boston, Massachusetts 02110
(617) 338-9300
(617) 338-9911 (facsimile)

Attorneys for Defendant New Penn Motor
Express, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Memorandum in Support of Motion of Defendant

New Penn Motor Express, Inc. for Summary Judgment was served upon Scott A. Lathrop, Esq.

of Scott A. Lathrop & Associates, Attorney for Plaintiff, 122 Old Ayer Road, Groton, MA 01450

and Kathleen Pennini, Esq. of Dwyer, Duddy, Facklam, Attorney for Teamsters Local 25, One

Center Plaza, Suite 360, Boston, MA  02108, via electronic filing and ordinary U.S. mail,

postage prepaid, this 13th day of January, 2006.

/s/ Carl H. Gluek
Carl H. Gluek, Esq.