UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CRAIG GOULET, | ) | Civil Action No. 04-12577 JLT |
| | ) | |
| Plaintiff, | ) | JUDGE TAURO |
| | ) | |
| vs. | ) | **CONCISE STATEMENT OF** |
| | ) | **MATERIAL FACTS IN SUPPORT OF** |
| NEW PENN MOTOR EXPRESS, INC., | ) | **MOTION OF DEFENDANT NEW PENN** |
| *et. al.,* | ) | **MOTOR EXPRESS, INC. FOR** |
| | ) | **SUMMARY JUDGMENT** |
| Defendants. | ) | |

Pursuant to Local Rule 56.1 of the United States District Court for the District of Massachusetts, Defendant New Penn Motor Express, Inc. ("New Penn") hereby submits the following Concise Statement of Material Facts in support of its Motion for Summary Judgment.

## STATEMENT OF THE FACTS

### Plaintiff's Employment at A.P.A. Transport Company

1.     A.P.A. Transport Company ("A.P.A.") was a corporation engaged in the trucking business, with several terminals, including terminals located in Dracut and Canton Massachusetts.[1]

2.     On March 11, 1987, while he was employed by A.P.A.,[2] Plaintiff seriously injured himself at work while operating a fork lift.[3]

3.     A.P.A. subsequently investigated the incident and determined that the accident was caused by Plaintiff's own gross negligence.[4]   A.P.A therefore terminated Plaintiff's employment.[5]

---

[1] Deposition of George Francey at 14 (attached hereto as "Exhibit A").
[2] Deposition of Plaintiff at 10 (attached hereto as "Exhibit B")(A complete copy of Plaintiff's deposition transcript is being separately filed with the Court).
[3] *Id.*

4.     Defendant Teamsters Local 25 International Brotherhood of Teamsters ("Local 25") represented the drivers and dockworkers at A.P.A.'s Canton terminal for purposes of collective bargaining.[6]

5.     Pursuant to the applicable collective bargaining agreement, Plaintiff filed a grievance through Local 25 in connection with his termination.[7] Plaintiff's grievance was held in abeyance during his pursuit and receipt of workers' compensation benefits.[8]

6.     In total, Plaintiff collected the maximum of 600 weeks of partial disability workers' compensation benefits between the years 1987 and 2000.[9]

7.     In addition to receiving workers' compensation benefits, Plaintiff began receiving social security disability benefits starting in 1995 (retroactive to 1987).[10]

8.     Plaintiff continues to receive these social security benefits:

Q:     Are you currently receiving Social Security benefits?

A:     Yes, I am.

Q:     Now when you received the Social Security benefits in 1995, did it go retroactive?

A:     Yes.

Q:     To what period?

A:     March 11th, 1987.

---

[4]*See* 10/16/01 Letter from A.P.A. to NEJAC, attached as Exhibit 14 to Local 25's responses to Plaintiff's First Request for Production of Documents (attached hereto as "Exhibit C").

[5]  *Id.*; Deposition of Plaintiff at 14.

[6] *See* Deposition of Mark Harrington at 7-8 (attached hereto as "Exhibit D"); Deposition of Paul Dubiel at 11 (attached hereto as "Exhibit E").

[7] *See* 3/18/87 Letter from Local 25 to A.P.A., attached as Exhibit 10 to Local 25's Responses to Plaintiff's First Request for Production of Documents (attached hereto as "Exhibit F"); *See also*, Exhibit G, attached as Exhibit 11 to Local 25's Responses to Plaintiff's First Request for Production of Documents.

[8] Deposition of Plaintiff at 16.

[9] *See* Deposition of Plaintiff at 15-16; *See also* 10/16/01 Point of Order from A.P.A., attached as Exhibit 12 to Local 25's responses to Plaintiff's First Request for Production of Documents (attached hereto as "Exhibit H").

[10] *See* Deposition of Plaintiff at 75.

Q:      What is your monthly benefit on your Social Security currently?

A:      $2,160.00

Q:      And has that remained the same or has that gone up?

A:      It goes up every year.[11]

\*      \*      \*

9.      Fourteen years after his termination from A.P.A., and after the exhaustion of his workers' compensation benefits, Plaintiff pursued his grievance against A.P.A.[12] Ultimately, on October 16, 2001, the New England Joint Area Grievance Committee ordered that Plaintiff, as a prerequisite to his reinstatement onto A.P.A.'s seniority list, provide A.P.A. with documentation establishing his physical ability to return to unrestricted duties and submit to a ten-day suspension.[13]

10.     Plaintiff failed to produce the necessary documentation and, as a result, was never reinstated.[14]  Indeed, as of the date of this filing, Plaintiff has not submitted the necessary documentation.

### New Penn and The Applicable Collective Bargaining Agreement

11.     New Penn is a corporation engaged in the trucking business throughout the northeast. One of its terminals is located in Billerica, Massachusetts.[15]  Local 25 represents the New Penn drivers and dockworkers at its Billerica terminal.[16]

12.     In February, 2002, A.P.A. ceased operations.[17]

---

[11] Plaintiff's deposition at 75.
[12] *Id.* at 15-16; Deposition of Harrington at 10-11.
[13] *See* New England Joint Area Grievance Committee Decision Form, attached as Exhibit 15 to Local 25's responses to Plaintiff's First Request for Production of Documents and as Exhibit 1 to Plaintiff's deposition (attached hereto as "Exhibit I").
[14] *See, e.g.,* Deposition of Plaintiff at 26; Deposition of Mark Harrington at 29-30; 57.
[15] Plaintiff's Complaint at para. 3; Defendant's Answer at para. 3.
[16] *See* Deposition of Harrington at 9-10; Deposition of William Carnes at 9-10; Deposition of Paul Dubiel at 6.
[17] Deposition of Francey at 7.

3

13.    As a result of A.P.A's closure, New Penn hoped to increase its market share by servicing A.P.A's customers.[18]    Consequently, New Penn negotiated an agreement with The Teamsters National Freight Industry Negotiating Committee ("TNFINC") regarding the potential hiring of A.P.A. employees.[19]

14.    In order to receive work opportunities from New Penn, Local 25 was required to provide New Penn with a list identifying by name all of the A.P.A. employees who wanted to be placed on New Penn's call list, along with their terminal preferences.[20]  Under the express terms of the agreement, Local 25 was obligated to provide New Penn with this list no later than March 1, 2002.[21]  If an A.P.A. employee worked 30 days in a two-month period from March 1, 2002 through March 30, 2003, that employee would receive seniority at New Penn.[22]  New Penn's obligation to provide the above employees with work expired after March 31, 2003.[23]

15.    Under the express terms of the collective bargaining agreement, New Penn was not obligated to place any APA employee on the terminal call list or to provide any APA employee with work unless he or she placed his name on the seniority call list by March 1, 2002:

---

[18] *See* 2/13/02 Agreement between the TNFINC and New Penn (hereinafter "collective bargaining agreement") at paras. 1-2, marked as Exhibit 2 to deposition of Harrington (attached hereto as "Exhibit J")
[19] *See* collective bargaining agreement.
[20] *See, e.g.*, Deposition of William Carnes at 50 (attached hereto as "Exhibit K"). Mr. Carnes, the Teamsters Local 25 business agent for A.P.A. during the relevant time period, acknowledged that the union was obligated under the collective bargaining agreement to provide A.P.A. with the names of all A.P.A. employees who wanted to be included on the call list. *See also*, collective bargaining agreement at p. 2, para. 8c.
[21] *See* collective bargaining agreement at p.2, para. 8c.a
[22] *Id.* at p.3, para. g.
[23] *Id.* at para. h.

4

No APA NMFA[24] employee shall be required to place his/her name on any NPME[25] terminal call list. **NPME shall have no obligation to any APA NMFA employee who chooses to not place his/her name on a NPME terminal call list by March 1, 2002. Additionally, NPME shall have no obligation to APA NMFA employees until TNFINC[26] provides the APA NMFA terminal selection call lists in accordance with this Agreement.[27]**

\*     \*     \*

16.    Local 25 provided New Penn with the required terminal call list by March 1, 2002. Plaintiff's name, however, was not on it.[28] Consequently, under the express language of the collective bargaining agreement, New Penn was not obligated to and never did offer Plaintiff work.

17.    Nevertheless, on April 7, 2003, Plaintiff filed a grievance against New Penn.[29] The grievance was subsequently denied because it had been untimely filed.[30]

19.    Despite the clear language establishing the contrary, Plaintiff now claims that New Penn somehow breached the collective bargaining agreement by failing to include his name on the terminal call list and to offer him work subsequent to the closing of A.P.A.[31]

### Plaintiff's Physically Inability to Work

20.    While Plaintiff's claim for damages is dependent upon proof that he was physically able to work during the relevant time period, Plaintiff admitted in his deposition that he continues to be plagued by the following physical injuries, which significantly limit his ability to function and to work, and which necessarily undercuts his damages claim:

---

[24] "NMFA" is the acronym for National Master Freight Agreement.
[25] "NPME" is the acronym for "New Penn Motor Express."
[26] "TNFINC" is the acronym for "Teamsters National Freight Industry Negotiating Committee."
[27] *See* collective bargaining agreement, p.2, paragraph 8c.
[28] *See* 2/28/02 letter from Local 25 to New Penn, marked as Exhibit 6 to Harrington Deposition (attached hereto as "Exhibit L"); *See also,* Deposition of Harrington at 68.
[29] *See* 4/7/03 Grievance Report, marked as "Exhibit 2" to Plaintiff's deposition (attached hereto as "Exhibit M"); *See also,* 4/18/03 Letter from Local 25 to A.P.A (attached hereto as "Exhibit N").
[30] *See* 7/28/04 Decision, attached hereto as "Exhibit O."
[31] *See* Plaintiff's Complaint at paras. 14, 19, 21-22.

Q:    The question still remains, since March 1st, 2002 until the present, *do you have any restrictions that effects [sic] your ability to work?*

A:    Yes.

Q:    What are those restrictions?

A:    I have a herniated disc in my lower back.

Q:    Still?

A:    Still.

Q:    Any other restrictions?

A:    A herniated disc in my neck.

Q:    Still?

A:    Still.

Q:    Any other restrictions?

A:    And the ligament in my knee.

Q:    Now your herniated disc in your lower back, does that effect [sic] your ability to sit?

A:    On occasion, yes.

Q:    Does that effect [sic] your ability to stand?

A:    Yes.

Q:    Does that effect [sic] your ability to lift?

A:    Yes.

Q:    Does it effect [sic] your ability to turn?

A:    Yes.

Q:    Does it effect [sic] your ability to bend?

A:    Yes.

Q:    All in negative ways?

A:    Yes.[32]

\*       \*       \*

21.    In addition to the above, Plaintiff suffered a knee injury, which makes it "tough to get around some days."[33]    Plaintiff is awaiting surgical reconstruction of his knee.[34]

22.    When questioned about whether he would even be physically *able* to perform dock work at the present time in light of his significant functional limitations, Plaintiff admitted the following:

Q:    With your limitations, could you currently do dock work?

A:    I could try.

Q:    That is not the question.  Do you know if you could currently do dock work with your limitations?

A:    I do not know.

Q:    With your limitations, do you know if you could currently do driving work?

A:    I do not know.[35]

\*       \*       \*

23.    Plaintiff further admitted his inability to prove that he would have been physically *able* to perform dock work as of the March 1, 2002 the deadline for Local 25's submission of the A.P.A. seniority list.  Specifically, when asked whether he would have been able to work for the required 30 day period between March 1, 2002 and March 30, 2003 in order to obtain seniority at New Penn, Plaintiff testified as follows:

---

[32] Deposition of Plaintiff at 71-72.
[33] *Id.* at 74.
[34] *Id.* at 70-71.
[35] *Id.*

7

> Q:    Between March 1, 2002 and March 30, 2003, do you know if you could
>       have worked 30 days at New Penn?
>
> A:    *Nope.*
>
> Q:    Let me rephrase that question.  Between March 1, 2002 and March 30,
>       2003, do you know if you could have worked 30 days in a two month
>       period at New Penn?
>
> A:    *No.*[36]

*      *      *

24.     Moreover, Plaintiff never provided A.P.A. with the required medical documentation establishing that he could return to work without restriction and Plaintiff never served the mandatory ten-day suspension, both of which were conditions precedent to his reinstatement onto A.P.A.'s seniority list. [37]

25.     Finally, as demonstrated below, Plaintiff has continuously represented himself to be ***totally disabled*** and, thus, unable to work.[38]  Plaintiff's receipt of social security disability benefits since 1995, retroactive to 1987 – and his appeal of his partial disability workers' compensation award – was predicated upon that very representation:

> Q:    You testified that you appealed your award of partial disability, is that
>       correct?
>
> A:    Yes.
>
> Q:    Why did you appeal it?
>
> A:    Why did I appeal it?
>
> Q:    Is it because you thought you should have gotten total disability?
>
> A:    Yes.
>
> Q:    ***Do you still believe you should have gotten total disability***?

---

[36] *Id.* at 80 (emphasis added).
[37] *Id.* at 26; Deposition of Mark Harrington at 57.
[38] Deposition of Plaintiff at 75.

A:     *Yes.*

Q:     *Do you believe that you are currently totally disabled?*

A:     *Yes.*[39]

\*     \*     \*

Thus, the uncontraverted testimony establishes that, even if Plaintiff had been placed on A.P.A.'s seniority list, he would have been physically unable to perform dock work during the relevant time period – a critical fact which is fatal to his damages claim.

### Plaintiff's Utter And Unexplained Failure to Mitigate His Alleged Damages

26.    Despite Plaintiff's clear duty to mitigate his alleged damages, Plaintiff unapologetically admitted in his deposition that he has made no effort whatsoever since *1987* to seek alternative employment.[40]  His dilatory tactics are illustrated by the following testimony:

Q:     While you were receiving partial Worker's Compensation benefits, did you hold any other employment?

A:     No.

Q:     Did you look for additional employment between March 11, 1987 and October of 2001 [the date that his grievance was heard]?

A:     No.[41]

\*     \*     \*

Q:     I believe I understood your testimony that *since your accident at APA until March 1st, 2002* you had not worked, is that correct?

A:     Yes.

Q:     Since March 1st, 2002 to the present have you been employed?

A:     No.

---

[39] *Id.* at 74-75 (emphasis added).
[40] *Id.* at 17.
[41] *Id.*

Q:  Since March 1st, 2002 until the present, have you been offered employment by any employer?

A:  No.

Q:  Since March 1st, 2002 until the present, have you been offered employment by any employer?

A:  No.

Q:  Since March 1st, 2002 until the present, have you had any interviews for employment?

A:  No.

Q:  Since March 1st, 2002 until the present, have you filed any applications for employment?

A:  No.

Q:  Since March 1st, 2002 until the present, have you sent out any resumes?

A:  No.

Q:  Since March 1st, 2002 until the present, have you contacted any employment counselors?

A:  Nope.

Q:  Since March 1st, 2002 until the present, have you gone to the library or purchased any books in terms of how one goes about finding employment?

A:  No.

Q:  Since March 1st, 2002 until the present, have you gotten on the computer to look for employment?

A:  No.

Q:  Since March 1st, 2002 until the present, have you made any efforts to find employment?

A:  No.

\*      \*      \*

10

Q:      Okay.  Have you talked to anybody at New Penn since March 1st, 2002?

A:      No.

Q:      Have you called up New Penn and asked if you are going to be called?

A:      No.

Q:      Have you ever filled out an application at New Penn?

A:      Nope.[42]

\*       \*       \*

27.     In short, the record evidence establishes as a matter of law that Plaintiff is unable to substantiate his claims for breach of the collective bargaining agreement by New Penn and/or that he suffered any damages resulting from the supposed breach.   Accordingly, summary judgment should be entered in New Penn's favor on Plaintiff's hybrid §301 action.

Respectfully submitted,


/s/ Carl H. Gluek
T. Merritt Bumpass, Jr. (Ohio Bar # 0015189)
mbumpass@frantzward.com
Carl H. Gluek (Ohio Bar #0029531)
cgluek@frantzward.com
FRANTZ WARD LLP
2500 Key Center
127 Public Square
Cleveland, Ohio  44114-1230
(216) 515-1660
(216) 515-1650 (facsimile)

---

[42] *Id.* at 69-71; 78 (emphasis added).

and

Nicholas A. Klinefeldt (BBO # 647422)
nklinefeldt@klhboston.com
KELLY, LIBBY & HOOPES, P.C.
175 Federal Street
Boston, Massachusetts 02110
(617) 338-9300
(617) 338-9911 (facsimile)

Attorneys for Defendant New Penn Motor
Express, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Concise Statement of Material Facts in Support of Motion of Defendant New Penn Motor Express, Inc. for Summary Judgment was served upon Scott A. Lathrop, Esq. of Scott A. Lathrop & Associates, Attorney for Plaintiff, 122 Old Ayer Road, Groton, MA 01450 and Kathleen Pennini, Esq. of Dwyer, Duddy, Facklam, Attorney for Teamsters Local 25, One Center Plaza, Suite 360, Boston, MA 02108, via electronic filing and ordinary U.S. mail, postage prepaid, this 13th day of January, 2006.

/s/ Carl H. Gluek
Carl H. Gluek, Esq.

1

Volume I
Pages 1 to 35
Exhibits 1 to 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - -x
                                  :
CRAIG GOULET,                     :
            Plaintiff,            :
                                  :
        vs.                       :   Civil Action
                                  :   No. 04-12577 JLT
NEW PENN MOTOR EXPRESS, INC.;     :
and TEAMSTERS LOCAL 25,           :
INTERNATIONAL BROTHERHOOD OF      :
TEAMSTERS,                        :
            Defendants.           :
                                  :
- - - - - - - - - - - - - - - - -x

        DEPOSITION OF GEORGE D. FRANCEY, a witness
called on behalf of the Plaintiff, taken pursuant to
the Federal Rules of Civil Procedure, before Ken A.
DiFraia, Registered Professional Reporter and Notary
Public in and for the Commonwealth of Massachusetts,
at the Offices of Scott A. Lathrop & Associates,
122 Old Ayer Road, Groton, Massachusetts, on
Wednesday, October 12, 2005, commencing at 9:10 a.m.

PRESENT:

    Scott A. Lathrop & Associates
         (by Scott A. Lathrop, Esq.)
         122 Old Ayer Road, Groton, MA 01450,
         for the Plaintiff.

    Frantz Ward LLP
         (by Carl H. Gluek, Esq.)
         2500 Key Center, 127 Public Square,
         Cleveland, OH 44114-1230, for the Defendant
         New Penn Motor Express Inc.

(Continued on Next Page)



**EXHIBIT**

_A_

2

PRESENT:   (Continued)

    Dwyer, Duddy and Facklam
        (by Kathleen A. Pennini, Esq.)
        Two Center Plaza, Suite 430, Boston, MA
        02108-1804, for the Defendant Teamsters
        Local 25, International Brotherhood of
        Teamsters.

ALSO PRESENT:  Craig Goulet

*  *  *  *  *

14

1    Q.    Do you know if Mr. Carnes was there?

2    A.    Good possibility.  I don't remember talking

3    to him, but he was probably there.

4    Q.    Could you identify for the record who

5    George Cashman was at the time.

6    A.    President of Local 25.

7    Q.    And who was Shawn O'Brien?

8    A.    Business agent.

9    Q.    Do you know for what --

10    A.    Oh, he didn't have anything to do with us.

11    I mean, these guys were there simply because they

12    are the Local 25 leadership.

13        APA going out of business was a pretty big

14    hit for Local 25 because we had two terminals, one

15    in Dracut and then the Canton facility.  You are

16    talking, what, 72 guys in Canton, and I don't know

17    how many up in Dracut.  There was probably over 30

18    anyway.

19    Q.    Was this meeting at the union hall

20    therefore for the Dracut and Canton APA drivers?

21    A.    I believe we were all together, I believe.

22    Q.    When you say "all together," you mean both

23    the Dracut and the Canton employees?

24    A.    I believe so.

34

1                    C E R T I F I C A T E

2        I, GEORGE D. FRANCEY, do hereby certify that I

3    have read the foregoing transcript of my testimony,

4    and further certify under the pains and penalties of

5    perjury that said transcript (with/without)

6    suggested corrections is a true and accurate record

7    of said testimony.

8        Dated at _____, this ____ day of _____,

9    2005.

10

11                              _____

12

13

14

15

16

17

18

19

20

21

22

23

24

35

1  COMMONWEALTH OF MASSACHUSETTS)

2  SUFFOLK, SS.                    )

3     I, Ken A. DiFraia, Registered Professional

4  Reporter and Notary Public in and for the

5  Commonwealth of Massachusetts, do hereby certify

6  that there came before me on the 12th day of Oct.,

7  2005, at 9:10 a.m., the person hereinbefore named,

8  who was by me duly sworn to testify to the truth and

9  nothing but the truth of his knowledge touching and

10  concerning the matters in controversy in this cause;

11  that he was thereupon examined upon his oath, and

12  his examination reduced to typewriting under my

13  direction; and that the deposition is a true record

14  of the testimony given by the witness.

15     I further certify that I am neither attorney or

16  counsel for, nor related to or employed by, any

17  attorney or counsel employed by the parties hereto

18  or financially interested in the action.

19     In witness whereof, I have hereunto set my hand

20  and affixed my notarial seal this 27th day of

21  October, 2005.

22            _Ken A. DiFraia_

23                Notary Public

24         My commission expires 4/3/09

1-107

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                  \*

CRAIG GOULET,                 \*

     Plaintiff,         \*

- vs. -               \*  C.A. # 04-12577-JLT

NEW PENN MOTOR EXPRESS,    \*

and                     \*

TEAMSTERS LOCAL 25        \*
INTERNATIONAL BROTHERHOOD OF  \*
TEAMSTERS,                \*

     Defendant.         \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

DEPOSITION of CRAIG GOULET, a witness called by and

on behalf of the defendants, pursuant to the provisions of

the Massachusetts Rules of Civil Procedure, before Michael

C. Janey, a Professional Reporter and Notary Public in and

for the Commonwealth of Massachusetts, at the offices of

Dwyer, Duddy and Facklam, P.C., Two Center Plaza, Suite

430, Boston, Massachusetts, 02108 on Tuesday, October 4,

2005, commencing at 10:05 a.m.

JANEY ASSOCIATES

P. O. Box 365355
Boston, MA 02136-0003
(617) 364-5555
Fax (617) 364-5550



APPEARANCES:

    Scott A. Lathrop, Esquire, law office of SCOTT A. LATHROP, 122 Old Ayer Road, Groton, Massachusetts, 01450, (978) 448-8234; on behalf of the Plaintiff.

    Kathleen A. Pennini, Esquire, law offices of DWYER, DUDDY AND FACKLAM, Two Center Plaza, Suite 430, Boston, Massachusetts, 02108, (617) 723-9777; on behalf of the Defendant, International Brotherhood of Teamsters, Local 25.

    Carl H. Gluek, Esquire, law office of FRANTZ WARD, LLP, 2500 Key Center, 127 Public Square, Cleveland, Ohio, 44114-1230, (216) 515-1660; on behalf of Defendant, New Penn Motor Express.

Also Present: Mark Harrington

1              began working for Sanborn Trucking -- I mean, when

2              Sanborn was bought out by APA?

3    A.        No, I went to work at the APA Canton facility.

4    Q.        When did you begin work at APA in Canton?

5    A.        October of 1986.

6    Q.        How long did you work for APA?

7    A.        I worked for them from October, 1986 until March

8              11th, 1987.

9    Q.        And what happened on March 11th, 1987?

10   A.        I was involved in a industrial accident.

11   Q.        Could you explain this industrial accident for

12             me, please?

13   A.        I was loading a -- unloading a truck with a

14             forklift and the truck pulled away from the loading

15             dock.

16   Q.        How did that result in injury to you?

17   A.        Myself and the forklift both went off the

18             loading dock and I ended with a herniated disc in my

19             neck, lower back, torn rotator cuff in my shoulder,

20             torn ligament in my knee.

21   Q.        Did you go to the hospital on March 11th

22             following this injury?

23   A.        Yes, I did.

24   Q.        And what hospital?

JANEY ASSOCIATES

COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.

I, Michael C. Janey, a Massachusetts Verbatim Court Reporter and Notary Public duly commissioned and qualified in and for the Commonwealth of Massachusetts, do hereby certify that there came before me on the 4th day of October, 2005, at 10:05 a.m., the person hereinbefore named, who was by me duly sworn to testify to the truth and nothing but the truth of his knowledge touching and concerning the matters in controversy in this cause; that he was thereupon examined under his oath and his examination reduced to typewriting under my direction; and that the deposition is a true record of the testimony given by the witness.

I further testify that I am neither attorney or counsel for, nor related to or employed by any of the parties to the action in which this deposition is taken and, further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto or financially interested in the action.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal this 15th day of October, 2005.

My Commission expires on
October 28, 2005.

_____
Michael C. Janey, CR, Notary Public

JANEY ASSOCIATES

107

I have read the foregoing transcript
of the testimony and the same
contains a true and accurate
recording of my answers given to the
questions therein set forth.

_____

Signed under the pains and penalties
of perjury.

_____
        Date



# A-P-A TRANSPORT CORP.

2100 88th Street, North Bergen, New Jersey 07047 • 201-869-6600 212-564-3130
Fax 201-869-5472

October 16, 2001

NEJAC
Case #87-404
<u>Craig Goulet vs. A-P-A Transport Corp.</u>

Gentlemen:

On March 11, 1987, Mr. Goulet was discharged for his gross negligence which caused a serious accident (Exhibit A).

At approximately 7:45 p.m. on March 11, 1987, Mr. Goulet was operating a forklift at 38 Door and was attempting to remove a skid of printed forms from Truck #1237 when the truck rolled forward and the forklift fell to the ground and Mr. Goulet jumped off and fell to the ground. Mr. Goulet was also the person who backed Truck #1237 into the platform.

The forklift wound up three (3) feet away from the dock in an upright position and the truck approximately 35 feet from the dock.

I will now read into the record Exhibit B which is Supervisor T. Whittles's report:

The supervisor's report of injury (Exhibit C) reflects that Mr. Goulet had a bruised right shin and no other findings of visible injury were noted. Although the forklift was damaged, it was driveable and Mr. Goulet was instructed to take it to the garage, which he did and to return back to 38 Door (Exhibit D).

Gentlemen, Mr. Goulet exhibited gross negligence resulting in a serious accident because he failed to properly secure Truck #1237. Furthermore, besides damaging the forklift, and during 14 years of intermittent hearings, appeals, and rehearings, Mr. Goulet has caused A-P-A Transport to expend over $200,000 in partial disability benefits (600 weeks), medical bills and legal costs, all because of <u>his gross negligence</u> for not properly securing the vehicle which rolled away.

Gentlemen, based upon all of the facts presented, we respectfully request the Claim of the Union be denied and the discharge upheld.

Very truly yours,

A-P-A TRANSPORT CORP.

Burton C. Trebour
Vice President
Labor & Administration

**EXHIBIT**

_C_

BCT.'th

1

Volume I
Pages 1 to 76
Exhibits 1 to 12

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - -x
                                 :
CRAIG GOULET,                    :
          Plaintiff,             :
                                 :
     vs.                         :    Civil Action
                                 :    No. 04-12577 JLT
NEW PENN MOTOR EXPRESS, INC.;    :
and TEAMSTERS LOCAL 25,          :
INTERNATIONAL BROTHERHOOD OF     :
TEAMSTERS,                       :
          Defendants.            :
                                 :
- - - - - - - - - - - - - - - - -x

          DEPOSITION OF MARK A. HARRINGTON, a witness
called on behalf of the Plaintiff, taken pursuant to
the Federal Rules of Civil Procedure, before Ken A.
DiFraia, Registered Professional Reporter and Notary
Public in and for the Commonwealth of Massachusetts,
at the Offices of Scott A. Lathrop & Associates,
122 Old Ayer Road, Groton, Massachusetts, on
Wednesday, October 12, 2005, commencing at
10:15 a.m.

PRESENT:

     Scott A. Lathrop & Associates
          (by Scott A. Lathrop, Esq.)
          122 Old Ayer Road, Groton, MA 01450,
          for the Plaintiff.

     Frantz Ward LLP
          (by Carl H. Gluek, Esq.)
          2500 Key Center, 127 Public Square,
          Cleveland, OH 44114-1230, for the Defendant
          New Penn Motor Express, Inc.

          EXHIBIT
          D

(Continued on Next Page)

2

PRESENT:   (Continued)

     Dwyer, Duddy and Facklam
          (by Kathleen A. Pennini, Esq.)
          Two Center Plaza, Suite 430, Boston, MA
          02108-1804, for the Defendant Teamsters
          Local 25, International Brotherhood of
          Teamsters.

ALSO PRESENT:  Craig Goulet

                    *   *   *   *   *

7

1    agent, did you cease being a field representative

2    and organizer?

3        A.    Yes, but the functions of the field

4    representative and the business agent are pretty

5    much the same.  In 1991, I represented -- basically

6    I functioned as a business agent.  It was just that

7    it was not an elected position.  The trustee was an

8    elected position.

9        Q.    I lost you.  When you became a business

10   agent, was that an elected position?

11       A.    I was elected to two positions, trustee,

12   then business agent.

13       Q.    You remained a business agent through some

14   point in 2002?

15       A.    Uh-huh.

16       Q.    That's yes?

17       A.    Yes.

18       Q.    Did you have any positions with Teamsters

19   Local 25 thereafter?

20       A.    I became the secretary treasurer.

21       Q.    When did you become the secretary

22   treasurer?

23       A.    2002.

24       Q.    Is that your current position?

8

1     A.   It is.

2     Q.   What were your duties as a business agent

3 for Local 25?

4     A.   I negotiated contracts, handled grievances,

5 arbitrations, et cetera.

6     Q.   Were you assigned a certain geographical

7 area or certain employers?

8     A.   Certain employers, certain crafts.

9     Q.   Throughout your tenure as a business agent,

10 were you assigned to the same crafts, or did it

11 change?

12     A.   It changes from term to term, depending on

13 people, you know, retiring within the organization,

14 reassignments by the principal officer.

15     Q.   What crafts did you represent originally?

16     A.   I represented the laundry division, I

17 represented healthcare, car rental, car haul,

18 building materials, tank haul, freight, public

19 sector, maintenance, oil, heating oil division,

20 office clerical, and whatever else I was assigned

21 to.

22     That's probably pretty much the gamut of

23 what we had.

24     Q.   Are you familiar with a company called "APA

68

1    A.    That's right.

2    Q.    But somebody did omit his name.

3          MR. GLUEK:  Objection.

4          MS. PENNINI:  Objection.

5          MR. GLUEK:  Is there a question?

6    Q.    Somebody did omit his name, correct?

7    A.    I don't know.

8    Q.    Well, you argued that somebody left off his

9    name.

10         MR. GLUEK:  Objection.

11   A.    I argued a lot of things in this case.

12   Q.    Let's go back then.  Do you have any

13   evidence that Local 25 ever forwarded Mr. Goulet's

14   name or preference to New Penn?

15   A.    No.

16   Q.    Do you have any understanding as to why

17   Local 25 did not forward Mr. Goulet's name to New

18   Penn?

19   A.    No.

20   Q.    Was it because Local 25 --

21   A.    I just answered your question.

22   Q.    Was it because Local 25 felt that that he

23   should serve a suspension first?

24         MR. GLUEK:  Objection.

76

1  COMMONWEALTH OF MASSACHUSETTS)

2  SUFFOLK, SS.                            )

3       I, Ken A. DiFraia, Registered Professional

4  Reporter and Notary Public in and for the

5  Commonwealth of Massachusetts, do hereby certify

6  that there came before me on the 12th day of Oct.,

7  2005, at 10:15 a.m., the person hereinbefore named,

8  who was by me duly sworn to testify to the truth and

9  nothing but the truth of his knowledge touching and

10  concerning the matters in controversy in this cause;

11  that he was thereupon examined upon his oath, and

12  his examination reduced to typewriting under my

13  direction; and that the deposition is a true record

14  of the testimony given by the witness.

15       I further certify that I am neither attorney or

16  counsel for, nor related to or employed by, any

17  attorney or counsel employed by the parties hereto

18  or financially interested in the action.

19       In witness whereof, I have hereunto set my hand

20  and affixed my notarial seal this 27th day of

21  October, 2005.

22                    _Ken A. DiFraia_

23                       Notary Public

24             My commission expires 4/3/09

JAN-13-2006 13:42    FRANTZ WARD LLP                    216 515 1650    P.02/05
Case 1:04-cv-12577-WGY    Document 29-6    Filed 01/13/2006    Page 1 of 3

Jan 13 06 02:11p    DORIS O WONG ASSOCIATES    617-482-7813    p.2

1

Volume I
Pages 1 to 47
Exhibits 1 to 7

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - -x
                                 :
CRAIG GOULET,                    :
          Plaintiff,             :
                                 :
     vs.                         :   Civil Action
                                 :   No. 04-12577 JLT
NEW PENN MOTOR EXPRESS, INC.;    :
and TEAMSTERS LOCAL 25,          :
INTERNATIONAL BROTHERHOOD OF     :
TEAMSTERS,                       :
          Defendants.            :
                                 :
- - - - - - - - - - - - - - - - -x

        DEPOSITION OF PAUL DUBIEL, a witness called
on behalf of the Plaintiff, taken pursuant to the
Federal Rules of Civil Procedure, before Ken A.
DiFraia, Registered Professional Reporter and Notary
Public in and for the Commonwealth of Massachusetts,
at the Offices of Scott A. Lathrop & Associates,
122 Old Ayer Road, Groton, Massachusetts, on
Tuesday, November 15, 2005, commencing at 1:18 p.m.

PRESENT:

     Scott A. Lathrop & Associates
          (by Scott A. Lathrop, Esq.)
          122 Old Ayer Road, Groton, MA 01450,
          for the Plaintiff.

     Frantz Ward LLP
          (by Carl H. Gluek, Esq.)
          2500 Key Center, 127 Public Square,
          Cleveland, OH 44114-1230, for the Defendant
          New Penn Motor Express, Inc.

EXHIBIT
E

(Continued on Next Page)

JAN-13-2006 13:42 Case 1:04-cv-1257?-WGY FRANTZ WARD LLP Document 29-6 Filed 01/13/2006 Page 2 of 3 216 515 1650 P.04/05

Jan 13 06 02:12p     DORIS O WONG ASSOCIATES     617-482-7813          p.4

11

1      Q.    When you were the terminal manager for

2   Dracut, did you have seniority lists for your

3   drivers?

4      A.    Yes.

5      Q.    Let me restate that.  Did you have

6   seniority lists that covered also dock workers?

7      A.    There was one seniority list.

8      Q.    One seniority list?

9      A.    Right.

10     Q.    Let me back up.  Local 25 represented

11  drivers and dock workers in Dracut?

12     A.    They do, yes.

13     Q.    Local 25 represented drivers and dock

14  workers in Canton?

15     A.    Yes.

16     Q.    And in Billerica?

17     A.    Yes.

18     Q.    Going back, in Dracut, there was one

19  seniority list for all unionized employees?

20     A.    That's correct.

21     Q.    Whether you be a driver or a dock worker,

22  correct?

23     A.    Correct.

24     Q.    During your tenure in Dracut, which persons

47

1   COMMONWEALTH OF MASSACHUSETTS)

2   SUFFOLK, SS.                    )

3       I, Ken A. DiFraia, Registered Professional

4   Reporter and Notary Public in and for the

5   Commonwealth of Massachusetts, do hereby certify

6   that there came before me on the 15th day of Nov.,

7   2005, at 1:18 p.m., the person hereinbefore named,

8   who was by me duly sworn to testify to the truth and

9   nothing but the truth of his knowledge touching and

10  concerning the matters in controversy in this cause;

11  that he was thereupon examined upon his oath, and

12  his examination reduced to typewriting under my

13  direction; and that the deposition is a true record

14  of the testimony given by the witness.

15      I further certify that I am neither attorney or

16  counsel for, nor related to or employed by, any

17  attorney or counsel employed by the parties hereto

18  or financially interested in the action.

19      In witness whereof, I have hereunto set my hand

20  and affixed my notarial seal this 30th day of Nov.,

21  2005.

22          _Ken A. DiFraia_

23              Notary Public

24          My commission expires 4/3/09

DORIS O. WONG ASSOCIATES, INC.
(617) 426-2432 ~ Fax (617) 482-7813

UNION LOCAL No. 25

*Affiliated with*
*International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*
*Teamsters Joint Council No. 10        Eastern Conference of Teamsters*



WILLIAM J. McCARTHY
*President*

OFFICE:
544 MAIN STREET
BOSTON, MASSACHUSETTS 02129
TELEPHONE 241-8825

March 18, 1987

A-P-A Transport Corporation
30 Industrial Drive
Canton, MA 02021

Att:  Mr. Justin W. Poor, III
      Terminal Manager

Dear Sir:

In accordance with the provisions of the current New England Freight Agreement, we are hereby registering a complaint relative to the letter sent to Mr. Craig Goulet dated March 12, 1987.

If there are any questions on this matter, please contact Business Agent George W. Cashman.

Very truly yours,

*William J. McCarthy*

WILLIAM J. McCARTHY
President

GWC:aj

EXHIBIT
F



# Teamsters Local 25
# International Brotherhood of Teamsters

544 MAIN STREET • BOSTON, MASSACHUSETTS 02129-1113 • 617-241-8825 • Fax 617-242-4284
www.teamsterslocal25.com

GEORGE W. CASHMAN
*President / Principal Officer*

JOSEPH C. CONLON
*Secretary-Treasurer*

WILLIAM H. CARNES
*ce President / Business Agent*

RITCHIE E. REARDON
*rding Secretary / Business Agent*

MARK A. HARRINGTON
*Trustee / Business Agent*

LOU DiGIAMPAOLO
*stee / Director of Organizing / Field Representative*

ERNEST C. SHEEHAN JR.
*Trustee / Business Agent*

VINCENT J. PISACRETA
*Business Agent*

JOHN A. MURPHY
*Business Agent*

ARTHUR J. LAZAZZERO
*Field Representative*

## TEAMSTERS LOCAL 25
## VS.
## APA TRANSPORT CORP.
## CASE # 87-404

Issue: Unjust Termination of Craig Goulet

Grievant: Craig Goulet

### Background and Statement of the Facts:

Brother Goulet has been a Teamster since 1979. He was employed by Sanborn's Transportation earning seniority in August of 1984. After the acquisition of Sanborn's by APA, he went to work in the Canton, MA terminal in October of 1987.

Brother Goulet, during his career, worked for many reputable union carriers. On March 11, 1987 he was discharged by A.P.A. Transport for gross negligence, allegedly as a result of a serious accident. (The alleged incident was that Brother Goulet drove a forklift off the dock).

On the night in question, Brother Goulet reported for duty at 7:00 p.m. He was on the 7:00 p.m. dock bid and was given an assignment to unload the # 38 door. He proceeded to the loading dock area and rolled up the overhead doors of both the dock and the truck. He observed that the stripper was a palletized load and required the use of a forklift. He placed his bills on a dock desk and pulled up the dock plate. He then secured a forklift and drove onto the truck, which was a straight job.

As he proceeded to enter the truck the vehicle started to roll away. Upon realizing what was going on he grabbed the track of the roll-up door of the straight job. The forklift then crashed into the yard on all fours and Goulet fell onto the

EXHIBIT

G

ground. He fell approximately eight feet and sustained many serious injuries; a torn rotator cuff, two herniated disks as well as a torn ligament in his right knee.

He was laying on the ground and supervisor Tom Whitels came around the corner almost immediately and inquired as to what had occurred. He went back on the dock and was notified that he was terminated. A mechanic took Craig to the Goddard Memorial Hospital in Stoughton, MA for treatment. He was observed at the hospital and sent home. The company called a few days later and said he was required to go to New Jersey to be evaluated by their doctors. Brother Goulet was unable to travel due to his injuries and he informed the company that he would seek treatment from his own doctor.

Brother Goulet went out on an industrial accident and his case had been pending on committee hold since that time.

Union's Position:

It is Local 25's position that the discharge of Craig Goulet is without merit. He should be reinstated with his proper seniority and made whole for all lost earnings and benefits.

It is inconceivable that Brother Goulet would willfully drive a forklift off the dock. The facts of the case do not support that Brother Goulet would take such action. In fact, in reviewing the circumstances that had been ongoing at APA, one would question if some sort of conspiracy actually were invoked against Brother Goulet.

Upon reviewing the activities that had occurred at the terminal during that time span one comes away with the notion that Brother Goulet was not wanted by APA.

Also, upon reviewing the notes that Brother Goulet compiled regarding an incident on February 5, 1987 it is apparent that management at APA took exception to Brother Goulet's desire to certain legal and contractual rights. For example, on February 5, 1987 he was told to report to the terminal manager's office. Upon entering the office Brother Goulet was immediately confronted by the terminal manager, Jack Poor. Mr. Poor said to Goulet "you are going to lose Craig, sooner or later you're going to lose. It may not be today or tomorrow, but you can't win. Bigger men than you have gone through that door."

This type of attitude towards Brother Goulet certainly speaks of the hostile environment that was in existence at the time of the incident.

Local 25 does not believe that Brother Goulet would willfully drive himself off the end of the dock riding on a six thousand pound Brama bull which resulted in over fourteen years of injuries, lost pension and health benefits, earning opportunity

and many other struggles. In fact, when reviewing a case based on negligence, one must look to the legal theory of the "reasonable man". Negligence will exist upon failure to do, something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs would do or something which a reasonable and prudent person would not do". (43 S.W. 508, 509).

Gentlemen, in conclusion, Brother Goulet must be returned to work with all his contractual rights.

Respectfully submitted,

*Mark A. Harrington*
MARK A. HARRINGTON
Business Agent



"WONDERFUL"

# A-P-A TRANSPORT CORP.

2100 88th Street, North Bergen, New Jersey 07047 • 201-869-6600  212-564-3130
Fax 201-869-5472

October 16, 2001

NEJAC
Case #87-404
<u>Craig Goulet vs. A-P-A Transport Corp.</u>

Gentlemen:

On March 11, 1987, Mr. Goulet was discharged for his gross negligence which caused a serious accident (Exhibit A).

At approximately 7:45 p.m. on March 11, 1987, Mr. Goulet was operating a forklift at 38 Door and was attempting to remove a skid of printed forms from Truck #1237 when the truck rolled forward and the forklift fell to the ground and Mr. Goulet jumped off and fell to the ground. Mr. Goulet was also the person who backed Truck #1237 into the platform.

The forklift wound up three (3) feet away from the dock in an upright position and the truck approximately 35 feet from the dock.

I will now read into the record Exhibit B which is Supervisor T. Whittles's report:

The supervisor's report of injury (Exhibit C) reflects that Mr. Goulet had a bruised right shin and no other findings of visible injury were noted. Although the forklift was damaged, it was driveable and Mr. Goulet was instructed to take it to the garage, which he did and to return back to 38 Door (Exhibit D).

Gentlemen, Mr. Goulet exhibited gross negligence resulting in a serious accident because he failed to properly secure Truck #1237. Furthermore, besides damaging the forklift, and during 14 years of intermittent hearings, appeals, and rehearings, Mr. Goulet has caused A-P-A Transport to expend over $200,000 in partial disability benefits (600 weeks), medical bills and legal costs, all because of <u>his gross negligence</u> for not properly securing the vehicle which rolled away.

Gentlemen, based upon all of the facts presented, we respectfully request the Claim of the Union be denied and the discharge upheld.

Very truly yours,

A-P-A TRANSPORT CORP.

Burton C. Trebour
Vice President
Labor & Administration

BCT:th

EXHIBIT

H

# NEW ENGLAND JOINT AREA GRIEVANCE COMMITTEE
## DECISION FORM

Established in accordance with the terms and conditions of the National Master Freight Agreement and the New England Supplemental Freight Agreement, entered into by and between the Local Unions and Carriers engaged in City Pickup and Delivery and/or Over-the-Road Freight Operations.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Teamster Local(s) No./Agent: 2 5 / M. Harrington

Grievant: Craig Goulet

CASE NO.: 87-404

Employer: APA Transport Corp.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

We, the undersigned parties to the National Master Freight Agreement and the New England Supplemental Freight Agreement hereby agree to submit the dispute to arbitration under the Rules of Procedure prescribed by the NE Joint Area Grievance Committee, by virtue of its authority, as set forth in Articles 7 and 8 of the National Master Freight Agreement and Articles 45 and 46 of the New England Supplemental Freight Agreement, the following:

Alleged violation of Article 47.   Union seeks man to be returned to work will all lost wages, H, W and Pension. 3/01- Union request this case be placed back on the SNE JAC docket for hearing.

The undersigned further agree that a majority decision of the NE Joint Area Committee in the above dispute will be final, conclusive and binding with no appeal and, further, that neither party will attempt through any overt acts, to void the decision rendered. Failure to comply may result in economic action within the confines of Article 8 of the National Master Freight Agreement and Articles 45 and 46 of the New England Supplemental Freight Agreement.

Employer:  APA Transport Corp.

Signed:   B Trebour

Local Union(s): 2 5

Signed: M. Harrington

This is the Official Award and Decision of the New England Joint Area Grievance Committee.  Decision must be promptly complied with and all Monetary Awards must be paid in pay period for the week following receipt of Decision.

## - DECISION -

The Panel in Executive Session, motion made, seconded and carried the Company's Point of Order was not upheld.   The Panel after hearing the case, motion made, seconded and carried that upon submitting acceptable documentation to the Company of his ability to return to unrestricted duties, the grievant shall serve a ten (10) day suspension.  Upon completion of the suspension he shall be reinstated to the seniority list in his original position.

DECISION DATE: 10/16/2001

EMPLOYER PANEL:

Scalzo

Picarello

UNION PANEL:

Mundy*

Fenlason



**EXHIBIT**

FEBRUARY 13, 2002

### AGREEMENT BETWEEN
### THE TEAMSTERS NATIONAL FREIGHT
### INDUSTRY NEGOTIATING COMMITTEE
### AND NEW PENN MOTOR EXPRESS, INC.

1.      APA has notified TNFINC that the company intends to cease operations immediately. Absent the efforts contemplated by this Agreement, APA's existing customers will be divided among many competitors, most of them non-union regional carriers. This will result in the loss of many NMFA-covered jobs in the industry.   New Penn Motor Express (NPME) had no involvement in APA's decision to terminate operations and has no independent obligation, contractual, statutory or otherwise, to APA, TNFINC or APA's employees in connection with this closure.

2.      After being advised of APA's decision to close, however, NPME began negotiations with APA to explore the possibility of acquiring certain customer information.    Obtaining this customer information would allow NPME to capture a portion of APA's LTL business and keep that business with a NMFA carrier.   Any arrangement between NPME and APA regarding customer information is contingent upon approval of this Agreement by TNFINC.

3.      Under the contingent agreement between NPME and APA, NPME is seeking customer information and access.  NPME is not a purchaser and does not seek to purchase any of APA's equipment or terminals from APA.   NPME is not seeking or participating in any merger or acquisition of APA or any of its rights or authority or stock.   NPME is not the legal successor employer of APA.

4.      NPME does not believe its contingent agreement with APA creates any obligation to TNFINC or to APA NMFA employees, either legally or under the NMFA.   However, NPME will extend an opportunity to those APA NMFA employees who are employed in the local supplemental areas where NPME has an established terminal operation to become NPME employees under terms and conditions hereinafter described.   In return for extending such opportunities, TNFINC will agree that NPME has fulfilled all contractual or legal obligations, if any, to TNFINC and the APA NMFA employees.

5.      NPME's discussions with APA regarding its customer lists and NPME's offer to extend opportunities to APA NMFA employees is voluntary.   NPME is undertaking these efforts because it believes there is some benefit to APA NMFA employees as well as a benefit to NPME.   However, NPME has negotiated with APA contingent upon reaching agreement with TNFINC.   Absent such agreements and approvals, NPME will abandon any further discussions with APA and will not extend the opportunities outlined herein, and shall have no obligation to TNFINC or the APA NMFA employees.

**EXHIBIT**

tabbies

J

6.     Because of the serious and urgent nature of APA's current financial condition and the need to avoid the immediate erosion of APA's customer base, the timing of this agreement is of the essence.

7.     As of February 20, 2002 APA will cease to make any pick ups of LTL freight. APA will continue to make deliveries of that freight in their system. It is not the intent or the plan of NPME to deliver any APA freight but will make itself available to do so on a limited basis.

8.     Following the termination of APA's operations, NPME will provide opportunities to APA NMFA employees as described herein:

    a.     NPME and APA have terminals in different locations. NPME will provide to TNFINC and APA a list of its terminals and a general description of its pick up and delivery territory for each terminal as well as will advise which NPME terminals have road operations and which NPME terminals do not in an effort to assist APA NMFA employees.

    b.     Thereafter each APA NMFA employee, whether active or inactive, employed in the same local supplemental area where NPME has existing direct terminal operations, shall have the right to place his/her name on the call list of only ONE NPME terminal (or the classification seniority list, where applicable) within the same local supplement where they currently are employed.  APA NMFA over-the-road drivers, active or inactive on separate over-the-road seniority at the Buffalo, NY, Philadelphia, PA and North Bergen, NJ terminals, shall only have the right to place his/her name on the over-the-road terminal seniority call list at one of the following NPME terminals where such same separate seniority exists.  Albany, NY, Cinnaminson, NJ (Philadelphia area), Newburgh, NY and Trenton, NJ. (Footnote: In the event NPME opens a Burlington VT terminal, APA NMFA employees on the Burlington VT terminal seniority list shall be provided an opportunity to place their names on the list for the NPME Burlington VT terminal and gain seniority in accordance with the terms of this Agreement). NPME does not have any operations in Central States, nor does NPME have any operations in the Maritime Provinces of Canada as does APA, and thus those APA NMFA employees are not covered by this Agreement.  It is clearly understood that during the period between the date of APA's termination of operations and the effective date of this Agreement, NPME shall be able to utilize APA NMFA employees as necessary without regard to seniority.

    c.     No APA NMFA employee shall be required to place his/her name on any NPME terminal call list. NPME shall have no obligation to any APA NMFA employee who chooses to not place his/her name on a NPME terminal call list by March 1, 2002. Additionally, NPME shall have no obligation to APA NMFA employees until TNFINC provides the APA NMFA terminal selection call lists in accordance with this Agreement.

    d.     When an APA NMFA employee places his/her name on a NPME terminal call list, it will appear below all NPME employees names on that terminal seniority list (end-tailed). APA NMFA employees shall be arranged (and called as casuals) according to their current APA NMFA seniority. If more than one employee has the same seniority date, their positioning on the list will be decided by "coin-tossing" conducted by union officials. NPME is not obligated to hire any APA employee not covered by the NMFA.

e.    Employees who are on a NPME terminal call list, will be offered work in accordance with their seniority position and qualifications. NPME shall not be penalized for passing an employee for work opportunity if the employee cannot perform all of the duties required of the job being filled or until APA NMFA employees meet all government pre-employment requirements.

f.    APA NMFA employees shall have work opportunity ahead of NPME casual employees, but shall not have work opportunity ahead of any probationary or preferred casual employees, if applicable.

g.    APA NMFA employees added to the NPME terminal call lists as described above shall be treated and paid as casual employees in accordance with the local supplement and shall establish seniority at NPME in accordance with the following provision. Any APA NMFA employee who works thirty (30) days within any two (2) consecutive calendar month period shall be deemed to have obtained seniority and shall be placed on the NPME seniority list in accordance with that established seniority date, end-tailed after the NPME seniority employees on such seniority list.

h.    NPME shall only be obligated to offer work to APA NMFA employees as outlined above until March 31, 2003 at which time such obligation will no longer exist.

If during the term of the current 1998-2003 NMFA, but not later than March 31, 2003, the list of former APA NMFA employees at any terminal is exhausted, those APA NMFA employees on other terminal lists in that local supplement, who have not obtained seniority at NPME, will be offered a second opportunity to place their name on the call list of such terminal.

i.    APA NMFA employees on a NPME terminal call list shall be paid in accordance with the casual rate listed in the NMFA until such time as they obtain NPME seniority. Thereafter they shall be paid ninety (90%) of the current NMFA rate for the first six (6) months and thereafter, one-hundred percent (100%) of the current rate in effect.

j.    Any APA NMFA employee who achieves seniority status at NPME and qualifies for vacation will receive one (1) bonus week of vacation in addition to the vacation earned under the local supplement unless or until such APA NMFA employee qualifies for three (3) weeks vacation, in which case the bonus week shall no longer apply. Under no circumstances shall any APA NMFA employee receive more than one bonus week of vacation in any vacation year. The vacation year being contract or calendar in accordance with the Local Supplemental Agreement.

k.    NPME shall have no obligation to relocate any APA NMFA employee.

l.    NPME shall have no responsibility, obligation or liability for any claim or for anything of any kind or nature regarding or involving APA NMFA employees added to NPME seniority lists as described prior to the time they are added to such NPME seniority list. This includes but is not limited to, unemployment or workers compensation claims, short-paid or

underpaid wages, short-paid or under paid health and welfare or pension contributions, any unfunded or withdrawal pension liability, or claims or any kind against APA or others.

m.    NPME will make contributions for each APA NMFA employee into the respective Health and Welfare and Pension fund where such APA NMFA employee is currently enrolled. All payments of Health and Welfare and Pension contributions made by NPME on behalf of the APA NMFA employee shall be made in accordance with the requirements of the NMFA and applicable Local Supplements. NPME shall not be obligated for Health and Welfare and Pension contributions on behalf of any APA NMFA employee on disability or workers compensation.

n.    APA NMFA employees added to the NPME seniority lists shall be eligible to participate in the Teamsters 401-K program as do other NPME employees.

8.    It is acknowledged that the benefits provided to the APA NMFA employees under this Agreement are greater than would otherwise be provided under the NMFA for these employees under these circumstances, and that NPME has fulfilled any legal or contractual obligation it had or may have to these APA NMFA employees.

9.    This Agreement will become effective February 25, 2002, but only if (i) there is an agreement finalized between NPME and APA regarding customer lists and (ii) there is approval by the affected APA NMFA employees.

TNFINC                                    NEW PENN MOTOR EXPRESS, INC.

_____              _____
Phil Young - Co-Chairman              Stephen M. O'Kane - President


_____              _____
James McCall - IBT Counsel            John Ring - Counsel

4

1

Volume I
Pages 1 to 57
Exhibits 1 to 8

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - -x
                                :
CRAIG GOULET,                   :
          Plaintiff,            :
                                :
     vs.                        :   Civil Action
                                :   No. 04-12577 JLT
NEW PENN MOTOR EXPRESS, INC.;   :
and TEAMSTERS LOCAL 25,         :
INTERNATIONAL BROTHERHOOD OF    :
TEAMSTERS,                      :
          Defendants.           :
                                :
- - - - - - - - - - - - - - - -x

        DEPOSITION OF WILLIAM H. CARNES, a witness
called on behalf of the Plaintiff, taken pursuant to
the Federal Rules of Civil Procedure, before Ken A.
DiFraia, Registered Professional Reporter and Notary
Public in and for the Commonwealth of Massachusetts,
at the Offices of Scott A. Lathrop & Associates,
122 Old Ayer Road, Groton, Massachusetts, on
Thursday, September 8, 2005, commencing at
10:04 a.m.

PRESENT:

    Scott A. Lathrop & Associates
         (by Scott A. Lathrop, Esq.)
         122 Old Ayer Road, Groton, MA 01450,
         for the Plaintiff.

    Frantz Ward LLP
         (by Carl H. Gluek, Esq.)
         2500 Key Center, 127 Public Square,
         Cleveland, OH 44114-1230, for the Defendant
         New Penn Motor Express, Inc.

**EXHIBIT**

tabbies

K

(Continued on Next Page)

50

1  has any prejudices against Mr. Goulet?

2      A.    No, sir.

3      Q.    Do you know of anybody at Local 25 that

4  would like to see ill will suffered upon

5  Mr. Goulet?

6      A.    No, sir.

7      Q.    With respect to the agreement, which has

8  been identified as Exhibit 1, is it your

9  understanding that the employees of APA had an

10 obligation to advise the union that they wanted to

11 be on this call list?

12         MR. LATHROP:   Objection.

13     A.    (No response)

14     Q.    Do you know one way or the other?

15     A.    I really don't.

16     Q.    Do you know under the agreement, Exhibit 1,

17 that the union had an obligation to forward the

18 names of APA employees that wanted to be on a call

19 list?

20     A.    Correct.

21     Q.    Were you aware that under Exhibit 1, there

22 was a time period within which the union was to

23 forward those names?

24         MR. LATHROP:   Objection.

57

1  COMMONWEALTH OF MASSACHUSETTS)

2  SUFFOLK, SS.                    )

3      I, Ken A. DiFraia, Registered Professional

4  Reporter and Notary Public in and for the

5  Commonwealth of Massachusetts, do hereby certify

6  that there came before me on the 8th day of Sept.,

7  2005, at 10:04 a.m., the person hereinbefore named,

8  who was by me duly sworn to testify to the truth and

9  nothing but the truth of his knowledge touching and

10  concerning the matters in controversy in this cause;

11  that he was thereupon examined upon his oath, and

12  his examination reduced to typewriting under my

13  direction; and that the deposition is a true record

14  of the testimony given by the witness.

15      I further certify that I am neither attorney or

16  counsel for, nor related to or employed by, any

17  attorney or counsel employed by the parties hereto

18  or financially interested in the action.

19      In witness whereof, I have hereunto set my hand

20  and affixed my notarial seal this /9th day of

21  September, 2005.

22              _Ken A. DiFraia_

23                  Notary Public

24      My commission expires 4/3/09



# Teamsters Local 25
## International Brotherhood of Teamsters

544 MAIN STREET • BOSTON, MASSACHUSETTS 02129-1113 • 617-241-8825 • Fax 617-242-4284
www.teamsterslocal25.com

GEORGE W. CASHMAN
*President / Principal Officer*

RITCHIE E. REARDON
*Secretary-Treasurer*

WILLIAM H. CARNES
*Vice President / Business Agent*

JOHN A. MURPHY
*Recording Secretary / Business Agent*

MARK A. HARRINGTON
*Trustee / Business Agent*

LOU DiGIAMPAOLO
*Trustee / Director of Organizing /
Field Representative*

ERNEST C. SHEEHAN JR.
*Trustee / Business Agent*

VINCENT J. PISACRETA
*Business Agent*

ARTHUR J. LAZAZZERO
*Business Agent*

February 28, 2002

Dan Schmidt
Vice President of Labor Relations
New Penn Motor Express
625 So. 5th Ave. P.O. Box 630
Lebanon, PA  17042

Dear Mr. Schmidt:

Enclosed please find updated list of former employees of A.P.A. in Canton, Massachusetts. Please note that R. Petit's area code number has changed from (781) to (617) and T. Sullivan has changed his preference from Providence, Rhode Island to Billerica, Massachusetts.

Should you have any question, please contact Mark Harrington at 617-241-8825 extension #277.

Thank you for your attention to this matter.

Sincerely,

George W. Cashman
President/Principal Officer

GWC/jem

**EXHIBIT**
L

Harry Ex 6

*We will only accept deliveries from UNION carriers! All other deliveries will be refused!*

50

| | NAME | ADDRESS | CITY | ST. | ZIP | TELEPHONE | SS# | SEN.DATE | PRE. |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Burrill, P. | 6 Grt. Woods Cl. | Norton | MA | 02766 | (508) 285-9452 | 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 | 6/30/70 | Prov. |
| 2 | McCaffrey, M. | 29B Shaw St. | Braintree | MA | 02184 | (781) 848-9223 | 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 | 10/7/70 | Bil. |
| 3 | | | | | | | | | |
| 4 | Heroux | | | | | | | | |
| 5 | Mastropietro, R. | 215 Forest Trail | Hanson | MA | 02311 | (781) 447-9455 | 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 | 11/12/68 | Ret. |
| 6 | Setterland, D. | 72 Paul Rd. | Hanover | MA | 02339 | (781) 871-3525 | 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 | 11/3/73 | Bil. |
| 7 | Loud, D. | 560 Bedford St. | Abington | MA | 02351 | (781) 871-0476 | 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 | 3/11/74 | Ret. |
| 8 | Petit, A. | 11 Hinson Rd. | Weymouth | MA | 02188 | (781) 337-3557 | 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 | 4/15/75 | Ret. |
| 9 | Petit, R. | 115 Highland Ave. | Quincy | MA | 02169 | (781) 471-0098 | 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 | 9/15/75 | Bil. |
| 10 | Durette, M. | 111 Pond St. | Swansea | MA | 02777 | (508) 674-7683 | 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 | 9/30/75 | Prov. |
| 11 | Hoyt, H. | 23 Garfield St. | Foxboro | MA | 02035 | (508) 543-2978 | 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 | 8/17/76 | Ret. |
| 12 | Ellis, R. | 1573 Liberty St. | Braintree | MA | 02184 | (781) 843-1549 | 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 | 8/27/76 | Bil. |
| 13 | Deramo, M. | 31 Washington St. | Sherborn | MA | 01770 | (508) 652-6086 | 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 | 2/22/77 | Prov. |
| 14 | Sullivan, T. | 17 Hillside Dr. | Plymouth | MA | 02360 | (508) 224-5584 | 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 | 10/24/77 | Prov. |
| 15 | Rabideau, R. | P.O. Box 265 | Easton | MA | 02334 | (508) 230-2436 | 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 | 1/4/78 | Prov. |
| 16 | Kelley, Jr., W. | 306 Field St. | Brockton | MA | 02403 | (508) 583-0861 | 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 | 3/27/78 | Bil. |
| 17 | Monahan, H. | 4 Kathy Ln. | Hanson | MA | 02341 | (781) 826-2751 | 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 | 11/14/78 | Prov. |
| 18 | Petit, Jr., E. | 633 King St. | Hanover | MA | 02339 | (781) 871-7648 | 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 | 4/23/79 | Bil. |
| 19 | Pickering, G. | 53 Rosalind St. | N. Weymouth | MA | 02188 | (781) 337-6278 | 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 | 8/3/81 | Bil. |
| 20 | Tisbert, B. | 17 Marsh Ave. | Salem | NH | 03079 | (603) 890-6183 | 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 | 5/17/83 | Bil. |
| 21 | Damiano, J. | 22 Bixby Dr. | E. Bridgewater | MA | 02333 | (508) 378-3792 | 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 | 7/20/83 | Prov. |
| 22 | Gwynn, N. | 283 Central St. | E. Bridgewater | MA | 02333 | (508) 378-0466 | 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 | 5/14/84 | Prov. |
| 23 | Cardoza, P. | 804 Maple St. | Mansfield | MA | 02048 | (508) 339-5134 | 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 | 9/24/84 | Prov. |
| 24 | Bouffard, R. | 20 E. Nilsson St. | Brockton | MA | 02301 | (508) 588-6540 | 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 | 9/30/85 | Bil. |
| 25 | Coull, D | 230 State Rd. | Plymouth | MA | 02360 | (508) 888-6964 | 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 | 4/6/73 | Ret. |
| 26 | McGee, R. | 437 Commonwealth Rd. | Wayland | MA | 01778 | (508) 653-8174 | 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 | 5/20/82 | Prov. |
| 27 | Francey, G. | 324 Flagg St. | Bridgewater | MA | 02324 | (508) 697-9620 | 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 | 10/25/82 | Prov. |
| 28 | Cruise, M. | 103 So. Pickens St. | Lakeville | MA | 02347 | (508) 946-0330 | 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 | 4/30/84 | Prov. |
| 29 | Power, K. | 16 Carver St. | Watertown | MA | 02472 | (617) 926-5324 | 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 | 11/15/84 | Bil. |
| 30 | Fennelly, E. | 160 Washington St., Unit #68 | Plainville | MA | 02762 | (508) 695-3075 | 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 | 2/25/85 | Prov. |
| 31 | McGrath, H. | 1165 Main St. | Walpole | MA | 02081 | (508) 668-0244 | 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 | 8/26/85 | Prov. |
| 32 | Bain, S. | 28 Poole Cl. | Holbrook | MA | 02343 | (781) 767-6229 | 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 | 3/9/87 | Bil. |
| 33 | Holderied, J. | 139 Church St. | Westwood | MA | 02090 | (781) 329-3687 | 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 | 5/8/89 | Bil. |
| 34 | Howe, T. | 127 Everett Cl. | Stoughton | MA | 02072 | (781) 344-1904 | 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 | 5/15/89 | Prov. |
| 35 | Howe, S. | 53 Bradford St. | Stoughton | MA | 02072 | (781) 344-3871 | 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 | 5/31/90 | Prov. |
| 36 | Berry, S. | 367 Pond St. | So. Weymouth | MA | 02190 | (781) 335-4217 | 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 | 5/31/90 | Pass |
| 37 | Sullivan, C. | 4 Hadley Rd. | Norton | MA | 02766 | (508) 285-4918 | 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 | 12/9/91 | Prov. |
| 38 | MacDonald, J. | 1 Pebble Path | Forestdale | MA | 02644 | (508) 477-5324 | 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 | 12/9/91 | Prov. |
| 39 | Hulbert, M. | 4 First St. | Mansfield | MA | 02048 | (508) 339-8645 | 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 | 12/9/91 | Bil. |
| 40 | O'Meara, W. | 75 Chestnut W. | Randolph | MA | 02368 | (781) 986-8686 | 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 | 3/1/93 | Prov. |
| 41 | Fontes, M | 755 Washington St. | Walpole | MA | 02081 | (508) 668-5435 | 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 | 3/3/93 | Prov. |
| 42 | Pimental, J. | 36 Brown St. | Fair Haven | MA | 02719 | (508) 994-5614 | 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 | 9/8/93 | Prov. |
| 43 | Friel, P. | 5 Fall Ln. | Canton | MA | 02021 | (781) 828-3354 | 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 | 9/9/93 | Prov. |
| 44 | Lehan, D. | 4 South St. | Canton | MA | 02021 | (781) 828-6595 | 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 | 9/10/93 | Prov. |

| No. | Name | Address | City | State | ZIP | Phone | SSN | Date | Status |
|---|---|---|---|---|---|---|---|---|---|
| 45 | Houde, G. | 360 Cedar St. | New Bedford | MA | 02740 | (508) 996-6028 | 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 | 9/14/93 | Prov. |
| 46 | Roche, J. | 3 Buttercup Ln. | Medway | MA | 02053 | (508) 533-7249 | 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 | 9/16/93 | Prov. |
| 47 | Stephen, J. | 29 Jessie Ave. | S. Attleboro | MA | 02703 | (508) 761-6979 | 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 | 9/17/93 | Prov. |
| 48 | Carvalho, D. | 363 Wareham St. | Middleboro | MA | 02346 | (508) 947-6163 | 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 | 9/18/93 | Pass |
| 49 | Carey, P. | 19 Grist Mill Ln. | Pembroke | MA | 02359 | (781) 829-8773 | 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 | 10/27/93 | Prov. |
| 50 | Creighton, R | 42 Brooke Ter. | Weymouth | MA | 02188 | (781) 335-8815 | 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 | 9/1/94 | (Prov. |
| 51 | Perry, J. | 59 Yellowstone Ave. | Warwick | RI | 02886 | (401) 463-8145 | 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 | 9/10/94 | (Prov. |
| 52 | Blake, R | 17 Glenfeld Rd. | N. Attleboro | MA | 02760 | (508) 643-2239 | 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 | 1/13/95 | Prov. |
| 53 | Kearley, M. | 30 Carol St. | Acushnet | MA | 02743 | (508) 763-4960 | 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 | 4/4/95 | Military |
| 54 | DeSouza, B. | 80 McCabe St. | S. Dartmouth | MA | 02748 | (508) 763-9680 | 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 | 4/5/95 | Prov. |
| 55 | Osmer, J. | 31 Arlington St. Apt. 3 | Nashua | NH | 03060 | (603) 598-2982 | 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 | 7/24/95 | Bil. |
| 56 | Dolan, J. | 19 Willowdean Ave. | W. Roxbury | MA | 02132 | (617) 323-2026 | 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 | 7/25/95 | Bil. |
| 57 | Pendleton, J | 1540 Broadway Lot 23 | Raynham | MA | 02767 | (508) 822-7740 | 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 | 7/8/96 | Bil. |
| 58 | Gilmore, M. | 24 Keith Ave. | Brockton | MA | 02301 | (508) 588-1327 | 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 | 9/23/96 | Prov. |
| 59 | Parquette, D. | 103 Hart St. | Taunton | MA | 02780 | (508) 823-7150 | 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 | 9/24/96 | Prov. |
| 60 | Spano, J. | 53 W. Chestnut St. | Brockton | MA | 02301 | (508) 559-0189 | 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 | 10/1/96 | Prov. |
| 61 | Kelley, Jr., R. | 674 Hancock St. | Abington | MA | 02351 | (781) 982-9328 | 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 | 3/25/97 | Bil. |
| 62 | Johnson, Jr., R. | 186 Wareham St. | Middleboro | MA | 02346 | (508) 946-1129 | 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 | 4/15/97 | Prov. |
| 63 | Choiniere, Jr., R | 52 Prospect St. | Attleboro | MA | 02703 | (508) 222-5776 | 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 | 12/30/98 | (Prov. |
| 64 | Crawford, H. | 4 W. Belcher Rd. | Foxboro | MA | 02035 | (508) 543-2196 | 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 | 12/31/98 | Ret. |
| 65 | Clark, D. | 7 Garden St. | Randolph | MA | 02368 | (781) 963-5737 | 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 | 1/3/99 | Ret. |
| 66 | White, A. | 95 Harvard St. | Dedham | MA | 02026 | (781) 326-4327 | 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 | 8/26/99 | |
| 67 | Kelleher, T. | 239 Winter St. | Brockton | MA | 02402 | (508) 559-5477 | 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 | 9/15/99 | Prov. |
| 68 | Winquist, P. | 21 Dingley Dell Ln. | Duxbury | MA | 02332 | (781) 834-5908 | 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 | 9/17/99 | Prov. |
| 69 | Gould, D. | 9 Boxberry Ln. | Rochester | MA | 02770 | (508) 763-9521 | 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 | 9/17/99 | Prov. |
| 70 | Morris, T. | 24 Lake St. | Rehoboth | MA | 02769 | (508) 336-6919 | 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 | 10/28/99 | Prov. |
| 71 | Hamilton, D | 8 Uncalena Rd. | W. Wareham | MA | 02576 | (508) 295-3979 | 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 | 11/9/99 | Prov. |
| 72 | Kelley, G. | 104 Brentwood Ct. | Plymouth | MA | 02360 | (508) 224-7012 | 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 | 12/22/99 | Bil. |
| 73 | Wertz, E. | 137 Lawrence St. | Brockton | MA | 02302 | (508) 588-4847 | 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 | 12/23/99 | Prov. |
| 74 | Palm, W. | 89 Lester St. | Brockton | MA | 02301 | (508) 586-6682 | 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 | 11/28/00 | Prov. |
| 75 | Zutaut, Jr. B. | 365 Grance Pk. | Bridgewater | MA | 02324 | (508) 284-3796 | 032-54-667 | 12/4/00 | Bil. |

# TEAMSTERS UNION LOCAL 25
## GRIEVANCE REPORT

COMPANY: NEW PENN MOTOR EXPRESS

NAME: CRAIG GOULET

ADDRESS: 305 COX ST. HUDSON, MA. 01749

BUSINESS AGENT'S NAME: William H. CARNES

DATE of Complaint (APRIL 7th 2003)

NATURE of GRIEVANCE: SENIORITY RIGHTS:

IN ACCORDANCE with The NATIONAL MASTER FREIGHT AGREEMENT ARTICLE #5 AND All of ARTICLE #5 SUBSECTION Along with the New ENGLAND SUPPLEMENTAL FREIGHT AGREEMENT ARTICLE # 43 – SENIORITY including All of ARTICLE 43's SUBSECTIONS, I AM FILING A GRIEVANCE AGAINST NEW PENN MOTOR EXPRESS to include ALL TIME LOST, BACK PAY, SENIORITY AND CONTRACTUAL BENIFITS UNDER THE CONTRACT AGREEMENT, (FROM MARCH 1ST 2002) UP TO AND CONTINUING PAST MARCH 1ST 2003, BASED ON AGREEMENT BETWEEN TNFINC AND NPME AS A RESULT of the CLOSURE of A. P. A. OPERATIONS

**EXHIBIT**

tabbies

M

Craig Goulet



# Teamsters Local 25
## International Brotherhood of Teamsters

544 MAIN STREET • BOSTON, MASSACHUSETTS 02129-1113 • 617-241-8825 • Fax 617-242-4284
www.teamsterslocal25.com

GEORGE W. CASHMAN
*President / Principal Officer*

RITCHIE E. REARDON
*Secretary-Treasurer*

WILLIAM H. CARNES
*Vice President / Business Agent*

JOHN A. MURPHY
*Recording Secretary / Business Agent*

MARK A. HARRINGTON
*Trustee / Business Agent*

LOU DiGIAMPAOLO
*Trustee / Director of Organizing /
Field Representative*

COLLEEN BRADY
*Trustee / Special Projects Coordinator*

ARTHUR J. LAZAZZERO
*Business Agent*

SEAN M. O'BRIEN
*Business Agent*

JAMES E. WILSON
*Business Agent*

April 18, 2003

Mr. Charles Zaccaria, Vice President
New Penn Motor Express, Inc.
Sterling Road
Post Office Box 516
Billerica, MA 01821

Dear Mr. Zaccaria:

Enclosed for your processing, please find a copy of the grievance received by Vice President/Business Agent William H. Carnes from Craig Goulet, dated April 7, 2003.

If you have any questions, please do not hesitate to contact Mr. Carnes at the above number.

Very truly yours,

GEORGE W. CASHMAN
President

WHC/mh

Enclosure: 1

C: Craig Goulet

**EXHIBIT**
N

*We will only accept deliveries from UNION carriers! All other deliveries will be refused!*

## EASTERN REGION JOINT AREA COMMITTEE

Established in accordance with the terms and conditions of the National Master Freight Agreement and the NE Supplemental Agreement, entered into by and between the Local Union and carriers engaged in City Pickup and Delivery and/or Over-the-Road Freight Operations.

DOCKET NO.  SC-21-04

IN THE MATTER OF THE DISPUTE BETWEEN

TEAMSTERS  LOCAL NO. 25
BOSTON, MA

SUBMISSION FORM

and

NEW PENN MOTOR EXPRESS, INC.

We, the undersigned, parties to the National Master Freight Agreement and the NE Supplemental Agreement, hereby agree to submit the dispute to arbitration under the Rules of Procedure prescribed by the Eastern Region Joint Area Committee, by virtue of its authority, as set forth in Article 45 and 46 of the NE  Supplemental Agreement, the following:

> On behalf of Craig Goulet, Union alleges violation of Article 32, Section 1,2, September, 2003, grievant should have been called for work at New Penn per APA/New Penn agreement; requesting grievant be returned to proper seniority.

The undersigned further agree that a majority decision of the Eastern Region Joint Area Committee in the above dispute will be final, conclusive and binding with no appeal and, further, that neither party will attempt through any overt acts, to void the decision rendered.

The undersigned also agree that failure to comply with the decision of a majority of the Committee within ten (10) days of the date of the decision will result in the loss of all contract rights, privileges and benefits due them under Article 45 of the NE  Supplemental Agreement.

| | | | |
|---|---|---|---|
| Date | July 28, 2004 | | |
| Employer | NEW PENN MOTOR EXPRESS, INC. | Local Union | 25 |
| Signed by | D. W. Schmidt, V. P. | Signed by | Mark A. Harrington, Bus. Agent |

## DECISION

The Panel, in executive session, motion made, seconded and carried, the initial docketing of this case was not within thirty (30) days; therefore, the Company's point of order is upheld. Cost Union.

R. L. SCHAEFFER
Employer Co-Secretary

JULY 28, 2004
Date

RONALD M. JENKINS
Union Co-Secretary

JULY 28, 2004
Date

