UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CRAIG GOULET )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NEW PENN MOTOR EXPRESS )<br>Defendant )<br>)<br>and )<br>)<br>TEAMSTERS LOCAL 25 )<br>INTERNATIONAL BROTHERHOOD OF )<br>TEAMSTERS )<br>)<br>Defendant, )<br>) | CIVIL ACTION<br>NO. 04-12577-JLT |

**MEMORANDUM IN SUPPORT OF DEFENDANT LOCAL 25'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE THE AFFIDAVIT OF BURTON TREBOUR**

This matter comes before the Court on the Plaintiff's Motion to Strike the Affidavit of Burton Trebour. The Defendant, Teamsters Local 25 (hereinafter, "Local 25" or "the Union", opposes the Plaintiff's Motion for the following reasons: (1) a signed affidavit, identical in form to the affidavit originally filed with the Court, has subsequently been filed with the Court; (2) at the time that it filed its Initial Disclosures pursuant to Fed.R.Civ.P. 26 (a)(1), Defendant, Teamsters Local 25 was not aware that Burton Trebour had discoverable information that it may use to support its claims or defenses; (3) at the time that it answered its Interrogatories, the Defendant, Teamsters Local 25, was not aware that Mr. Trebour had any knowledge relating to matters referred to in the pending lawsuit; and (4) the Defendant Teamsters Local 25 only became aware that Mr. Trebour might have discoverable information after the expiration of discovery.

## I.   Facts

An issue of dispute in this case is whether the Plaintiff was properly on the seniority list at the APA Transport facility in Canton, Massachusetts at the time that APA ceased operations in February 2002. The Plaintiff had been terminated for gross negligence in March 1987 as a result of an incident in which the forklift upon which he was riding fell from the loading dock. The Plaintiff's union, Teamsters Local 25 grieved the Plaintiff's termination. However, from 1987 to 2001, the Plaintiff received workers compensation, and his grievance could not be heard until he no longer was receiving workers compensation. In 2001, the Plaintiff's worker's compensation benefits were exhausted, and his termination grievance was heard by the Southern New England Joint Area Committee on October 16, 2001. Burton Trebour represented APA at this hearing.

The Southern New England Joint Area Committee held as follows:

> The Panel after hearing the case, motion made, seconded and carried that **upon submitting acceptable documentation to the Company of his ability to return to unrestricted duties, the grievant shall serve a ten (10) day suspension. Upon completion of the suspension**, he shall be reinstated to the list in his original position. (emphasis added).

The Plaintiff contends that such language instantaneously re-inserted him back into the seniority list. On the other hand, Teamsters Local 25 believed that the Plaintiff was required to produce medical documentation and serve a ten (10) day suspension prior to reinstatement onto the seniority list, and that the award was unambiguous and clear in this regard.

When this civil action commenced, the issue concerning the alleged breach of the duty of fair representation was whether the Plaintiff's grievance had been improperly handled. See Complaint. At the time that Teamsters Local 25 made its Initial Disclosures and answered the interrogatories propounded upon it, it had no reason to believe that anyone at APA may have any discoverable information concerning Teamsters Local 25's handling of the grievance.

At the deposition of Mark Harrington, counsel for the Plaintiff attempted to argued to the deponent that APA had waived the requirements necessary to be reinstated to the seniority list. See Harrington Depo, pp. 62-65.[1] Mr. Harrington believed that it was unlikely that APA would waive these requirements, but could not say for certain that it did not do so. Upon reviewing the deposition transcripts in preparation of its motion for summary judgment, the Defendant Teamsters Local 25 decided to contact someone at APA Transport in anticipation that the Plaintiff would argue that it was possible that APA Transport had waived the requirements that the Plaintiff submit medical documentation concerning his ability to return to work and then serve a ten (10) day suspension.

## II. Argument

**THE COURT SHOULD NOT STRIKE THE AFFIDAVIT OF BURTON TREBOUR AS THE DEFENDANT'S FAILURE TO NAME THE AFFIANT AS A POTENTIAL INDIVIDUAL WITH DISCOVERABLE INFORMATION RELATING TO ITS DEFENSES WAS JUSTIFIED AND HARMLESS TO THE PLAINTIFF**

Although the Court may strike an affidavit for a party's failure to name the affiant during discovery, such a sanction need not be imposed when the failure to disclose was justified and harmless to the opposing party. See Green v. Baca, 226 F.R.D. 624 (C.D. Cal. 2005); See also Wilson v. Bradlees of New England, Inc., 250 F.3d 10 (1st Cir. 2001). In the present matter, Local 25's failure to name Burton Trebour in its automatic disclosures and responses to interrogatories was justified as Local 25 did not believe that Mr. Trebour had any information relating to the Plaintiff's original claim, to wit: the Union's failure to properly process his grievance with New Penn Motor Express. However, in preparing its motion for summary judgment the Defendant realized that the Plaintiff might argue that APA had waived the requirements set forth by the Plaintiff's October 2001 arbitration decision, a claim that the Union

---

[1] Excerpts from Mark Harrington's deposition are attached hereto as Exhibit 1.
3

had not previously foreseen, and as such, had not considered part of its defense to the Plaintiff's original claim. Furthermore, as the Plaintiff cites to Mr. Trebour's affidavit in support of his opposition to the Defendants' motions for summary judgment, Local 25's failure to disclose Mr. Trebour must be seen as harmless to the Plaintiff.

    A.    **The Defendant, Teamsters Local 25 Has Filed An Identical Signed Affidavit To Replace The Previously Filed Unsigned Affidavit**

Teamsters Local 25, on January 23, 2006 originally filed the unsigned affidavit of Burton Trebour as Exhibit 10 to its Memorandum in Support of its Motion to Summary Judgment and Its Concise Statement of Material Facts. Prior to the date on which it filed its Motion for Summary Judgment, counsel for Teamsters Local 25 had spoken with Burton Trebour concerning the affidavit, and Mr. Trebour received a copy of said affidavit. Mr. Trebour informed counsel that all the information contained therein was accurate, but that he would not be available to sign the affidavit until the end of January or the beginning of February 2006 because he was out-of-state, and did not wish to sign and re-fax a facsimile copy of the affidavit. When Mr. Trebour returned home, counsel for Teamsters Local 25 sent him a non-facsimile copy of the affidavit for his signature. Subsequently, on February 13, 2006, Teamsters Local 25 filed a signed affidavit of Burton Trebour that was identical in all substantive respects to the affidavit that was originally filed with the Court. Therefore, the although the Court might disregard the originally filed unsigned affidavit, which the Defendant is seeking to have withdrawn, it should not allow the Plaintiff's Motion to Strike the newly-filed affidavit.

    B.    **The Defendant, Teamsters Local 25, Was Not Aware That Mr. Trebour May Have Discoverable Information Until After Discovery Was Completed**

Teamsters Local 25 did not include Mr. Trebour in its Initial Disclosures as a person that might have discoverable information relating to its claims or defenses in this matter nor did it include Mr. Trebour in its responses to Interrogatories. Teamsters Local 25' failure to provide

4

Mr. Trebour's name was not due to any attempt to prejudice the Plaintiff. Rather, the Defendant only became aware that Mr. Trebour might have discoverable information following discovery.

During discovery, the Plaintiff sought to induce Mark Harrington, during his deposition, to say that it was possible that A.P.A. Transport waived the requirements for the Plaintiff to be reinstated onto the APA seniority list for its Canton, Massachusetts terminal. In it attempt to answer this issues, Teamsters Local 25 determined it might be necessary to locate a former corporate APA employee that might have some knowledge relating to this issue. As such, Teamsters Local 25 contacted Mr. Trebour, who participated in the October 2001 arbitration of Mr. Goulet on behalf of APA, to determine if he possessed any information concerning whether APA waived its requirements for reinstating the Plaintiff to the seniority list. As a result of a discussion with Mr. Trebour, an affidavit was drafted and approved by Mr. Trebour in January 2006, immediately prior to the filing of its Motion for Summary Judgment. Furthermore, Teamsters Local 25 has since amended its Initial Disclosures and answers to Interrogatories to reflect that Mr. Trebour might have discoverable information. This information could not have been produced during discovery as the Defendant was not yet aware of its existence.

### C. The Plaintiff Was Not Prejudiced By Any Alleged Failure of Local 25 To Supplement Its Initial Disclosures

The Plaintiff was not prejudiced by the Defendant's failure to "disclose" Mr. Trebour as a possible person that might have discoverable information, prior to filing its Motion for Summary Judgment, which included Mr. Trebour's affidavit. The Plaintiff was not prejudiced in its ability to respond to the Defendant's Motion for Summary Judgment as it had a copy of Mr. Trebour's affidavit, and had been informed that an executed copy would follow, at the time that the Defendant filed its motion for summary judgment. Furthermore, the Plaintiff relies on this affidavit in support of its opposition to Defendant New Penn Motor Express, Inc.'s Motion for Summary Judgment.

## Conclusion

For the foregoing reasons, the Court should deny the Plaintiff's Motion to Strike the Affidavit of Burton Trebour.

For the Defendant,
**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL UNION NO. 25,**
By its attorneys,

*/s/ Kathleen A. Pennini*
Matthew E. Dwyer (B.B.O. # 139840)
Kathleen A. Pennini (b.B.O. # 654573)
Dwyer, Duddy and Facklam, P.C.
Two Center Plaza, Suite 430
Boston, MA 02108-1804
(617) 723-9777

Date:   February 28, 2006

## CERTIFICATE OF SERVICE

I, Kathleen A. Pennini, do hereby certify I have electronically filed this motion on February 28, 2006, with delivery to :

Scott Lathrop, Esq.
Scott A. Lathrop & Associates
122 Old Ayer Road
Groton, MA  01450

Carl H. Gluek, Esq.
Frantz Ward, LLP
55 Public Square Building, 19th Floor
Cleveland, OH  44113-1999

*/s/ Kathleen A. Pennini*
Kathleen A. Pennini

f:\l25\goulet\pldg\mem.opp.mot.strike.aff.burton.trebour.doc:blg

6

1

Volume I
Pages 1 to 76
Exhibits 1 to 12

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - -x
                                 :
CRAIG GOULET,                    :
        Plaintiff,               :
                                 :
    vs.                          :    Civil Action
                                 :    No. 04-12577 JLT
NEW PENN MOTOR EXPRESS, INC.;    :
and TEAMSTERS LOCAL 25,          :
INTERNATIONAL BROTHERHOOD OF     :
TEAMSTERS,                       :
        Defendants.              :
                                 :
- - - - - - - - - - - - - - - - -x

    DEPOSITION OF MARK A. HARRINGTON, a witness called on behalf of the Plaintiff, taken pursuant to the Federal Rules of Civil Procedure, before Ken A. DiFraia, Registered Professional Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the Offices of Scott A. Lathrop & Associates, 122 Old Ayer Road, Groton, Massachusetts, on Wednesday, October 12, 2005, commencing at 10:15 a.m.

PRESENT:

    Scott A. Lathrop & Associates
        (by Scott A. Lathrop, Esq.)
        122 Old Ayer Road, Groton, MA 01450,
        for the Plaintiff.

    Frantz Ward LLP
        (by Carl H. Gluek, Esq.)
        2500 Key Center, 127 Public Square,
        Cleveland, OH 44114-1230, for the Defendant
        New Penn Motor Express, Inc.

(Continued on Next Page)

PRESENT:   (Continued)

    Dwyer, Duddy and Facklam
       (by Kathleen A. Pennini, Esq.)
       Two Center Plaza, Suite 430, Boston, MA
       02108-1804, for the Defendant Teamsters
       Local 25, International Brotherhood of
       Teamsters.

ALSO PRESENT:  Craig Goulet

                \* \* \* \* \*

```
 1  Mr. Goulet?
 2       A.   No.
 3       Q.   I would also ask you to look at Exhibit 12,
 4  which is your brief dated July 22, 2004.  I believe
 5  Attorney Pennini had you look at some of the
 6  exhibits.
 7            Exhibit 1 to that brief is the decision
 8  with regard to Mr. Goulet's termination from APA,
 9  correct?
10       A.   (Examines document)  Right.
11       Q.   The date of that is October 16, 2001?
12       A.   Okay.
13       Q.   Correct?
14       A.   Yes.
15      *Q.   It's your understanding that based upon
16  this decision, APA Transport could insist that
17  Mr. Goulet submit acceptable documentation of his
18  ability to return to unrestricted duties.
19            MR. GLUEK:  Objection.
20            MS. PENNINI:  Objection.
21       Q.   Please answer the question.
22            MR. GLUEK:  What is the question?
23            MR. LATHROP:  Please read back the
24  question.
```

1            *(Question read)
2            MR. GLUEK:  Objection.  There's still no
3    question.
4       Q.   That was your understanding, correct?
5            MR. GLUEK:  Objection.
6       Q.   You still have to answer the question.
7       A.   My understanding is the award.
8       Q.   Right.  Let me read the second sentence.
9    It says, "The panel after hearing the case, motion
10   made, second carried, that upon submitting
11   acceptable documentation to the company of his
12   ability to return to unrestricted duties, the
13   grievant shall serve a ten-day suspension."  Do you
14   understand that sentence?
15      A.   Yes.
16      Q.   What's that mean to you?
17      A.   It means upon his unrestricted clearance to
18   go back to work, he would then serve a ten-day
19   suspension and then would be placed on the seniority
20   list.
21      Q.   Did you understand that the company could
22   put him on a seniority list without insisting on the
23   conditions?
24           MR. GLUEK:  Objection.  There's no

1   question.
2          MR. LATHROP:  If you listen to it, you will
3   hear the question.
4          MR. GLUEK:  No, there is no question.
5      Q.  Did you understand that APA could waive
6   those requirements?
7          MR. GLUEK:  Objection.
8      A.  No.
9      Q.  In fact, isn't that exactly what APA did?
10  APA put him on the seniority list in November of
11  2001 without him serving the suspension, correct?
12     A.  I don't know.  But they did, yes.
13     Q.  They did, didn't they?
14         MR. GLUEK:  Objection.
15     A.  (No response)
16     Q.  APA Transport put him on the seniority list
17  in November of 2001 without ever asking for or
18  seeing medical documentation, correct?
19         MR. GLUEK:  Objection.
20         MS. PENNINI:  Objection.
21     A.  I guess.
22     Q.  So Exhibit 2, the Canton seniority list for
23  November 2001, was prepared by APA Transport; is
24  that correct?

```
 1      A.   Correct.
 2      Q.   Are you saying Local 25 has the right to
 3 take someone off the APA Transport seniority list?
 4      A.   No.
 5      Q.   So if APA Transport doesn't insist on a
 6 ten-day suspension, would Local 25 insist that
 7 Mr. Goulet serve a ten-day suspension?
 8      A.   No.
 9      Q.   If APA Transport doesn't insist on medical
10 documentation, is Local 25 going to insist?
11      A.   No.  Local 25 doesn't call him to go to
12 work.
13      Q.   As of November 2001, based upon your
14 Exhibit 2 to your brief, Mr. Goulet was on the
15 seniority list in Canton for APA Transport, correct?
16      A.   I think that was the union's position in
17 the brief.
18      Q.   So the answer to the question is indeed he
19 was on the seniority list already as of November of
20 2001?
21      A.   His name was placed on a piece of paper.
22      Q.   Called the "seniority list"?
23      A.   Yes.
24      Q.   Are you telling me that Local 25 wanted to
```