UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12577 JLT

```
**************************************
CRAIG GOULET,                         *
    Plaintiff                         *
                                      *
    v.                                *
                                      *
NEW PENN MOTOR EXPRESS, INC., and     *
TEAMSTERS LOCAL 25,                   *
INTERNATIONAL BROTHERHOOD OF          *
TEAMSTERS,                            *
    Defendants                        *
**************************************
```

### PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY IN OPPOSITION TO LOCAL 25'S MOTION FOP SUMMARY JUDGMENT ALONG WITH LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(B)(3) plaintiff Craig Goulet hereby moves for leave to file the attached Sur-Reply in Opposition to defendant Teamsters Local 25's Motion for Summary Judgment. The attached Sur-Reply is necessary to address various misstatements contained in Defendant Local 25's Reply Memorandum to Plaintiff's Opposition to its Motion for Summary Judgment.

### LOCAL RULE 7.1 CERTIFICATION OF COUNSEL

Pursuant to Local Rule 7.1(A)(2) the undersigned hereby certifies that he has conferred with counsel of record for all other parties in a good faith effort to resolve or narrow the issues raised by this motion, but that counsel have not been able to agree.

1

Craig Goulet

By his attorney

*Scott A. Lathrop*

_____
Scott A. Lathrop, Esq.
Scott A. Lathrop & Associates
122 Old Ayer Road
Groton, MA 01450
(978) 448-8234
BBO No. 287820

Dated:   March 1, 2006

Certificate of Service

I, Scott A. Lathrop, hereby certify that I have served the foregoing Reply on the defendants by electronically sending a copy to the last known email address of their Attorneys of Record.

*Scott A. Lathrop*

_____
Scott A. Lathrop

Dated: March 1, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12577 JLT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CRAIG GOULET,                              \*
   Plaintiff                              \*
                                           \*
   v.                                      \*
                                           \*
NEW PENN MOTOR EXPRESS, INC., and\*
TEAMSTERS LOCAL 25,                       \*
INTERNATIONAL BROTHERHOOD OF  \*
TEAMSTERS,                                  \*
   Defendants                              \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT
TEAMSTERS LOCAL 25'S MOTION FOR SUMMARY JUDGMENT**

In its Reply to Plaintiff's Memorandum in Opposition to Defendant Teamsters Local 25's Motion for Summary Judgment, Local 25 severely misrepresents the factual record and tries to argue the facts despite this being a motion for summary judgment.

I.    Cashman Left Goulet's Name Off Of The Preference List

In its Memorandum (p. 2) first strangely tries to argue that it was not George Cashman who left plaintiff's name off of the call list that was eventually forwarded to defendant New Penn Motor Express. That is just an unwarranted claim. The record is very clear that indeed it was George Cashman who did this. It is very clear in the record that on February 22, 2002, Local 25 President George Cashman brought several documents to his Executive Assistant Janet McLaughlin and told her to fax them to Irene at the Teamsters' International Office in Washington. Cashman told her to

1

write on the cover sheet: "Per request of the Eastern Region Freight Department, attached please find seniority list (preference list) with the most up-to-date information that we have at the present time. Any questions please call."  These preference lists which McLaughlin faxed to the Teamster's International Office at Cashman's instruction do not list Goulet, despite the fact that both Francey and Harrington acknowledge that Goulet's name and preference were given to Local 25. Furthermore, Local 25's current office staff now denies ever having even seen this preference list which omits Goulet's name and was faxed to the Teamsters' International Office in Washington. (Ex. 11: Teamsters Dep. p. 7, 10,16, 18, 23, 28; Ex. 12: McLaughlin Fax)[1]

II.  <u>Teamsters Local 25 Is Only Offering Its Conjecture As To Any Justification For Cashman Leaving Goulet's Name Off Of The Preference List.</u>

Teamsters Local 25 next argues that "the only reasonable inferences that may be drawn by the factual record are that Mr. Cashman was aware of Mr. Goulet's issues when he reviewed the preference list did not believe [sic] Mr. Goulet's name should be added to the list." (Memorandum, p. 3)  To say that this is the only reasonable inference when Cashman is currently incarcerated and is not available to be deposed (Ex. 11: Teamsters Dep. p. 25) is pure conjecture and surmise on the part of defense counsel.  What the record shows is something quite different.  The record shows the following:

    A.    APA reinstated Goulet's seniority in November, 2001, without requiring Goulet to submit any documentation as to his ability to return to unrestricted duties and without requiring him to serve a ten day suspension.  (Ex. 1: Goulet Dep. p. 25)  Yet

---

[1] Record citations are to the Plaintiff's Appendix to Opposition to Motion for Summary Judgment, which already is on file.

       Cashman left Goulet's name off the preference list.

B. Several Local 25 business agents confirmed that Goulet's name had been put back on APA's seniority list. (Ex. 1: Goulet Dep. p. 28-29; Ex. 5: Carnes Dep. p. 18; Ex. 6: Harrington Dep. p. 40) Yet Cashman left Goulet's name off the preference list.

C. Doug Francey contacted all the APA employees and asked them what terminal they wanted to go to and wrote it down next to their name. Francey spoke directly with Goulet, who gave Francey his pick of New Penn terminals. Francey wrote Goulet's name on the bottom of this document and listed where Goulet wanted to go and his phone number. Francey put an arrow up the side and inserted it where Goulet's name should be on the seniority list. Goulet selected the Billerica terminal. After Francey got everyone's preference, he gave a copy of this preference list – with Goulet's name and his preference for the Billerica terminal listed on it – directly to Harrington. (Ex. 8: Francey Dep. p. 15-18, 20; Ex. 10: Francey's Preference List) Yet Cashman left Goulet's name off the preference list.

D. Harrington claims that Francey's list with Goulet's preference was provided to Local 25's office clericals, who, in turn, forwarded Francey's list (with Goulet's name on it) to the Eastern Region of the Teamsters. (Ex. 6: Harrington Dep. p. 21) Yet Cashman left Goulet's name off the preference list.

E. Harrington admitted in deposition that when APA put Goulet back on the seniority list in November, 2001, without requiring him to serve a suspension or supply medical documentation, Local 25 did not have the right to Goulet off the APA seniority list. (Ex. 6: Harrington Dep. p. 64-65) Yet Cashman left Goulet's name off

        the preference list.

F.    Carnes testified that he telephoned the manager at the Billerica New Penn terminal and told him that Goulet, an APA employee, was looking to go back to work and should be called be on the call list. (Ex. 1: Goulet Dep. p. 85, 91; Ex. 2: Goulet Errata Sheet Ex. 5: Carnes Dep. p. 21, 23-25)  Yet Cashman left Goulet's name off the preference list.

Despite defense counsel's claim that her "inference" is the only reasonable inference as to why Cashman left Goulet's name off the list, in fact during discovery none of the witnesses for Teamsters Local 25 offered any rationale as to why Cashman left Goulet's name off of the preference list he had forwarded to New Penn.  What we are hearing now is defense counsel's conjecture only. Furthermore, as noted above, there is ample evidence that Cashman should have forwarded Goulet's name to New Penn.


III.    <u>Teamsters Local 25 Mischaracterizes Goulet's Legal Argument</u>

    Next Teamsters Local 25 mischaracterizes Goulet's argument concerning this issue of Cashman leaving Goulet's name off of the preference list.  It states that there is no evidence that "Goulet's name was intentionally left off the preference list due to any arbitrary or discriminatory conduct or ill will by the Union." (Memorandum, p. 4) That is not Goulet's legal argument.  What Goulet has argued is that by leaving Goulet's name off of the call list, Teamsters Local 25 via Cashman acted both recklessly in disregard of Goulet's rights and acted in a perfunctory manner.  Such reckless disregard of and perfunctory handling of a unit employee's interests is actionable breach of duty of fair representation.  <u>Achilli v. John J. Nissen Baking Co.</u>, 989 F.2d 561, 563 (1st

Cir. 1993); Berrigan v. Greyhound Lines, Inc., 782 F.2d 295, 298 (1st Cir. 1986); Velez v. Puerto Rico Marine Management, Inc., 957 F.2d 933, 940 (1st Cir. 1992); Soto Segarra v. Sea-Land Service, Inc., 581 F.2d 291 (1st Cir. 1978); De Arroyo v. Sindicato De Trabajadores Packinghouse, AFL-CIO, 425 F.2d 281 (1st Cir.), cert. denied, 400 U.S. 877 (1970).

IV.   Teamsters Local 25 Mischaracterizes The Evidence Concerning "Mutual Agreement."

In its Memorandum (p. 5) Teamsters Local 25 now also denies that the fact that Business Agent Carnes testified that at times the parties had extended the docketing deadlines by "mutual agreement." But that is the exact language that Carnes used. Furthermore, Teamsters Local 25 now denies that Carnes further testified that New Penn and Local 25 had not agreed to any extension of the time lines within which actions had to be taken with regard to Goulet's grievance. But again, that is exactly what Carnes testified to. (Ex. 5: Carnes Dep. p. 8, 45)  Defense counsel would also have the Court believe that Carnes testified to a "past practice." But nowhere in his deposition did Carnes ever use such a phrase. (Ex. 5: Carnes Dep. )  Defense counsel cannot put her own spin on the record evidence, especially when it is her motion for summary judgment that is before the Court.

V.   It Is Not Undisputed As To The Reasons Why Local 25 Docketed Goulet's Grievance Late.

Next Teamsters Local 25 argues that it is undisputed that the reason why Carnes and Harrington docketed Goulet's grievance beyond the allowable deadlines is because they "believed that Mr. Goulet's grievance lacked merit." (Memorandum, p. 6)  That is hardly undisputed in the record. The is evidence in the record that Carnes and Harrington knew Goulet's grievance was meritorious.  For example, there is evidence in the record that Carnes  telephoned the manager at

the Billerica New Penn terminal and told him: "I have an APA employee who's looking to go back to work." Carnes identified Goulet by name. The New Penn terminal manager told Carnes to go fuck himself. (Ex. 5: Carnes Dep. p. 21, 23-25)

Furthermore, there is evidence in the record that Carnes had several conversations with the New Penn about calling Goulet to work. New Penn first told Carnes that Goulet's name was not on the seniority list. Carnes said that indeed Goulet's name was on the seniority list. Carnes even showed New Penn the APA seniority list with Goulet's name on it. New Penn then admitted that Goulet was on the seniority list, but then claimed that Goulet was collecting worker's compensation. Carnes told New Penn that Goulet was no longer collecting worker's compensation at that time. (Ex. 1: Goulet Dep. p. 85, 91; Ex. 2: Goulet Errata Sheet)

There is evidence in the record that Harrington (while now wanting to say that he believed Goulet's grievance lacked merit) also admitted under oath that he knew that APA had put Goulet back on the seniority list in November, 2001, without requiring him to serve a suspension or to supply medical documentation. Harrington further admitted that Local 25 does not have the right to take someone off the APA seniority list. (Ex. 6: Harrington Dep. p. 64-65) So his new found claim that Goulet's grievance lacked merit and that that is the reason why he docketed Goulet's grievance late (and thereby caused it to be denied) is totally disputed.

VI.     Teamster Local 25 Only Raises Disputes Of Fact Concerning Goulet's Ability To Work

As noted in Goulet's original Opposition to Teamsters Local 25's Motion for Summary Judgment, APA terminated Goulet's employment on March 12, 1987. (Ex. 1: Goulet Dep. p. 14-15) Not till eight years later – in 1995 – was Goulet deemed eligible for Social Security Disability

benefits when by then his impairments included dysthymia [depression], personality disorder, low back pain, status post rotator cuff tear, right knee pain, and alcohol dependence. And as noted in Goulet's Social Security Administration file, his depression, personality disorder and alcohol dependence are a function and result of Goulet having been fired and not been able to work since then. (Ex. 1: Goulet Dep. p. 20; Ex. 25: Decision of Social Security Administration, dated August 21, 1995; Ex. 26: Consultative Examination Report of Stephan Simonian, M.D., dated May 2, 2003)

Despite the foregoing evidence, Teamsters Local 25 wants to argue in its Reply Memorandum that as a "Matter of Law" Goulet is unable to show that he was able to work. (Memorandum, p. 7) But defense counsel is not arguing the law; she is arguing the facts. And the Social Security Administration records show that Goulet was not deemed eligible for disability benefits until he had been out of work so long that he began to also suffer from depression, personality disorder and alcohol dependence. Therefore it is quite consistent for Goulet to contend that if he had been offered work by defendant New Penn Motor Express (as it was obligated to do), major causes for his disability would have been eliminated and Goulet would have been able to return to work. As Goulet testified, had New Penn called Goulet back to work sometime between March 1, 2002, and March 30, 2003, he would have tried to work 30 days in a two month period in order to gain seniority at New Penn as several other APA employees had done. He would have made every effort to go to work and get clearance from the doctors. (Ex. 1: Goulet Dep. p. 80, 104-105; Ex. 2: Goulet Errata Sheet)[2]

---

[2] In a footnote, counsel for Teamsters Local 25 baldly claims that Goulet did not timely send his errata sheet to the deposing party in the time agreed to. That is false and misleading. The parties agreed that Goulet had 45 days after receipt of the transcript to sign his deposition. (Ex. 1: Goulet Dep. p. 4) Goulet signed the errata sheet on December 21, 2005. (Ex. 2: Goulet Errata Sheet) Counsel for Goulet did not receive a copy of his deposition until November 8, 2005. Therefore Goulet signed his

Defense counsel should save her arguments for the jury inasmuch as she is just arguing the facts.

**WHEREFORE** Teamsters Local 25's motion for summary judgment should be denied.

    Craig Goulet

    By his attorney

    */s/ Scott A. Lathrop*
    _____
    Scott A. Lathrop, Esq.
    Scott A. Lathrop & Associates
    122 Old Ayer Road
    Groton, MA 01450
    (978) 448-8234
    BBO No. 287820

Dated: March 1, 2006

### Certificate of Service

I, Scott A. Lathrop, hereby certify that I have served the foregoing Reply on the defendants by electronically sending a copy to the last known email address of their Attorneys of Record.

    */s/ Scott A. Lathrop*
    _____
    Scott A. Lathrop

Dated: March 1, 2006

---

deposition within 43 days of his counsel's receipt of his deposition. Furthermore, the defendants have waived any objection they might have to the fact that Goulet might not have provided reasons for his changes by waiting over two months to even raise the issue.