UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12577 JLT

```
*****************************************
CRAIG GOULET,                           *
    Plaintiff                           *
                                        *
    v.                                  *
                                        *
NEW PENN MOTOR EXPRESS, INC., and       *
TEAMSTERS LOCAL 25,                     *
INTERNATIONAL BROTHERHOOD OF            *
TEAMSTERS,                              *
    Defendants                          *
*****************************************
```

**PLAINTIFF'S OPPOSITION TO DEFENDANT NEW PENN MOTOR EXPRESS'
MOTION FOR LEAVE TO FILE REPLY
<u>IN SUPPORT OF SUMMARY JUDGMENT</u>**

Plaintiff Craig Goulet hereby opposes the Motion of Defendant New Penn Motor Express for Leave to File Reply in Support of its Motion for Summary Judgment. The basis for this Opposition is that the Defendant in its Reply only further mischaracterizes the record and argues the facts of the case, neither of which are appropriate in the context of summary judgment.

In the alternative, if the Court were to grant Defendant such leave, the Plaintiff hereby requests similar leave to file the attached Sur-Reply to Defendant New Penn Motor Express's Reply in Support of its Motion for Summary Judgment.

**WHEREFORE** defendant New Penn Motor Express' Motion for Leave to File Reply in Support of Summary Judgment should be denied.

1

Craig Goulet

By his attorney

_____
Scott A. Lathrop, Esq.
Scott A. Lathrop & Associates
122 Old Ayer Road
Groton, MA 01450
(978) 448-8234
BBO No. 287820

Dated: March 1, 2006

### Certificate of Service

I, Scott A. Lathrop, hereby certify that I have served the foregoing Reply on the defendants by electronically sending a copy to the last known email address of their Attorneys of Record.

_____
Scott A. Lathrop

Dated: March 1, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12577 JLT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CRAIG GOULET,                            \*
   Plaintiff                             \*
                                          \*
   v.                                    \*
                                          \*
NEW PENN MOTOR EXPRESS, INC., and\*
TEAMSTERS LOCAL 25,                      \*
INTERNATIONAL BROTHERHOOD OF             \*
TEAMSTERS,                               \*
   Defendants                            \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT
NEW PENN MOTOR EXPRESS' REPLY IN SUPPORT OF
<u>ITS MOTION FOR SUMMARY JUDGMENT</u>**

In its Reply Brief in Support of its Motion for Summary Judgment, New Penn Motor Express severely misrepresents the factual record and tries to argue the facts despite this being a motion for summary judgment.

I.   <u>Goulet Has Presented Evidence Of New Penn's Breach of Contract</u>

In its Reply Brief (p. 2), New Penn claims that the "uncontroverted evidence demonstrates as a matter of law that New Penn has fully complied with the CBA." The problem with New Penn's argument is the word "uncontroverted." The evidence on this issue is fully controverted, as summarized below.

      A.      On February 13, 2002, the Teamsters negotiated an Agreement with defendant New

1

        Penn Motor Express whereby each APA employee had the right to place his name on a call list for New Penn. (Ex. 9: Teamsters & New Penn Agreement)[1]

B.     In the spring of 2002 Goulet contacted Business Agent Carnes about being on the New Penn call list. Carnes said that he was going to look into it. Goulet reminded Carnes that he had been placed back on APA seniority list. (Ex. 1: Goulet Dep. p. 38, 44)

C.     Carnes also recalled that Goulet had called sometime after the agreement was made with New Penn, saying that he wished to be on a call list for New Penn, that he wanted to be put back to work at New Penn and that he wanted Carnes to help him. As a result Carnes called New Penn. Carnes then telephoned the manager at the Billerica New Penn terminal and told him: "I have an APA employee who's looking to go back to work." Carnes identified Goulet by name. The New Penn terminal manager told Carnes to go fuck himself. (Ex. 5: Carnes Dep. p. 21, 23-25)

D.     According to Goulet, Carnes said he had several conversations with the New Penn about calling Goulet to work. New Penn first told Carnes that Goulet's name was not on the seniority list. Carnes said that indeed Goulet's name was on the seniority list. Carnes even showed New Penn the APA seniority list with Goulet's name on it. New Penn then admitted that Goulet was on the seniority list, but then claimed that Goulet was collecting worker's compensation. Carnes told New Penn that Goulet was no longer collecting worker's compensation at that time. (Ex. 1: Goulet

---

[1] Record citations are to the Plaintiff's Appendix to Opposition to Motion for Summary Judgment.

        Dep. p. 85, 91; Ex. 2: Goulet Errata Sheet)

E.    New Penn never called Goulet for work despite the fact it had exhausted all the names on the call list and despite the fact that its Agreement with the Teamsters provided that:

"If during the term of the current 1998 - 2003 NMFA, but not later than March 31, 2003, the list of former A.P.A. NMFA employees at any terminal is exhausted, those A.P.A. NMFA employees on other terminal lists in that local supplement, who have not obtained seniority at NPME, will be offered a second opportunity to place their name on the call list of such terminal." (Ex. 3: Dubiel Dep. p. 33; Ex. 9: Teamsters & New Penn Agreement)

F.    In answer to Interrogatory Nos. 7 and 23, New Penn admitted that it had received the APA Canton Seniority List for November, 2001 (which list contained Goulet's name on it) prior to March 1, 2002, at its corporate office from APA. (Ex. 15: New Penn Answers to Interrogatories)

Now New Penn indeed contends that it did not breach the Collective Bargaining Agreement and that it did not have notice, from Teamsters Local 25 or otherwise, of Goulet's existence and desire to be put to work, but the above evidence is to the contrary.

Lastly, New Penn's last desperate argument is that even if Carnes had provided New Penn with notice of Goulet's existence and desire to be put to work at New Penn, its refusal to do so was not a violation of the collective bargaining agreement because the notice was not in writing. (Memorandum, p. 4). When the evidence shows that the New Penn terminal manager told Carnes to go fuck himself in response to this notice, it remains for a jury to decide under the circumstances of this case whether the lack of written notice excuses New Penn from performing under the contract. Furthermore, it is separately admitted by New Penn that it had received the "written" APA

Canton Seniority List for November, 2001, which list contained Goulet's name on it.

So again, New Penn is arguing the evidence, not the law.

II.     Goulet Has Presented Evidence Of Damages

In its Reply Brief, New Penn asserts that: "In order to survive summary judgment, Plaintiff must prove that he was physically able to perform dock work during the relevant time period. *See, e.g., Acevedo v. Coatings, Inc.,* 286 F.Supp.2d 107 (Dist. P.R. 2003)." (Reply Brief, p. 4) There are multiple things wrong with this argument.

First, we are at the summary judgment stage. Therefore a plaintiff need not "prove" anything. Rather, a plaintiff has to be able to present evidence in support of his claim. And Goulet has presented evidence in support of his contention that he would have been able to perform work for New Penn. To summarize, Goulet has presented the following evidence (which New Penn obviously disputes):

A.  APA terminated Goulet's employment on March 12, 1987. (Ex. 1: Goulet Dep. p. 14-15)

B.  Not till eight years later – in 1995 – was Goulet deemed eligible for Social Security Disability benefits when by then his impairments included dysthymia [depression], personality disorder, low back pain, status post rotator cuff tear, right knee pain, and alcohol dependence. And as noted in Goulet's Social Security Administration file, his depression, personality disorder and alcohol dependence are a function and result of Goulet having been fired and not been able to work since then. (Ex. 1: Goulet Dep. p. 20; Ex. 25: Decision of Social Security Administration, dated August 21,

>   1995; Ex. 26: Consultative Examination Report of Stephan Simonian, M.D., dated May 2, 2003)
>
> C.  As Goulet testified, had New Penn called Goulet back to work sometime between March 1, 2002, and March 30, 2003, he would have tried to work 30 days in a two month period in order to gain seniority at New Penn as several other APA employees had done. He would have made every effort to go to work and get clearance from the doctors. (Ex. 1: Goulet Dep. p. 80, 104-105; Ex. 2: Goulet Errata Sheet)[2]

Thus Goulet has presented evidence, admittedly disputed by New Penn, that he could have gone back to work.

Second, New Penn claims that Goulet has to prove that he could perform "dock work." But there is no such requirement. New Penn has drivers and dock workers. Goulet has certain medical issues. But as he has testified, Goulet was able to drive a truck. In fact, he still has a current commercial drivers license. (Ex. 1: Goulet Dep. p. 57, 70-73; Ex. 2: Goulet Errata Sheet)

Third, the case cited by New Penn does not stand for the proposition New Penn claims. The case of <u>Acevedo v. Coatings, Inc</u>., 286 F.Supp.2d 107 (Dist. P.R. 2003), was not a summary judgment case. Furthermore, in that case (which went to trial) the court specifically noted that in the context of ADA plaintiffs, courts have held that a claim of disability for purposes of social security benefits does not necessarily preclude plaintiff from asserting that she is capable of performing her job with reasonable accommodation. However, a plaintiff must explain why the

---

[2] In a footnote, New Penn argues for the first time that Goulet's errata sheet is defective because it does not have reasons listed for the changes and additions made. The defendants, however, have waived any objection they might have to the fact that Goulet might not have provided reasons for his changes by waiting over two months to even raise the issue.

representation of total disability she made to the social security administration is consistent with the claim that she could perform the essential functions of her job with reasonable accommodation. Id. at 116.

In the instant case, Goulet is not precluded from asserting that he could have performed work as a driver for New Penn. And he has offered a rationale, noted above, as to why he could have performed that work.

Furthermore, in its Reply Brief (p. 5), New Penn has actually afforded further evidence in support of Goulet's contention that if New Penn had offered him work as it was required to do, he would have been able to perform it. As New Penn notes, in 1995 (seven years before the events at issue in this case) the Social Security Administration "reversed its prior denials of social security benefits" and awarded him benefits. As Goulet contends, this reversal was due to the fact after eight years of unemployment, Goulet then had not have just some physical problems, but he also had depression, personality disorder and alcohol dependence which the Social Security Administration specifically concluded were a function and result of Goulet having been fired and not been able to work since 1987. (Ex. 1: Goulet Dep. p. 20; Ex. 25: Decision of Social Security Administration, dated August 21, 1995; Ex. 26: Consultative Examination Report of Stephan Simonian, M.D., dated May 2, 2003)

Thus, as much as New Penn does not want hear it, Goulet has provided a rationale as to why he could have performed work as a driver, if nothing, else for New Penn if it had offered him the work.

New Penn, much like defendant Teamsters Local 25, is arguing the evidence, not the law.

**WHEREFORE** New Penn Motor Express' motion for summary judgment should be denied.

                                          Craig Goulet

                                          By his attorney

                                          /s/ Scott A. Lathrop

                                          _____
                                          Scott A. Lathrop, Esq.
                                          Scott A. Lathrop & Associates
                                          122 Old Ayer Road
                                          Groton, MA 01450
                                          (978) 448-8234
                                          BBO No. 287820

Dated: March 1, 2006

                                    <u>Certificate of Service</u>

I, Scott A. Lathrop, hereby certify that I have served the foregoing Reply on the defendants by electronically sending a copy to the last known email address of their Attorneys of Record.

                                          /s/ Scott A. Lathrop

                                          _____
                                          Scott A. Lathrop

Dated: March 1, 2006