## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **CRAIG GOULET** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **NEW PENN MOTOR EXPRESS** ) | |
| **Defendant** ) | |
| ) | |
| **and** ) | |
| ) | |
| **TEAMSTERS LOCAL 25** ) | |
| **INTERNATIONAL BROTHERHOOD OF** ) | |
| **TEAMSTERS** ) | |
| ) | **CIVIL ACTION** |
| **Defendant,** ) | **NO. 04-12577-WGY** |

### TRIAL MEMORANDUM OF DEFENDANT, TEAMTERS LOCAL 25, INTERNATIONAL BROTHERHOOD OF TEAMSTERS

### I.     BACKGROUND INFORMATION

The Plaintiff, Craig Goulet, ("hereinafter "Goulet" or "the Plaintiff) began working for A.P.A. Transport Company (hereinafter, "APA") In or about October 1986 A.P.A. was a corporation engaged in the trucking business, with several terminals, including terminals in Canton, Massachusetts, and Dracut Massachusetts. Employees at A.P.A.'s Canton and Dracut facilities, at all times relevant, were represented by Local 25 in Boston, Massachusetts.

On March 11, 1987, while an employee of APA, the Plaintiff injured himself while he was unloading freight from a truck with a forklift and the truck pulled away from the loading dock, causing Mr. Goulet, while still on the forklift, to fall from the loading dock. A.P.A. determined that the accident was caused by the gross negligence of

1

Mr. Goulet, and terminated Mr. Goulet's employment on March 12, 1987.    Teamsters

Local 25 filed a grievance challenging Mr. Goulet's termination.

Mr. Goulet received workers compensation benefits as a result of the injuries he

suffered on March 11, 1987.  In June 1987, Judge Scannell of the Massachusetts

Department of Industrial Accidents, found that Mr. Goulet should receive partial

disability benefits as a result of the injuries that Mr. Goulet suffered on March 11, 1987.

Mr. Goulet received partial worker's compensation benefits from 1987 through

December 14, 2000, at which time his worker's compensation benefits were terminated

because he had received the maximum of 600 weeks of benefits allowed by

Massachusetts law. The Plaintiff's grievance was held in abeyance while he received

worker's compensation benefits.  In 2001, Mr. Goulet informed Local 25 that his workers

compensation benefits had been exhausted.

On October 16, 2001, Mr. Goulet's grievance concerning his March 1987

termination was heard by the Southern New England Joint Area Committee.    The

decision of the New England Joint Area Committee stated:

> The Panel after hearing the case, motion made, seconded
> and carried that **upon submitting acceptable
> documentation** to the Company of his ability to return to
> unrestricted duties, **the grievant shall serve a ten (10) day
> suspension**.  **Upon completion of the suspension, he shall
> be reinstated** to the list in his original position. (emphasis
> added).

Mr. Goulet never submitted any documentation to APA concerning his ability to

return to unrestricted duties or served a ten (10) day suspension for APA.  As such, Mr.

Goulet never completed the prerequisites necessary to have his name returned to the APA

seniority list in his original position.

Despite Mr. Goulet's failure to perform the actions required for his name to be returned to the APA seniority list for the Canton, Massachusetts facility, Mr. Goulet's name nonetheless appeared on the APA's seniority list dated November 2001.    APA's corporate office returned Mr. Goulet's name to the corporate seniority list because it anticipated that Mr. Goulet would be returning to work, shortly following the decision of the Southern New England Joint Area Committee in October 2001, and not because it had waived the requirements set forth for the Plaintiff's re-employment in the arbitration award.

On or about February 14, 2002, APA Transport announced that it would be ceasing operations.  Mr. Goulet was not working at APA when it announced that it was ceasing operations or when its operations actually ceased.  As for February 14, 2002, Mr. Goulet had yet to receive medical clearance to return to work or serve his ten (10) days suspension.

An agreement was negotiated by APA Transport, New Penn Motor Express, and the Teamsters National Freight Industry Negotiating Committee (hereinafter, "TNFINC") whereby employees of APA would be allowed to place their names on a call list to work for New Penn Motor Express.  Employees of APA were given approximately one (1) week to relate their terminal preferences for NPME terminals.    According to the terms of the agreement reached by New Penn Motor Express, Inc. (hereinafter, "New Penn" or "NPME"), in order for an APA employee to receive seniority at New Penn, such an employee needed to work thirty (30) days within a two (2) month period between March 1, 2002 and March 31, 2003.

3

The Plaintiff's name did not appear on these lists. At APA's Canton, Massachusetts facility, the Union's steward, G. Douglas Francey (hereinafter, "Doug Francey" or "Francey"), gathered the employees' preferences concerning for which New Penn terminal they wished to have their names placed on the call list. In order to compile such list, Mr. Francey took the seniority list for the Canton facility and attempted to ask each person whose name appeared on this list, for which New Penn terminal they wished to have their name placed on the call list.

Mr. Goulet became aware that APA was closing in February 2002. After Mr. Goulet learned that APA was closing, he called Mr. Francey because he knew that Mr. Francey was the Union steward at the APA facility in Canton, Massachusetts. Mr. Goulet told Mr. Francey that he wished to be placed on the call list for New Penn's Billerica terminal. As Mr. Goulet's name did not appear on the list that Mr. Francey was using for listing preferences, Mr. Francey handwrote Mr. Goulet's name and preference at the bottom of his list.

Mr. Goulet filed a grievance against New Penn with the Union dated, April 7, 2003, alleging that New Penn had violated the contract by failing to call him from the call list. When Mr. Goulet spoke with William Carnes, the then Union business agent for New Penn employees about filing this grievance, he did not inform Mr. Carnes that he had never complied with the terms of the October 16, 2001 arbitration decision. If Mr. Carnes had been aware that the Plaintiff had not complied with the terms of the SNEJAC's decision, he would have told the Plaintiff that he was not entitled to have been called from the call list.

4

The National Master Freight Agreement (hereinafter, "NMFA") requires, in Article 46, Section 1 (h), that employees initiate grievances within thirty (30) days after becoming aware of the facts on which their grievances are based. Although the NMFA dictates that grievances are to be docketed within thirty (30) days from the date on which a grievance is filed with the Local Union, in practice this time frame has seldom been enforced by the employer. It was common practice for Local 25 and New Penn to extend the time period docketing grievances, sometimes even for several months. When Local 25 had grievances with New Penn, the parties would ordinarily attempt to settle the grievance through phone calls, and if the phone calls were not successful at settling the matter, meetings with the grievant and terminal manager were held before resorting to docketing the grievance with the appropriate grievance committee. As this process nearly always took greater than thirty (30) days to complete, grievances were often docketed more than thirty (30) days after their accrual.

Upon the retirement of Mr. Carnes, Mark Harrington became the Union's business agent for New Penn employees. When Mr. Goulet spoke with Mr. Harrington in May 2003, Mr. Harrington asked him whether he had fulfilled the requirements of the October 16, 2001 arbitration decision because otherwise he would not have been eligible to have been placed on the call list. The Union believed that his grievance lacked merit because the Plaintiff had not fulfilled the requirements of the October 2001 decision and remained physically incapable of returning to work. By letter dated July 25, 2003, Mr. Goulet wrote the following to Mr. Harrington:

> Let's not lose sight of the real issue here. This grievance is about seniority rights under the agreement, not weather (*sic*) one is capable of working or not.

5

As seen by the content of the Plaintiff's letter to the Union, the Plaintiff was clearly aware that the Union felt that his grievance lacked merit. However, the Plaintiff's persisted in his insistence that his grievance be docketed, even if it was meritless. Mr. Harrington ultimately docketed the Plaintiff's grievance to satisfy the Plaintiff's demands, not because the Union believed he had a meritorious grievance.

In 1995, the Plaintiff began receiving social security disability benefits retroactive to 1987. The Plaintiff continues to receive social security disability benefits at the present time. Despite the fact that he has continuously received social security disability benefits since 1995, including the period March 1, 2002 through March 31, 2003.

The Plaintiff still claims that he suffers from a variety of physical injuries that significantly limited his ability to function and work. As of October 4, 2005, the Plaintiff claimed that he was still suffering from a herniated disk in his lower back and a herniated disk in his neck, and had issues with a ligament in his knee. He stated that the herniated disk in his back occasionally affects his ability to sit and negatively affects his ability to lift, turn and bend, and that he was awaiting surgical reconstruction of his knee. The Plaintiff has represented himself as totally disabled and unable to work and admitted that he did not know whether he would be able to perform dock work, at the present time, due to the functional limitations of his injuries. In fact, the Plaintiff has not held any employment since his accident at APA on March 11, 1987.

## II.    ARGUMENT

A union breaches its duty of fair representation only when its conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. Miller v. United States Postal Service, 985 F.2d 9, 11 (1st Cir. 1993); quoting Vaca v.

Sipes, 386 U.S. 171, 190 (1967). Union action is arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." Id.; quoting Air Line Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 67 (1991). This standard requires the court to examine objectively the competence of the union's representation. Emmanuel v. International Brotherhood of Teamsters, Local Union No.25, 426 F.3d 416, 419 (1st Cir. 2005); See Neal v. Newspaper Holdings, 349 F.3d 363, 369 (7th Cir. 2003). In performing the objective evaluation, the Court must accord the union's conduct substantial deference. Emmanuel v. International Brotherhood of Teamsters, Local Union No.25, supra F.3d at 420; See Air Line Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 79 (1991). This standard of review recognizes that unions must have ample latitude to perform their representative functions. Miller, supra, 985 F.3d at 12.

In order to prevail on a claim of breach of contract (§ 301)/ duty of fair representation claim, the Plaintiff must show that "the employer's actions must have violated the terms of the collective bargaining agreement and the union must have breached its duty of fair representation. Miller v. United States, 985 F.2d 9, 11 (1993) citing Teamsters v. Terry, 494 U.S. 558, 564 (199); Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570-571 (1976). As these claims are "inextricably linked," Demars v. General Dynamics Corp., 779 F.2d 95, 97 (1st Cir. 1985), the failure to prove either claim results in a failure of the entire hybrid action. Miller, supra 985 F.2d at 11; See DelCostello v. Teamsters, 462 U.S. 151, 164-165 (1983).

**A.    Mere Negligence In Failing To Ensure The Plaintiff's Name Was On The Call List Does Not Constitute A Breach Of The Duty Of Fair Representation By The Union**

While arbitrary conduct is a breach of a union's duty, the test for determining whether conduct is arbitrary can be quite forgiving.  Courts should not substitute their judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call.   Furthermore, simple negligence or erroneous judgment by the Union are not sufficient to demonstrate a breach of the duty of fair representation.  Miller, 985 F.2d at 12; Best v. Rome, 858 F.Supp. 271, 274 (D.Mass 1994).  Only egregious disregard for union members' rights will constitute a breach of the union's duty.  See Garcia v. Zenith Elecs. Corp., 58 F.3d 1171, 1176 (7th Cir. 1995).

Mr. Goulet, heard of the impending closure of APA and the agreement between TNFINC and New Penn he called Mr. Francey, and informed Mr. Francey that he wished to be placed on the call list for New Penn's Billerica, Massachusetts terminal.   The Plaintiff's name did not appear on the list that Mr. Francey, a long-term APA employee in Canton, believed to be the terminal's seniority list and on which he was gathering employees' terminal preferences.   Despite this, Mr. Francey handwrote Mr. Goulet's name and terminal preference at the bottom of the preference list. Nonetheless, the Plaintiff's name was not placed on the call list that was ultimately submitted to New Penn.  The fact that the Plaintiff's name did not appear on the call list does not thereby render the Union in breach its duty of fair representation unless it can be said that the Plaintiff was contractually entitled to be on the call list, and also, that Local 25's failure to have his name placed on the call list was the product or arbitrary, discriminatory, or bad faith conduct.  Mere negligence on the part of the union is not sufficient misconduct

to support a duty of fair representation claim.  <u>Grant v. Burlington Industries</u>, 832 F.2d 76, 79 (7th Cir. 1987).

There is a substantial dispute between the parties as to whether the Plaintiff, who had never satisfied the prerequisites of the October 2001 arbitration decision, was contractually entitled to be restored to employment and the APA seniority list in light of his ongoing physical disability and his failure to submit medical evidence of his fitness to return to unrestricted duties.  Moreover, the Plaintiff has no factual evidence that would indicate that Local 25's failure to ensure that his name appeared on the call list was anything more than a simple inadvertence.  It is possible that a simple clerical error may be to blame for the Plaintiff's name not appearing on New Penn's call list.  Although the Plaintiff contends that Local 25's failure to ensure that his name appeared on the call list was evidence of "bad faith" or as the result of personal animus against him, he has no evidence of any bad faith or animus against him by the Union or any of its agents. Rather, the evidence shows quite the opposition.  Only four (4) months prior to the closure of APA, Local 25 had represented the Plaintiff at his arbitration concerning his termination from APA for gross negligence.

### B. The Union's Failure To Docket The Grievance Within Thirty (30) Days Is Not Arbitrary As The Union Was Entitled To Rely On The Parties Past Practice Of Waiving Time Limitations And, In Any Case. There Is No Evidence That Plaintiff's Grievance Was Meritorious

The Union's failure to timely docket a grievance with the appropriate grievance committee is not sufficiently arbitrary to constitute a breach of the Union's duty of fair representation.  In a situation where the Union "acted in good faith and reasonable reliance on past practice" of the parties' waiving of deadlines established by the collective bargaining agreement, the failure to timely file a grievance will not be considered to be

9

arbitrary.   See Giordano v. Local 804, International Brotherhood of Teamsters,634 F.Supp. 953, 956 (S.D.N.Y. 1986).

In this matter, the Union relied on the parties' past practice of waiving the docketing deadlines for grievances against New Penn. In the past, New Penn permitted Local 25 to docket unresolved grievances months after the grievances were received by the Union so that the parties could try to resolve outstanding grievances without resorting to arbitration.   The Union, in good faith, relied on this past practice and attempted to informally resolve this issue.   The Union could not have known that New Penn would depart from past practice in this instance. Therefore, the Union's failure to timely file Mr. Goulet's grievance, assuming, *arguendo,* that it was even meritorious, does not constitute a breach of its duty of fair representation.

The Union was entitled to rely on past practice concerning the discussion and settlement of grievances with New Penn.   See Giordano, 634 F. Supp at 956.   If New Penn had followed its past practice concerning the resolution of grievance, grievance would not have been dismissed on timeliness grounds although it would likely have been denied on its merits.   Therefore, the Union's processing and docketing of the grievance was not perfunctory arbitrary and discriminatory.

**C. The Union's Conduct Is Not Arbitrary**

In administering the grievance and arbitration machinery, a union must be permitted, in good faith and in a non-arbitrary manner, to make decisions as to the merits of particular grievances.   See Humphrey v. Moore, 375 U.S. 335, 349-350 (1964). The Union, and not the courts, have the power and duty to decide whether and in what manner a particular grievance should be pursued.   Emmanuel v. International Brotherhood of

Teamsters, Local Union No.25, 419 F.3d. 416 (1st Cir. 2005); Patterson v. International Brotherhood of Teamsters, Local 969, 121 F.3d 1345, 1349-1350 (9th Cir. 1997).

A union's representation of its members is not expected to be without errors. Hines v. Anchor Motor Freight, 42 U.S. 554, 571 (1976). As such, mere negligent conduct by the union does not constitute a breach of the duty of fair representation. Peterson v. Kennedy, 771 F.2d at 1253. Allowing a union to not be held liable for ordinary acts of negligence reflects a balance of the union's organizational interests against the individual interests of its members in which the Supreme Court and other courts have found that the balance should be tipped in favor of the Union. See Peterson v. Kennedy, 771 F.2d at 1255.

In order to be actionable as a breach of the duty of fair representation, the union's conduct must be "so egregious as to be 'arbitrary.'" Peterson v. Kennedy, 771 F.2d at 1253. Courts may find a union's conduct is "arbitrary" when it ignores a meritorious grievance or handles a meritorious grievance in a perfunctory manner. See Sarnelli v. Amalgamated Meat Cutters & Butchers Workmen of N.A., 457 F.2d 807, 808 (1st Cir. 1972); Peterson v. Kennedy, 771 F.2d at 1254. A union's unintentional mistake may be considered arbitrary, rather than merely negligent only where "the individual interest is strong and the union's failure to perform a ministerial act completely extinguishes the employee's right to pursue his claim. Peterson v. Kennedy, 771 F.2d at 1254, quoting Dutrisac v. Caterpillar Tractor Co., 749 F.2d 1270, 1274 (9th Cir. 1983). A union's failure to timely file a grievance after it had been decided that the grievance was meritorious would constitute arbitrary conduct by the Union. Peterson v. Kennedy, 771 F.2d at 1254.

11

The Plaintiff cannot prove a breach of the duty of fair representation "merely from the fact that the Union did not present a timely request for arbitration of his grievance." Plumley v. Southern Container, Inc., 2001 WL 1188469 (D.Me. 2001). Rather, the Plaintiff must also prove that his case was meritorious, that is, that it was more likely than not that if his case had been docketed in thirty (30) days, the panel would have found in his favor. See id. The Plaintiff here can prove no such thing. The evidence reflects that the Plaintiff knew he was not receiving any calls starting in March 2002, and yet he filed no grievance for more than thirteen (13) months, after the call list had expired, thereby dooming his case to certain failure regardless of when the case was docketed. Furthermore, he would not have been eligible to become a permanent employee of New Penn Motor Express because he would not have been able to work thirty (30) days in a consecutive two (2) month period as required by the agreement between New Penn and TNFINC. In December 2002, the Plaintiff informed the Social Security Administration that was completely disabled and unable to work. This submission was made while the call list was in effect and only months before it expired. The Plaintiff has no evidence that he was capable of working at least thirty (30) days in a two (2) consecutive month period, during the four (4) months remaining for which the call list was in effect, even if Social Security regulations did allow him to "try" to work. As such, the Plaintiff would not have been able to acquire status as a regular or 'permanent' New Penn employee.

To establish a breach of the duty of fair representation, "it must be shown that the handling of the grievance was itself materially deficient." Early v. Eastern Transfer, 699 F.2d 522, 556 (1st Cir. 1983). A union does not acquire liability for its decisions and

judgment calls concerning whether to pursue a grievance as long as the union's decision has a reasonable basis. <u>Poole v. Budd Company</u>, 706 F.2d 181, 184 (6th Cir. 1983). The judgments made by the Union concerning the Plaintiff's grievance are supported by reasonable, rational, and nondiscriminatory rationale.

A union does not act arbitrarily merely because it errs in interpreting a particular provision of a collective bargaining agreement or where a union reasonably disagrees with an employee's interpretation of a collective bargaining agreement. <u>Peterson v. Kennedy</u>, 771 F.2d 1244, 1254 (9th Cir. 1985); <u>Miller</u>, 792 F.Supp. at 6 citing <u>Bache v. AT & T</u>, 840 F.2d 283, 291 (5th Cir. 1988). As long as the Union's decision was based on rational criteria, the employee's claim must fail. <u>Miller</u>, 792 F.Supp. at 6, citing <u>Ratosky v. United Transp. Union</u>, 843 F.2d 869 (6th Cir. 1988). A considered decision not to proceed to arbitration based in a judgment that the grievance lacks merit, even if meritorious, does not constitute a breach of the duty of fair representation. <u>Bazarte v. United Transp. Union,</u> 429 F.2d 868, 872 (3rd Cir. 1970).

The Union rationally determined that the Plaintiff's grievance dated April 7, 2003, lacked merit. Mr. Harrington represented the Plaintiff at his arbitration in October 2001 and was familiar with the terms of the arbitrator's decision. He understood the decision to require the Plaintiff to present documentation concerning this ability to unrestricted duties followed by a ten (10) day suspension before the Plaintiff would be reinstated to the seniority list. Therefore, since Mr. Harrington knew that the Plaintiff had not complied with the terms of the October 16, 2001 decision, he thought that the Plaintiff's grievance lacked merit. Furthermore, Mr. Harrington was aware that the Plaintiff remained physically unable to work. The Plaintiff was aware that Mr. Harrington felt

that the grievance was not meritorious, and was even cognizant of Mr. Harrington's
rationale for his belief that the grievance lacked merit, as seen by his letter to Mr.
Harrington, dated July 25, 2003, in which he stated:

> Let's not lose sight of the real issue here. This grievance is about
> seniority rights under the agreement, not weather (*sic*) one is
> capable of working or not.

It is disingenuous for the Plaintiff to pretend that the Union never informed him that his
grievance lacked merit.

The Union's conclusions (1) that there was not particular urgency to docketing the
case; and (2) that the Plaintiff's grievance need not be pursued to arbitration because it
was unmeritorious was an exercise of judgment that was based on the facts and
circumstances known to the Union, as well as its interpretation of members' rights under
the TNFINC/New Penn Agreement. Although the Plaintiff may have interpreted the
agreement differently, the Union had a rational and reasonable basis for finding that the
Plaintiff's grievance lacked merit and should not be docketed for arbitration. The Union
does not breach its duty for fair representation in situation where it reasonably disagrees
with the grievants interpretation of an agreement. See Miller, 792 F. Supp. at 6. Its
decision was not arbitrary or discriminatory. Therefore, the Union cannot be found to
have treated this grievance in a manner that would constitute a breach of its duty of fair
representation.

In order for the Plaintiff to be successful on its claim for the breach of the duty of
fair representation against the Union, the Plaintiff not only has to show that he was
actually capable of returning to work and becoming a permanent employee of New Penn,
if he were called for work opportunities, but must also prove that arbitrary of bad faith

14

conduct by the Union on the part of the Union in the processing of the grievance. <u>See</u> <u>Vaca v. Sipes</u>, 386 U.S. 171 , 193 (1967).

If the Union did make any unwise decision here, it was the its decision to docket the Plaintiff's grievance at all, any act it undertook only as a result of the Plaintiff's persistence that it be docketed. The docketing and associated representation of the grievance does not convert an otherwise meritless grievance into a meritorious one.

### D. The Plaintiff Cannot Show That He Was Capable Of Working During The Period That The Call List Was In Effect Or At Any Time Thereafter

In order to obtain social security disability benefits, an applicant must show that his disability makes him "unable to do his previous work" and that he "<u>cannot</u>…<u>engage</u> <u>in</u> <u>any</u> <u>other</u> <u>kind</u> <u>of</u> <u>substantial</u> <u>gainful</u> <u>work</u> <u>which</u> <u>exists</u> <u>in</u> <u>the</u> <u>national</u> <u>economy</u>." <u>See</u> 42 U.S.C. § 423(d)(2)(A). The Supreme Court has found that while the receipt of social security disability benefits does not estop an allegation that the Plaintiff is able to work, the Plaintiff was the burden of showing how the positions are not inconsistent (i.e. he is completely disabled, yet able to perform the functions of his job). <u>Cleveland v. Policy</u> <u>Management Systems Corp.</u>, 526 U.S. 795 (1999). Given the undisputed concession by the Plaintiff, that he is and was at all times relevant, completely unable to perform his former work, his claim that he would suddenly become able to work at New Penn of called is a self-defeating proposition.

The Plaintiff has been and continues receiving social security disability benefits, retroactive to 1987, since 1995. The Plaintiff admits that he is currently physically unable to work, and has been unable to work since 1987, and has not made any attempt whatsoever to find any employment since 1987, save a request to perform light duty work at APA in 1991 or 1992. Nonetheless, the Plaintiff contends that he entitled to multiple

years of backpay because he "could have tried" to see if he could work at least thirty (30) days in a two (2) month period, as required by the TNFINC/New Penn Agreement to gain seniority at New Penn.    However, the fact that the Plaintiff still claims he is unable to work and continues to collect social security benefits more than three (3) years <u>after</u> the TNFINC/New Penn Agreement expired raises serious questions about the Plaintiff's assertions that he would have been able to work.  Consequently, the Plaintiff cannot show that he could have been capable of performing the thirty (30) days of work in a two (2) month period between March 1, 2002 and March 31, 2003, that was required of him in order to gain seniority with New Penn.

Mr. Goulet contends that he would have been able to try to work for New Penn, if he had been called, as social security recipients are allowed a grace period to attempt to re-enter the workplace while they are still receiving benefits.  However, in December 2002, Mr. Goulet informed the Social Security Administration that some days he was in so much pain that he could not even get out of bed and that he had become more disabled since 1987.  Therefore, the Plaintiff would not be able to prove that he would have been capable of working the required amount of work necessary to become a permanent employee of New Penn.

### E. The Plaintiff's Failure To Mitigate His Damages By Using Reasonable Measures To Find Employment Precludes Damages As A Matter Of Law

Finally, the Plaintiff's complete and utter failure to even make the slightest attempt to mitigate damages factors precludes awarding any damages to the Plaintiff.  <u>See</u> <u>Achilli v. John J. Nissen Baking Co.</u>, 989 F.2d 561, 566 (1st Cir. 1993).  The Plaintiff was required to make a reasonable search for employment.  <u>NLRB v. Arduini Mfg. Corp.</u>, 394

F.2d 420, 423 (1st Cir. 1968).  The Plaintiff readily admitted that he has not worked or even looked for work since 1987.  Although the Plaintiff rightfully contends that Social Security disability benefit recipients are entitled to continuing receiving benefits for a short period of time while "trying" to see if they can return to work, he made no attempt to find any work after he became aware that New Penn would not be calling him off of the call list to work at its terminal in Billerica, Massachusetts.

Respectfully submitted,
For the Defendants,
**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL UNION NO. 25,**
By its attorney,


Matthew E. Dwyer (B.B.O. # 139840)
Kathleen A. Pennini (B.B.O. # 654573)
Dwyer, Duddy and Facklam, P.C.
Two Center Plaza, Suite 430
Boston, MA 02108-1804
(617) 723-9777

Date:   June 20, 2006

## CERTIFICATE OF SERVICE

I, Kathleen A. Pennini, do hereby certify I have electronically filed this document on
June 20, 2006, with electronic and hand delivery (on June 21, 2006) to:

Scott Lathrop, Esq.
Scott A. Lathrop & Associates
122 Old Ayer Road
Groton, MA 01450

Carl H. Gluek, Esq.
Frantz Ward, LLP
55 Public Square Building, 19th Floor
Cleveland, OH 44113-1999

Kathleen A. Pennini

.