UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CRAIG GOULET )<br>)<br>    **Plaintiff** )<br>)<br>v. )<br>)<br>NEW PENN MOTOR EXPRESS )<br>)<br>    **Defendant** )<br>)<br>and )<br>)<br>TEAMSTERS LOCAL 25 )<br>INTERNATIONAL BROTHERHOOD OF )<br>TEAMSTERS )<br>)<br>    **Defendant** )<br>_____ ) | CIVIL ACTION<br>NO. 04-12577-WGY |

### TEAMSTERS LOCAL 25'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR A NEW TRIAL

A district court may exercise its discretion to grant a motion for new trial if the verdict is against the weight of the evidence, the damages are excessive, or if, for other reasons, the trial was not fair to the party moving. Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 13 (1st Cir. 2004) quoting Cigna Fire Underwriters Co. v. MacDonald & Johnson, Inc., 86 F.3d 1260, 1262-1263 (1st Cir. 1996). In his motion, the Plaintiff contends (1) that the jury verdict in favor of Teamsters Local 25 (hereinafter, "Local 25" or "the Union") was against the weight of the evidence; (2) that the charge to the jury contained plain error; and, (3) that the Court erred in granting a directed verdict to New Penn Motor Express, Inc. (hereinafter, "New Penn"). For the reasons set forth below, the jury's verdict was not against the weight of the evidence, the jury charge did not contain "plain error," and even assuming

*arguendo* that the directed verdict in favor of New Penn was error – and it was not – such error was harmless and because it did not alter any of the requirements the jury had to find in the case against Local 25. Accordingly, this court should deny the motion for a new trial.

### A. THE JURY VERDICT WAS NOT AGAINST THE CLEAR WEIGHT OF THE EVIDENCE

The district court's discretion to set aside the jury's verdict and grant a motion for a new trial on the grounds that the verdict is against the clear weight of the evidence extends only to those situations in which upholding the verdict would result in a miscarriage of justice. Johnson v. Spencer Press of Maine, Inc., 364 F.3d 368, 375 (1st Cir. 2004); Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 13 (1st Cir. 2004); Federico v. Order of Saint Benedict in Rhode Island, 64 F.3d 1, 5 (1st Cir. 1995); and Sheils Title Co. v. Commonwealth Land Title Ins. Co., 184 F.3d 10, 19 (1st Cir. 1999). Although the court is not required to view the evidence in a light most favorable to Local 25, Otero v. Housing Authority of Bridgeport, 263 F.Supp. 2d 440, 443 (D.C. Conn. 2003) the fact that the evidence conflicts on material issues or that the court might have decided the case differently are not grounds for upsetting the jury's verdict. See Velazquez v. Figueroa-Gomez, 996 F.2d 425, 428 (1st Cir. 2003); Pale v. Howe, 103 F.Supp. 421 (D.C. Me. 1952) affirmed, 199 F.2d 672 (1st Cir. 1952). This court may weigh the evidence itself but should also bear in mind that "'a jury's verdict on the facts should only be overturned in the most compelling circumstances.'" Velazquez v. Figueroa-Gomez, supra, 996 F.2d at 427, quoting Wells Real Estate Inc. v. Greater Lowell Board of Realtors, 850 F.2d 803, 811 (1st Cir. 1988). The motion should be denied unless the court " believes that the verdict is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice". Velazquez, supra, quoting Conway v. Electro Switch Corp., 825 F.2d 953, 598 (1st Cir. 1987)

In this case, the jury heard the evidence, and rendered a verdict in favor of Local 25. Despite the Plaintiff's displeasure with the jury's rejection of his version of the material events, the Plaintiff cannot

show that the verdict was against the weight of the evidence. On the contrary, the verdict was consistent with the overwhelming weight of the evidence presented at trial.

In contending that "the jury's verdict was so clearly against the weight of the evidence so as to constitute a manifest miscarriage of justice" (see Plaintiff's Memorandum, p. 10), the Plaintiff sets forth the "evidence" that he now contends was presented and uncontradicted at trial. However, the Plaintiff's litany of self-serving statements misstates much of the testimony given during the trial, and furthermore, overlooks the fact that the testimony as portrayed would not have precluded a jury verdict for Local 25.

Despite his contentions to the contrary, many of the facts cited by the Plaintiff were either not presented as depicted or were simply not believed by the jury. The role of the jury is to decide the factual issues in the case based on the evidence presented to it. The jury is not required to believe the Plaintiff's version of the facts.

Local 25 does not dispute that the evidence showed that Craig Goulet was injured at work on March 11, 1987, that Goulet was terminated from employment with APA as the result of the March 11, 1987 accident, or that he received partial disability worker's compensation benefits from 1987 through 2000 due to these injuries. Local 25 also does not dispute that the grievance panel did not hear Goulet's 1987 termination case until October 16, 2001. However, the Plaintiff's self-serving characterization of the "evidence" concerning events occurring after that date is simply not consistent with the evidence presented at trial.

The Plaintiff stated, at trial and in his memorandum, that APA reinstated his seniority in November 2001 without requiring him to provide medical documentation of his ability to return to unrestricted duties or to serve a ten (10) day suspension in accordance with the Southern New England Joint Area Committee's decision of October 16, 2001. He also stated that both Mr. Harrington and Mr. Carnes told him that he was placed back on the seniority list after "winning" his grievance. However,

this statement is not consistent with the weight of the evidence. Both Mr. Harrington and Mr. Carnes testified that although they told the Plaintiff that he won his grievance, they made clear to him that his return to the seniority list <u>was</u> conditional upon his providing medical documentation and serving a ten (10) day suspension. The jury was entitled to believe Harrington and Carnes on this point. Furthermore, the plain language of the Southern New England Joint Area Committee October 16, 2001 award, a copy of which the Plaintiff admits he received, clearly states that the Plaintiff needed to meet certain requirements prior to being placed back on the seniority list. The jury had that document and its attention was drawn repeatedly to it. (<u>See</u> Exhibit 1). Apart from a disputed document reflecting his name, however, he presented no evidence to support the characterizations and conclusions underlying his contention that the list containing his name reflected a waiver of the award's requirements. In sum, although the Plaintiff's name appears on an APA list, he could not show any evidence that APA <u>waived</u> the requirements for being placed on the New Penn call list, that the APA list was an official seniority list for the facility, or that Local 25 had actually received the list or had knowledge of its contents prior to March 2002.

      The jury also heard evidence that due to the impending closure of APA in February 2002, Teamsters National Freight Industry Negotiating Committee (hereinafter, "TNFINC") negotiated an agreement with New Penn, the terms of which enabled <u>employees</u> of APA to submit a preference as to which New Penn terminal they wished to have their name placed on a call list. Doug Francey, the steward of APA at the Canton, Massachusetts facility gathered the terminal preferences of his fellow employees at the Canton terminal, and wrote them on the seniority list for the terminal. The Plaintiff's name did <u>not</u> appear on this seniority list. However, because he had been contacted by the Plaintiff concerning the closure of APA, Mr. Francey handwrote Mr. Goulet's name and terminal preference at the bottom of the list he compiled. The jury heard testimony bearing in mind these points and clearly

chose to believe that the Plaintiff's handwritten name resulted simply form Francey's effort to accommodate Goulet, not any waiver by APA. That the jury chose <u>not</u> to infer from the APA list containing Goulet's name that APA had waived compliance with the award does not mean that its verdict was against the weight of the evidence.

Although there was evidence presented that Local 25 made limited corrections to preference lists which were later sent to the International Brotherhood of Teamsters and New Penn, there was no evidence presented as to how or by whom these lists were created. The Plaintiff now asserts that the weight of the evidence dictated a jury finding that the Union violated its duty of fair representation by failing to ensure that the Plaintiff's name appeared on the preference list submitted to New Penn, but the court will note that the Plaintiff never pled any DFR claim against Local 25 independently of his hybrid §301 claim against both Local 25 and New Penn. Moreover, there were arguably two "seniority lists" for the Canton terminal, one which included the Plaintiff's name and the other which did not. However, the evidence failed to show that: (1) the Plaintiff was <u>eligible</u> to have been placed on any New Penn call list; or (2) the exclusion of the Plaintiff's name from the preference lists was anything more than a simple, good faith error by the Union. There was absolutely no evidence presented that the exclusion of the Plaintiff's name from the call list ultimately used by New Penn was the result of bad faith, arbitrary conduct or recklessness by the Union.

The Plaintiff further contends that although he had numerous discussions with Mr. Carnes. Between March 2002 and March 2003 Mr. Carnes never told him that his name was not on the call list. However, that late breaking contention disregards both the deposition and trial testimony given by the Plaintiff. During his deposition, the Plaintiff could not recall any details or even approximate dates of his conversations with Mr. Carnes. During his examination during trial, the Plaintiff suddenly "recalled" such facts. In particular, the Plaintiff admitted, at trial, that he was made aware by Mr. Carnes by June

5

2002 that New Penn would not call him and that this name did not appear on the call list. As such, it is entirely disingenuous for the Plaintiff to argue in a post-trial motion that the weight of the evidence shows this information was intentionally withheld from him for over a year.

The Plaintiff also contends that the evidence compels the conclusion that Local 25 arbitrarily or recklessly failed to docket his grievance in a timely manner. However, the Plaintiff conveniently ignores the record evidence that contradicts his theory of the case. A major issue in this litigation was whether the Plaintiff had a <u>meritorious</u> grievance. The jury could only find that the Union breached its duty of fair representation by failing to timely docket the grievance if the grievance was otherwise meritorious. In order for the Plaintiff's timely docketed grievance to have been successful, the Plaintiff would have had to point to evidence to support his contention that he would have been able to work at least thirty (30) days in a consecutive two (2) month period. Such evidence does not exist. In fact, the overwhelming weight of the evidence suggests the polar opposite.

The jury heard evidence showing that the New Penn call list was effective from March 1, 2002 through March 31, 2003. It also heard considerable evidence that the Plaintiff, on December 7, 2002, informed the federal government that he was <u>not</u> physically capable of performing <u>any</u> work, and in fact, on some days was so disabled, he could not get out of bed. In addition, the Plaintiff testified that he presently remains totally disabled. The Plaintiff presented <u>no</u> evidence of an actual physical capacity for working the required number of days needed to become a permanent New Penn employee during any period of time.

Although the Plaintiff protests that he could have "tried to work" while continuing to collect his Social Security disability benefits during his attempt to reenter the workforce, the jury was not required to ignore evidence suggesting otherwise. The jury heard the Plaintiff's admission that he continues to claim a <u>total</u> disability and has not even attempted to find any other employment, despite the fact that

prospective employees with commercial driver's licenses are in high demand. It is completely irrelevant to the determination in this matter that the Plaintiff suffers from depression and personality disorder in addition to his physical ailments. There was no competent evidence presented as to the cause of the Plaintiff's depression and personality disorder, and the jury was not required to accept the Plaintiff's self-serving assertions that they were caused entirely by his termination. Based on Plaintiff admissions at trial, it was well within the realm of evidence presented for the jury to find that the Plaintiff (1) had never satisfied the requirements of the award conditionally reinstating him and (2) that he was not physically capable of working during the period the call list was in effect. Therefore, the jury's verdict, which subsumes within its findings that there was neither a violation of the contract by New Penn nor a breach of the duty of fair representation by the Union was completely supported by the weight of the evidence.

The weight of the evidence also suggests that the Union's failure to file the Plaintiff's grievance within thirty (30) days did not constitute recklessness or a perfunctory handling of the grievance, even if the grievance had been meritorious. The unrebutted testimony of both Mr. Carnes and Mr. Harrington reveals that neither party enforced the time limits on grievances and it was a common and accepted practice between the Union and New Penn to _not_ docket grievances until the parties had met to discuss them. As such, New Penn and Local 25 often processed grievances _even if_ they were docketed well beyond thirty (30) days of their receipt of the Union. This was the clear import of both Mr. Carnes' and Mr. Harrington's testimony. Despite the Plaintiff's contention to the contrary, there was no evidence to suggest that such an extension required a formal "mutual agreement" in each instance. In fact, the jury was apprised that this was the first time that timeliness had ever been raised as a defense by New Penn. It was therefore entitled to conclude in the light of the past practice that Local 25's failure to docket the grievance in thirty (30) days was neither reckless nor perfunctory.

Furthermore, the weight of the evidence presented at trial revealed for the first time that the Plaintiff was aware, more than six (6) months prior to the institution of this suit, that the grievance was not docketed by Local 25 within thirty (30) days. Although the Plaintiff sent his grievance in April 2003, he admitted on cross-examination that he already knew, in July 2003, that it had not yet been docketed. Under the rule announced in DelCostello, the Plaintiff's claim was clearly time-barred. See Graham v. Bay State Gas Co., 779 F.2d 93, 121 LRRM 2105, 2106 (1st Cir. 1985). Given that revelation, it is particularly disingenuous for Plaintiff to posit a miscarriage of justice in the jury's verdict.

Simply stated, the Plaintiff cannot show that the verdict was against the clear weight of the evidence such that leaving it intact will result in a miscarriage of justice. There is, on the contrary, an abundance of evidence from which the jury found that the Union did not breach its duty of fair representation to the Plaintiff. Therefore, the Court should deny the Plaintiff's motion for a new trial.

**B.    THE JUDGE'S CHARGE TO THE JURY DID NOT CONTAIN PLAIN ERROR**

The Plaintiff claims that a part of the Court's instructions to the jury constituted "plain error." In its charge, the Court instructed the jury that in order to return a verdict in favor of the Plaintiff, it would have to find that the Plaintiff sustained its burden concerning four elements, the first of which was that New Penn had violated its labor agreement with Local 25. In his memorandum in support of his motion for a new trial, the Plaintiff concedes that the judge's instructions constitute a correct statement of law in an ordinary charge of duty of fair representation. However, he belatedly asserts, because of the 'unique' nature of the labor agreement involved here that it is conceivable for Local 25 to have violated its duty of fair representation and damaged the Plaintiff without New Penn having violated the agreement. Accordingly, he theorizes, instructions reflecting this unique contract were required.

The Plaintiff failed to make any objection to these instructions at the time that they were given. Furthermore, the Plaintiff presents no authority for his contention that the Court's instructions were erroneous, much less that they were clearly erroneous.

If, as the Plaintiff now contends, the jury instructions were so 'clearly' flawed, it is fair to ask why he not object to the instruction either at the time it was originally given, or later, when this instruction was clarified for the benefit of the jury and with his participation. While a party's failure to make a timely objection to contested jury instructions does not preclude review, in such cases the Court may review the disputed instructions only for "plain error." Suboh v. Borgioli, 298 F.Supp.2d 192, 200 (D.Mass. 2004); Putnam Res v. Pateman, 958 F.2d 448, 456 (1st Cir. 1992); United States v. Richardson, 14 F.3d 666, 670-671 (1st Cir. 1994); Wilson v. Mar. Overseas Corp., 150 F.3d 1, 6 (1st Cir. 1998). The plain error standard requires the Plaintiff to show: (1) an error was committed; (2) the error was 'plain' (i.e. obvious and clear under current law); (3) the error was prejudicial (i.e. affected substantial rights); and (4) review is needed to prevent a miscarriage of justice. Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 10 (1st Cir. 2004). Furthermore, "[p]lain error is a rare species in civil litigation, encompassing those errors that reach the pinnacle of fault," and thus, a party claiming plain error is faced with a monumental task. Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 10 (1st Cir. 2004) quoting Smith v. Kmart Corp., 177 F.3d at 26.

Although the Plaintiff has alluded to an "error" in the charge given to the jury, the Plaintiff has failed to show that such a charge was erroneous in law. In fact, the Plaintiff admits that this charge is "totally correct" in a hybrid §301 case. The Plaintiff does not present any authority that another standard governs here or that in any LMRA § 301/duty of fair representation hybrid suit such as was alleged by the Plaintiff in his complaint that a union could breach its duty of fair representation without a corresponding breach of contract by the employer. Once again, it should be recalled that this was not

an instance in which Plaintiff's complaint alleged anything other than a hybrid §301 action so there is no basis for Plaintiff's twin assumptions that he was entitled to an instruction disconnecting his DFR claim from the breach of contract claim or that the Court's failure to give such an unrequested instruction was error.

Moreover, the Plaintiff cannot show any error that was prejudicial to him. Although the Plaintiff contends that *if* New Penn had remained in the case for closing arguments it <u>might</u> have made certain closing arguments to the jury placing all blame on Local 25, such an argument is too speculative to constitute prejudice against the Plaintiff particularly where anything said by counsel for New Penn during closing statements would be merely <u>argument</u> and not evidence in the case.

No miscarriage of justice will result if the Court denies the Plaintiff's motion for a new trial. The First Circuit has found the 'plain error' standard requires a "showing that the error 'seriously impaired the fairness, integrity, or public reputation of the judicial proceedings.'" <u>Smith v. Kmart Corp.</u>, 177 F.3d at 26. To guide the determination whether a miscarriage of justice will result if a new trial is not granted, the First Circuit has advised courts to consider the following factors: "whether the failure to raise the claim below deprived the reviewing court of helpful factfinding; whether the issue is one of constitutional magnitude; whether the omitted argument is highly persuasive; whether the opponent would suffer any special prejudice; whether the omissions were inadvertent or deliberate; and perhaps, most importantly, whether the issue is of great importance to the public." <u>Suboh v. Borgioli</u>, 298 F.Supp.2d 192, 203 (D.Mass. 2004) quoting <u>Play Time, Inc. v. LDDS Metromedia Communications, Inc.</u>, 123 F.3d 23, 30 n. 8 (1st Cir. 1997); <u>National Association of Soc. Workers v. Harwood</u>, 69 F.3d 622, 627-628 (1st Cir. 1995).

In sum, it is settled that "a new trial will not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice would result." <u>United</u>

States v. Walton, 909 F.2d 915 (6th Cir. 1990) quoting C. Wright & A. Miller, Federal Practice and Procedure: Civil: §2805 (1973); see also Computer Systems Engineering, Inc. v. Quantal Corp., 740 F.2d 59, 69 (1st Cir. 1984).

    The Plaintiff cannot show that he would suffer any injustice due to the Court's failure to consider the so-called "unique" collective bargaining agreement at issue in this litigation. Only upon receipt of the verdict against him did the Plaintiff contend that the Court erroneously instructed the jury. However, the Plaintiff has been in possession of the document upon which he now bases his claim of error prior to the commencement of the suit. The Sixth Circuit has found that there was no gross injustice where the party moving for a new trial had access to all the documents it relied on in its motion for a new trial before the action was ever commenced. United States v. Walton, 909 F.2d 915 (6th Cir. 1990). As such, the Court cannot find that the Plaintiff's failure to raise an objection to the instruction was anything but deliberate. Unlike the litigant in Suboh v. Borgioli, supra, the Plaintiff's argument here is fact-based and does not concern an issue of constitutional magnitude. The Court should therefore find that the circumstances here weigh against any conclusion that a miscarriage of justice would attend denial of the Plaintiff's motion for a new trial.

    Finally, this court will note there is no danger of jury confusion concerning New Penn's absence from the case. The court instructed the jury that they were to draw no inference from New Penn's absence as to whether there had or had not been a contract violation. Therefore, New Penn's absence during the jury charge and closing statements could not have portended anything to the jury with respect to the elements of the case Plaintiff was expected to prove. Accordingly, even if the dismissal of New Penn on directed verdict was erroneous as theorized by the Plaintiff, the error, if any, was harmless in the claim the jury was instructed on against Local 25.

## CONCLUSION

For all the foregoing reasons, Local 25 asks the Court to deny the Plaintiff's Motion for a New Trial.

For the Defendant,
**INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL UNION NO. 25**
By its attorneys,

_____
Matthew E. Dwyer (B.B.O. # 139840)
Kathleen A. Pennini (B.B.O. # 654573)
Dwyer, Duddy and Facklam
Attorneys at Law, P.C.
Two Center Plaza, Suite 430
Boston, MA 02108-1804
(617) 723-9777

Date:   July 12, 2006

## CERTIFICATE OF SERVICE

I, Matthew E. Dwyer, do hereby certify I have electronically filed this motion on July 12, 2006, with electronic delivery and delivery via first class mail, postage pre-paid, to:

Scott Lathrop, Esquire
122 Old Ayer Road
Groton, MA  01450

Carl H. Gluek, Esquire
Frantz Ward, LLP
55 Public Square Building, 19th Floor
Cleveland, OH  44113-1999

_____
Matthew E. Dwyer

F:\L25\Goulet\pldg\mem.opp.mot.new.trial.final.doc